**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ETHAN MURPHY, STEPHANIE**
**CASTILLO, CHRISTOPHER L. SCOTT,**          No. 13 Civ. 6503 (RJS)
**LOGAN SCOTT, NICOLE CLOUSE,**
**NYAMKA AYINOLA, EDGAR**
**OCOTOXTLE, and EFRAIN RAMIREZ,**
**on behalf of themselves and others**
**similarly situated,**

                **Plaintiffs,**

      **v.**

**PHILIPPE LAJAUNIE, LA BOUCHERIE**
**INC., 15 JOHN CORP, LHLM GROUP,**
**CORP. a/k/a BRASSERIE LES HALLES**
**NEW YORK, and XYZ CORP.,**

             **Defendants.**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

JOSEPH & KIRSCHENBAUM LLP          THE LAW OFFICES OF JEFFREY E. GOLDMAN
D. Maimon Kirschenbaum, Esq.          Jeffrey Goldman, Esq.
Denise Schulman, Esq.          501 Fifth Avenue, Suite 1900
233 Broadway, Fifth Floor          New York, New York 10017
New York, New York 10279          212-983-8999
212-688-5640

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and proposed Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.   STATEMENT OF FACTS ......................................................................................... 2

III.  ARGUMENT ............................................................................................................. 2

    A.    The Court Should Disregard Defendants' Affidavits, Declarations, And Exhibits That Exceed The Court's Limits On Such Submissions ....................................................... 2

    B.    Defendants Are Not Entitled To Summary Judgment On Plaintiffs' § 196-d Claim ...... 3

        i.    Legal standard under § 196-d ............................................................................. 3

        ii.    The maitre d's exercised meaningful authority ................................................. 6

            a.    Maitre d's directly influenced service employees' compensation............................ 7

            b.    Maitre d's participated in the hiring and firing processes ........................... 8

            c.    Maitre d's had input into the creation of employee schedules .................... 8

            d.    Maitre d's disciplined employees ............................................................... 9

            e.    Maitre d's evaluated employees' performance............................................ 9

            f.    Additional facts support a finding that maitre d's exercised meaningful authority ... 10

        iii.    Plaintiffs have supported their factual allegations with sufficient evidence ............. 12

        iv.    Defendants lost their right to pay Plaintiffs pursuant to New York's tip credit by including maitre d's in the tip pools ......................................................................... 14

    C.    Plaintiffs' Claims Against Lajaunie Should Not Be Dismissed ..................................... 16

IV.  CONCLUSION....................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Azkour v. Little Rest Twelve, Inc.*, No. 10 Civ. 4132,
    2012 WL 402049 (S.D.N.Y. Feb. 7, 2012)........................................................15

*Azkour v. Little Rest Twelve, Inc.*, No. 10 Civ. 4132,
    2012 WL 1026730 (S.D.N.Y. Mar. 26, 2012) ..................................................15

*Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (2013) ....................................*passim*

*Barenboim v. Starbucks Corp.*, 549 Fed. Appx. 1 (2d Cir. 2013) ..................5, 7

*Beyah v. Coughlin*, 789 F.2d 986 (2d Cir. 1986).........................................................3

*Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (N.Y. App. Div. 1st Dep't 2013).......16, 17

*Chowdhury v. GK Grill LLC*, No. 153996/14,
    2015 WL 47187 (N.Y. Sup. Ct. N.Y. County Feb. 3, 2015) .............................15

*Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002).....................3, 6

*Chung v. New Silver Palace Rest.*, 272 F. Supp. 2d 314 (S.D.N.Y. 2003).....................18

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ..............15

*Dong v. Ng*, No. 08 Civ. 917,
    2011 WL 215044 (S.D.N.Y. Mar. 8, 2011) ......................................................17

*Dong v. Ng*, No. 08 Civ. 917,
    2011 WL 2150545 (S.D.N.Y. May 27, 2011) ...................................................17

*Encalada v. SDNY 19 Mad Park, LLC*,
    No. 13 Civ. 1926 (PAC) (S.D.N.Y. Nov. 16, 2014)..........................................4, 5, 8

*Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76 (E.D.N.Y. 2012)..............................15

*Janus v. Regalis Constr., Inc.*, No. 11 CV 5788,
    2012 WL 3878113 (E.D.N.Y. July 23, 2012)....................................................17

*Janus v. Regalis Constr., Inc.*, No. 11 CV 5788,
    2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) ...................................................17

*Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ....................................17

*Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451 (1980) ..........................................16

*Lanzetta v. Florio's Enters.*, 763 F. Supp. 2d 615 (S.D.N.Y. 2011) ..............................15

*Lauria v. Heffernan*, 607 F. Supp. 2d 403 (E.D.N.Y. 2009) ...........................................18

*Marzovilla v. N.Y. State Indus. Bd. of Appeals*, 127 A.D.3d 1452,
    2015 WL 1724727 (N.Y. App. Div. 3d Dep't 2015)...........................................8, 11

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ............................3, 14

*Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299,
    2014 WL 113711 (S.D.N.Y. Jan. 10, 2014) ......................................................6

*Paguay v. Buona Fortuna, Inc.*, No. 11 Civ. 6266,
    2013 WL 3941088 (S.D.N.Y. July 31, 2013) ...................................................6

*Patrowich v. Chem. Bank*, 63 N.Y.2d 541 (1984) ...........................................................17

*Raquer v. Café Buon Gusto Corp.*, No. 11 Civ. 7774,
    2012 WL 4494882 (S.D.N.Y. Sept. 28, 2012)...................................................17

*Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014)...........................17

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011) ...........3

*Stoganovic v. Dinolfo*, 92 A.D.2d 729 (N.Y. App. Div. 4th Dep't 1983) ......................17, 18

*Toys "R" Us v. Silva*, 89 N.Y.2d 411 (1996) .................................................................16

*Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618 (S.D.N.Y. 2014).......................6

*Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635,
    2011 WL 2022644 (S.D.N.Y. May 2, 2011) ......................................................15

*Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635,
    2011 WL 2038973 (S.D.N.Y. May 24, 2011) ...................................................15

*Widjaja v. Kang Yue USA Corp.*, No. 09 CV 2089,
    2011 WL 4460642 (E.D.N.Y. Sept. 26, 2011) ..................................................11

*Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005)........................................16

**Statutes, Rules, and Regulations**

Fed. R. Civ. P. 56.........................................................................................................3

Local Civil Rule 56.1 ................................................................................2, 6

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.14 ........................................4

N.Y. Lab. L. § 2 ........................................................................................16

N.Y. Lab. L. § 190 ............................................................................16, 17, 18

N.Y. Lab. L. § 196-d ..........................................................................*passim*

N.Y. Lab. L. § 198 ....................................................................................16

N.Y. Lab. L. § 651 ....................................................................................16

N.Y. Lab. L. § 663 ....................................................................................16

## I.    PRELIMINARY STATEMENT

Summary judgment in this case is inappropriate, as the Parties sharply dispute the facts upon which resolution of Plaintiffs' N.Y. Lab. L. § 196-d ("§ 196-d") claim relies.[1]   The question of whether the maitre d's at Defendants' restaurants were eligible to receive tips under § 196-d is a mixed question of fact and law.   The fact finder must first decide the factual question of what the maitre d's duties and responsibilities were and then determine whether those duties and responsibilities constitute "meaningful authority" as defined by the New York Court of Appeals.   It is patently clear that (1) the Parties have substantial factual disputes regarding what the maitre d's duties and responsibilities were; and (2) if Plaintiffs' factual allegations about the maitre d's duties and responsibilities are correct, the maitre d's exercised meaningful authority over subordinates and were not eligible to participate in Defendants' tip pools.   The Parties' factual disputes therefore preclude summary judgment on Plaintiffs' § 196-d claim.

In addition, the overwhelming weight of authority in this Circuit – including a decision by this Court – holds that a plaintiff who prevails on a § 196-d claim can recover tip credit damages under New York law.   Finally, Defendants' contention that Defendant Philippe LaJaunie cannot be held individually liable for New York Labor Law violations is contrary to settled law that individuals who are employers are individually liable under the New York Labor Law.   Accordingly, Defendants' motion should be denied in its entirety.

---

[1] With this memorandum of law, Plaintiffs submit the May 18, 2015 declaration of Denise A. Schulman ("Schulman Decl.") and exhibits thereto ("Schulman Ex. __"); the June 3, 2014 affidavit of Mario Quimbay ("Quimbay Aff."); the June 27, 2014 declaration of James Toal ("Toal Decl."); the January 16, 2015 affidavit of Kurt Roediger ("Roediger Aff."); and the November 12, 2013 declaration of Isidoro Ventura Peralta ("Peralta Decl."), without the exhibit referenced therein.   As used herein, "Defs.' Mem." refers to Defendants' memorandum of law in support of their motion for partial summary judgment.

## II.    STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to their Local Civil Rule 56.1 Counter-Statement ("Pls.' 56.1 Counter-Statement"), where the facts relevant to this opposition are set forth in detail.

## III.    ARGUMENT

### A.   The Court Should Disregard Defendants' Affidavits, Declarations, And Exhibits That Exceed The Court's Limits On Such Submissions

The Court's Individual Practices limit a party's evidentiary submissions in support of a motion to five affidavits of no more than 10 double spaced pages each and 15 exhibits of no more than 15 pages each.  (Ind. Practices 2.H.)  At the Parties' request, the Court increased the permissible number of exhibits in support of or opposition to summary judgment to 20 exhibits of no more than 15 pages each.

In support of their summary judgment motion, Defendants filed seven declarations and 25 exhibits (18 attached to the Declaration of Jeffery Meyer and seven attached to the Declaration of Pamela Gill).  Exhibit A to the Meyer Declaration is 17 pages.  Thus, Defendants have blatantly violated the Court's restrictions on affidavits/declarations and exhibits without seeking leave from the Court.  Accordingly, the Court should disregard Defendants' excess submissions.  Based on the chronology of Defendants' filings, the excess submissions are the declarations of Phillipe Verner[2] and Anthony Rinaldo, Exhibits C through G to the Gill Declaration, and the last two pages of Exhibit A to the Meyer Declaration.

---

[2] Phillipe Verner's declaration should be disregarded not only because it exceeds the Court's limits on the number of permissible declarations, but also because at deposition he denied signing it in its submitted form.  Specifically, Verner testified that paragraphs 4, 5, and 6 in the

**B. Defendants Are Not Entitled To Summary Judgment On Plaintiffs' § 196-d Claim**

Summary judgment is warranted only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine dispute as to a material fact exists[.]" *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986). A court deciding a motion for summary judgment "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment[.]" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

**i.   Legal standard under § 196-d**

Under § 196-d, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." Whenever an employer or a manager receives tips from a tip pool, it is a violation of law, regardless of whether a manager also serves customers. *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) ("New York law [] prohibits employers from requiring tipped employees to share tips with non-service employees or managers."); *cf. Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (under FLSA, "the practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping").

The New York Court of Appeals has set forth the following standard for determining

---

declaration submitted to the Court by Defendants were not included on the declaration he signed. (Schulman Ex. 4, 116:15-118:3.)

whether supervisory employees are ineligible to receive money from an employer's tip pool:

> We conclude that the line should be drawn at meaningful or significant authority or control over subordinates. Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation … *Meaningful authority, not final authority, should be the standard.*
>
> In sum, an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip allocation arrangement under Labor Law § 196-d, even if that employee possesses limited supervisory responsibilities. But an employee granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool.

*Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473 (2013) (emphasis added). The determination of whether an employee is eligible to receive tips is fact intensive, and the employee's title is not dispositive. *E.g.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.14(e) ("Eligibility of employees to receive shared tips, or to receive distributions from a tip pool, shall be based upon duties and not titles.").

If maitre d's exercised significant managerial authority, they are tip-ineligible, regardless of how much time they spent providing direct customer service.[3] In a recent decision following a bench trial, Judge Crotty found that a maitre d' who interviewed, disciplined, and fired employees and created an initial schedule – but did not have ultimate authority over any of these matters – was ineligible to receive tips under § 196-d. *Encalada v. SDNY 19 Mad Park, LLC*, No. 13 Civ. 1926 (PAC), at 9:8-10:1 (S.D.N.Y. Nov. 16, 2014). This was so "even accepting [the defendant's] contention that 90 percent of [the maitre d's] actions related to customer

---

[3] In any event, there are factual disputes regarding not only the nature of maitre d's duties and responsibilities but also regarding how much time was spent on different duties. For example, Plaintiffs have proffered testimony that, contrary to Defendants' contention, the maitre d's seldom provided direct customer service. (Pls.' 56.1 Counter-Statement ¶ 9.)

service, [because] the remaining 10 percent constitutes 'meaningful authority' under Starbucks."

*Id*. at 10:2-6.

This is wholly consistent with the *Barenboim* decisions from the New York Court of

Appeals and the Second Circuit.  The New York Court of Appeals stated,

> [W]e believe that there comes a point at which the degree of managerial responsibility becomes so substantial that the individual can no longer be fairly characterized as an employee similar to general wait staff within the meaning of Labor Law § 196-d.

*Barenboim*, 21 N.Y.3d at 473.  In other words, it is the possession of meaningful authority – and

not the degree to which a person provides direct customer service – that differentiates a tip-

ineligible employee from "general wait staff."  *Id*. ("[A]n employee granted meaningful authority

or control over subordinates can no longer be considered similar to waiters and busboys within

the meaning of section 196-d[.]").

The court summarized its holding as follows:

> In sum, an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip allocation arrangement under Labor Law § 196-d, even if that employee possesses limited supervisory responsibilities.  But an employee granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool.

*Id*.  The Second Circuit's analysis and description of shift supervisors was clearly aimed at

showing that the shift supervisors fit squarely into the first group described by the Court of

Appeals – tip eligible employees who principally perform customer service and have only

limited supervisory responsibilities: "[T]he limited nature of these supervisory duties, considered

together with the shift supervisors' 'principal' responsibilities to provide 'personal service to

patrons,' cannot admit a finding of the 'meaningful or significant authority or control over

subordinates' contemplated by § 196-d." *Barenboim v. Starbucks Corp.*, 549 Fed. Appx. 1, 3 (2d

Cir. 2013).  Thus, while the regular provision of direct customer service is a prerequisite to tip eligibility under § 196-d, it is not a bar or obstacle to a finding of meaningful authority.  Once an individual is vested with meaningful authority, he or she may not receive tips under § 196-d, regardless of whether he or she also provides direct customer service.  *See Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 WL 113711, at *6 (S.D.N.Y. Jan. 10, 2014) ("Defendants' argument that [individuals with meaningful authority] were permitted to share tips for shifts in which they provided customer service is contrary to case law establishing that, under NYLL, the 'practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping.'") (quoting *Chung*, 246 F. Supp. 2d at 229); *see also Paguay v Buona Fortuna, Inc.*, No. 11 Civ. 6266, 2013 WL 3941088, at *3 (S.D.N.Y. July 31, 2013).

##### ii.   The maitre d's exercised meaningful authority

Plaintiffs have set forth in their Local Civil Rule 56.1 Counter-Statement facts and evidence supporting a finding that maitre d's exercised meaningful authority and were, therefore, ineligible to receive tips.  Defendants cannot win summary judgment merely by disagreeing with Plaintiffs' allegations. *See Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618 (S.D.N.Y. 2014) (denying summary judgment on applicability of FLSA overtime exemptions where the parties disputed the employees' primary duties and the degree of their discretion and authority). Accordingly, the disputed issues of fact concerning the maitre d's responsibilities that preclude summary judgment on Plaintiffs' N.Y. Lab. L. § 196-d ("§ 196-d") claim, to the extent that claim is based on the inclusion of maitre d's in Defendants' tip pools.[4] To be sure, Defendants have not

---

[4] Defendants have not moved for summary judgment on Plaintiffs' claim that Defendants violated § 196-d by including a bar manager in the tip pool at Les Halles Park Avenue.

cited a single case that applied the *Barenboim* standard and held that as a matter of law maitre d's are tip eligible, let alone such a case involving maitre d's with the same power and responsibilities as those in the instant case. (Defs.' Mem. at 8 (citing pre-*Barenboim* and non-New York cases).)

In *Barenboim*, the Court of Appeals set forth an illustrative list of factors relevant to determining whether an individual exercised meaningful authority:

> Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation.

*Barenboim*, 21 N.Y.3d at 473. Defendants' attempt to analogize their maitre d's to the shift supervisors in *Barenboim* (who were ultimately found to be tip-eligible) is misplaced, as the maitre d's have far more significant managerial responsibilities than did the shift supervisors in *Barenboim*. The shift supervisors' "limited" supervisory duties did not include any of the types of meaningful authority identified by the Court of Appeals, and the Second Circuit found that their primary job functions were the same as those of baristas. *Barenboim*, 549 Fed. Appx. at 3. In contrast, the record in this case – including testimony by Plaintiffs, former maitre d's, and general managers, and documentary evidence including Defendants' "red book" entries and e-mails – shows that maitre d's had and exercised all of the types of authority identified by the New York Court of Appeals as constituting meaningful authority.

### a.   Maitre d's directly influenced service employees' compensation

The maitre d's directly influenced subordinates' compensation by changing employees' shares of the tip pool and adjusting employees' time records. (Pls.' 56.1 Counter-Statement ¶¶

---

Accordingly, regardless of the outcome of this motion, Plaintiffs will have a viable § 196-d claim.

50, 51.)  Under a recent New York appellate decision, this alone was sufficient to establish

meaningful authority under *Barenboim.  Marzovilla v. N.Y. State Indus. Bd. of Appeals*, 127

A.D.3d 1452, 20105 WL 1724727, at *2 (N.Y. App. Div. 3d Dep't 2015) (finding testimony that

a head waiter sometime required tip pool participants to give him an increased share of the tip

pool and did not contribute tips he received to the tip pool was "sufficient under *Barenboim v.*

*Starbucks Corp. (supra)* to establish meaningful authority because it established that [the head

waiter] 'directly influenc[ed] . . . the[] compensation' received by other waiters, in addition to his

own.") (omissions in original).

### b.  Maitre d's participated in the hiring and firing processes

Maitre d's hired and fired service employees.  (Pls.' 56.1 Counter-Statement ¶ 37.)

Plaintiffs have identified specific instances of the maitre d's exercising this authority.  (*Id.*)  On

other occasions, maitre d's interviewed job applicants, made recommendations with respect to

hiring and firing, and helped manage the recruitment process.  (*Id.* at ¶ 38.)  It is therefore clear

that maitre d's, unlike Starbucks' shift supervisors, "participate in the process of hiring or

terminating employees[.]"  *Barenboim*, 21 N.Y.3d at 473; *see also Encalada*, No. 13 Civ. 1926,

at 9:23-10:6 (finding that maitre d' exercised meaningful authority where, *inter alia*, he

interviewed and fired employees) (hearing transcript included as Schulman Ex. 17); *Marzovilla*,

2015 WL 1724727, at *2 (finding that fact that head waiter participated in the hiring process

further supported a finding that he exercised meaningful authority and was tip-ineligible).

### c.  Maitre d's had input into the creation of employee schedules

Maitre d's had significant control over service employees' hours worked and, by

extension, their compensation.  At times, maitre d's set employee schedules.  (Pls.' 56.1 Counter-

Statement ¶ 43.)  Even when maitre d's did not create the schedules, they had significant "input

8

in the creation of employee work schedules" by making scheduling recommendations that were followed. *Barenboim*, 21 N.Y.3d at 473. (Pls.' 56.1 Counter-Statement ¶ 44.) Maitre d's also decided when employees could leave work and could decide to cut employees early if business was slow. (Pls.' 56.1 Counter-Statement ¶ 45.) Service employees were not permitted to "cut" themselves; they had to wait for a maitre d' to release them before they could leave. (*Id*. at ¶ 46.) Similarly, maitre d's told service employees not to come to work when scheduled if business was slow. (*Id*. at ¶ 47.) Conversely, if the restaurant was understaffed or a scheduled employee did not come to work, a maitre d' could call employees to come into work. (*Id*. at ¶ 48.) Service employees also had to get permission from a maitre d' to take a break. (*Id*. at ¶ 49.) Until sometime after the initiation of this lawsuit, maitre d's had and exercised the ability to adjust employees' time records, including clocking employees in and out and falsifying clock in times so that employees were not paid for all hours worked. (*Id*. at ¶ 50.) Service employees who had to miss work because of illness could call out sick to a maitre d'. (*Id*. at ¶ 52.)

### d.  Maitre d's disciplined employees

Maitre d's disciplined service employees. This included issuing written warnings, making recommendations for written warnings that were followed, verbally reprimanding or counseling employees, sending employees home for disciplinary infractions such as intoxication or failing to comply with uniform requirements, and participating in disciplinary meetings. (*Id*. at ¶¶ 39-42.)

### e.  Maitre d's evaluated employees' performance

While Defendants did not conduct formal performance evaluations, the maitre d's – by Defendants' design – operated as the restaurants' eyes and ears with respect to employee performance by frequently reporting on employees' performance and attitude (whether good or

bad) in the red books and directly to the general managers.  (*Id*. at ¶¶ 42, 56; Toal Decl. ¶ 19.)

To be sure, the red book forms instruct maitre d's to "Please comment on staff performance. . .

BE SPECIFIC."  (Schulman Exs. 18-20.)  Accordingly, Defendants' assertion that maitre d's

performance reports were made on no more than a "limited basis" is meritless.  (Defs.' Mem. at

10.)  In fact, maitre d's input regarding employee performance was extremely important in

managing and assigning staff.  For example, James Toal has stated that when he was general

manager at Les Halles John Street, he relied on the maitre d's performance reports in scheduling

and assigning staff.  (Toal Decl. ¶ 19; *see also* Schulman Ex. 2, 73:17-19.)

### f.  Additional facts support a finding that maitre d's exercised meaningful authority

In addition to exercising all forms of authority set forth as examples by the Court of

Appeals in *Barenboim*, maitre d's exercised general managerial authority over the restaurants.

To be sure, when the general managers were not present at the restaurants, the maitre d's on duty

were in charge of the restaurants.  (Pls.' 56.1 Counter-Statement ¶ 36.)  At all times, the maitre

d's handled customer complaints and could comp or void items for customers.  (*Id*. at  ¶ 58.)

Maitre d's used their discretion to comp items in order to further the goals of the restaurant.  (*Id*.

at ¶ 59.)  Maitre d's ran certain staff meetings and were empowered to deal with emergency

situations.  (*Id*. at ¶¶ 53-54, 57.)  For example, in an e-mail to the general manager of Les Halles

Park Ave., a maitre d' stated that when he learned that a kitchen employee was injured while

working, he "immediately" sent the injured worker to the hospital and had a busboy accompany

him.  (*Id*. at ¶ 57.)  Notably, the maitre d', rather than the chef or other kitchen manager, made

the decision to send the kitchen worker to the hospital, indicating that the maitre d' had general

managerial responsibility over the entire restaurant.

Maitre d's also had administrative responsibilities.  Maitre d's calculated the tip

distribution and compiled and completed end-of-shift paperwork.  (*Id*. at ¶ 60.)  Maitre d's

distributed cash tips and paychecks to service employees and had access to the safe.  (*Id*. at ¶¶

61-62.)  Moreover, prior to the commencement of this action, maitre d's were typically referred

to in writing and orally as "managers."  (*Id*. at ¶ 63.)  *See Marzovilla*, 2015 WL 1724727, at *2

(testimony that head waiter "introduced himself as a manager" supports a finding that he

exercised meaningful authority).

     Certainly, the maitre d's believed they were in charge of subordinates.  In a red book

entry for Les Halles Park Ave. dated March 10, 2013, maitre d' Chad Combs reported on a

number of disciplinary issues and recommended "reductions in shifts/suspensions" for some

employees to "help them know that the maitre d' is in charge."  (Pls.' 56.1 Counter-Statement ¶

42.)  In addition, Plaintiffs have proffered substantial evidence that the maitre d's gave orders,

supervised, and instructed service employees while they were working.  (*Id*. at ¶¶ 52-54.)  *See*

*Marzovilla*, 2015 WL 1724727, at *2 (finding that testimony that head waiter gave orders,

supervised, and instructed employees weighed in favor of finding that he exercised meaningful

authority).

     Maitre d's compensation further indicates that they were managerial employees.

Defendants have always paid maitre d's a substantially higher rate than Class members.  Until

sometime in 2012 or 2013, maitre d's at Les Halles John St. were paid a salary of $500 per week.

(Pls.' 56.1 Counter-Statement ¶ 64.)  *See Widjaja v. Kang Yue USA Corp.*, No. 09 CV 2089,

2011 WL 4460642, at *4 (E.D.N.Y. Sept. 26, 2011) (stating that receipt of a salary is relevant to

determining that an individual is ineligible to receive tips).  By way of comparison, a Class

member paid the tip credit minimum wage of $5.00 per hour would have to work more than 74

hours to earn $500 in weekly wages.  Maitre d's as Les Halles John St. are now paid an hourly

wage ranging from around $11 to $13 depending on the shift, which is more than double the tip credit minimum wage paid to Class members.  (Pls.' 56.1 Counter-Statement ¶ 65.)

These facts clearly establish that the maitre d's exercised substantial and meaningful authority over subordinates.  Accordingly, their inclusion in the tip pools violated § 196-d.

### iii.   Plaintiffs have supported their factual allegations with sufficient evidence

Defendants' arguments, which they made in opposing Plaintiffs' class certification motion, attacking the adequacy of Plaintiffs' evidence are baseless.  Plaintiffs have set forth more than sufficient evidence to support their allegations and defeat Defendants' summary judgment motion.

Defendants' contention that the red book entries do not reflect the maitre d's individual observations, recommendations, and actions is illogical and contrary to the record.  On many occasions the red book entries are written in the first person, expressly indicating that the maitre d' is describing his or her own actions, observations, or recommendations.[5]  In fact, Chad Combs, who now insists in his declaration that the red book entries are merely a report of the general manager's decisions, himself wrote in the red books in the first person when he was a maitre d'.[6]  (Combs Decl. ¶ 11.)  This clearly indicates his personal responsibility for addressing

---

[5] *E.g.*, Schulman Ex. 18, DLH 28541 (maitre d' Kevin wrote, "please contact the guy I am interviewing"), 28696 (maitre d' Allison wrote, "Rony tried to call out but I told him no"), 28892 (maitre d' Kevin wrote, "Busiest Monday I've ever worked"); Schulman Ex. 19, 29440 (maitre d' Kevin wrote, "After Jim spoke with John he got better, but I still feel it's time to part ways"), 30206 (maitre d' Mariela wrote, "I showed Giuliana how to open a bottle of wine and worked on banana flambé with Sharif"); Schulman Ex. 20, DLH 35831 (maitre d' Anthony wrote, "I kept Eric late to put napkin rings on some stacks").

[6] *E.g.*, Schulman Ex. 19, DLH 35765 (maitre d' Chad wrote, "Madhi asked why he would be cut 3X.  I took him to the office and had a sit down conversation w/him"); Schulman Ex. 20, DLH 35814 (maitre d' Chad wrote, "Nikki was spoken to regarding her attitude and performance by

scheduling and disciplinary issues and evaluating employee performance.  In fact, although

Combs now claims that he never even attempted to discipline any employees while he was a

maitre d' (Combs Decl. ¶ 7), on October 6, 2013, Combs e-mailed the Les Halles Park Avenue

general manager recommending that "Efrain" be written up for being late that day.  Efrain

Ramirez was subsequently written up for being late on October 6.  (Pls.' 56.1 Counter-Statement

¶ 41.)  Thus, whether or not Combs physically signed disciplinary forms, he (and by extension

other maitre d's) clearly had to power to subject employees to formal discipline.

 Moreover, the red book entries routinely describe actions that the record shows were

engaged in by maitre d's.  For example, Plaintiffs cited many red book entries containing staffing

and scheduling recommendations[7] (*see Id*. at ¶ 44), and James Toal stated that as a general

manager, he relied on maitre d's performance input to make staffing and scheduling decisions

(Toal Decl. ¶ 19.).  Red book entries routinely reflect employee "cuts" that were made, and

Plaintiffs and former maitre d's have testified that maitre d's in fact made cuts.  (Pls.' 56.1

Counter-Statement ¶¶ 45, 46.)  In fact, an e-mail from the Les Halles Park Avenue general

manager to which maitre d' Chad Combs replied appears to expressly authorize maitre d's to

make decisions about cuts.  (Schulman Ex. 13, DLH 37077 (describing scenarios where maitre

d' decides the restaurant is overstaffed and an employee volunteers to go home as opposed to

where the maitre d' chooses to send a particular person home).)    Accordingly, it is reasonable to

conclude – and a jury could certainly find – that the red book entries cited by Plaintiffs reflect the

---

Jim + myself"), 35894 (maitre d' Chad recommending discipline for various service employees),
35970 (maitre d' Chad wrote, "I'll say it again.  Best lunch staff").

[7] The notion that the comments concerning employee performance reflect the general managers'
opinions rather than that of the maitre d's is absurd.  There is no dispute that the maitre d's wrote
in the red book.  It would be wholly illogical for a general manager to communicate his or her
opinion of employee performance to a maitre d' so that the maitre d' could record that in the red
book, which would then be reviewed by the general manager.

maitre d's own actions, observations, and recommendations.  To the extent that the Court finds any ambiguity in the proper interpretation of the red book entries, that is a factual question that cannot be decided on summary judgment.  *McCarthy*, 482 F.3d at 202.

Defendants' assertion that Plaintiffs improperly rely on "isolated" examples of maitre d's managerial authority is unavailing.  Pursuant to the Court's directive at the summary judgment pre-motion conference, Plaintiffs have provided evidence of examples of maitre d's exercising meaningful authority.  Plaintiffs have sought to avoid inundating the Court with unhelpful, cumulative evidence.  The examples provided encompass multiple maitre d's at both restaurants over an extended time period and are more than sufficient to support a finding that maitre d's were vested with meaningful authority.  For instance, Plaintiffs have proffered red book entries made by multiple maitre d's at both restaurants covering the entire time period for which Defendants have produced red books.  (*See* Schulman Exs. 18-20; Schulman Decl. ¶ 6.) Similarly, Plaintiffs have submitted e-mails from a time period spanning four years.  (Schulman Exs. 13, 14.)  Finally, the declarations and deposition testimony submitted by Plaintiffs includes detailed information regarding the maitre d's managerial duties which the Court should not disregard, such as specific instances of maitre d's exercising authority with respect to hiring, firing, discipline, scheduling/hours worked, and compensation.  (Pls.' 56.1 Counter-Statement ¶¶ 37-48, 50-51.)

> **iv.    Defendants lost their right to pay Plaintiffs pursuant to New York's tip credit by including maitre d's in the tip pools**

Defendants' contention that an employer may pay service employees pursuant to New York's tip credit when a tip ineligible person is included in the tip pool is incorrect.  On the contrary, in these circumstances the overwhelming weight of authority in this Circuit is clear: the employer is liable to pay for both (a) the difference between the full minimum wage and the tip

14

credit minimum wage, and (b) the reimbursement of the misappropriated tips. *Chowdhury v. GK Grill LLC*, No. 153996/14, 2015 WL 47178, at *4 (N.Y. Sup. Ct. N.Y. County Feb. 3, 2015) ("The federal cases, as cited by plaintiffs, uphold the reimbursement of a tip credit to the employees due to an employer's violations of Labor Law regulations."); *see also*, *e.g.*, *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011) (awarding both New York tip credit damages and tip disgorgement for a violation of § 196-d); *Wicaksono v. XYZ 48 Corp*., No. 10 Civ. 3635, 2011 WL 2022644, at *5 (S.D.N.Y. May 2, 2011), *adopted by* 2011 WL 2038973 (May 24, 2011) (same); *Gunawan v. Sake Sushi Rest*., 897 F. Supp. 2d 76, 89 (E.D.N.Y. 2012) (awarding ordinary, non-tip credit damages for unpaid wages, in additional to tip disgorgement damages, on account of a violation of § 196-d); *Lanzetta v. Florio's Enters*., 763 F. Supp. 2d 615, 624-626 (S.D.N.Y. 2011) (Chin, J.) (same).  In fact, this Court has granted summary judgment for a plaintiff, adopting a magistrate judge's report and recommendation finding the plaintiff entitled to tip credit damages under New York law based on the inclusion of tip-ineligible managers in the tip pool.  *Azkour v. Little Rest Twelve, Inc.*, No. 10 Civ. 4132, 2012 WL 1026730 (S.D.N.Y. Mar. 27, 2012) (Sullivan, J.), *adopting* 2012 WL 402049 (S.D.N.Y. Feb. 7, 2012) (report and recommendation).

   In light of the weight of authority, the single case and New York State Department of Labor opinion letter ("Opinion Letter") cited by Defendants do not justify finding that Plaintiffs cannot recover the tip credit differential under New York law.  The case cited by Defendants is a clear outlier, and the Opinion Letter is not entitled to any deference because the issue of the available remedies under New York law for § 196-d violations is solely a question of legal interpretation:

> While courts defer to the governmental agency which administers the statute
> when the matter "involves knowledge and understanding of underlying

15

operational practices or entails an evaluation of factual data and inferences to be drawn therefore,' *Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451, 459, 403 N.E.2d 159, 426 N.Y.S.2d 454 (N.Y. 1980), deference is not required when "the question is one of pure legal interpretation of statutory terms." *Toys "R" Us v. Silva*, 89 N.Y.2d 411, 419, 676 N.E.2d 862, 654 N.Y.S.2d 100 (N.Y. 1996). . . .

As this is a question of legal interpretation, deference [to a NYSDOL private party opinion letter] is not required.

*Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339-340 (S.D.N.Y. 2005).  Accordingly, Defendants have given no reason for the Court to depart from the weight of authority, including this Court's prior decision, and Plaintiffs can recover the tip credit differential under New York law.

### C.  Plaintiffs' Claims Against Lajaunie Should Not Be Dismissed

Pursuant to N.Y. Lab. L. §§ 198 and 663, an employee may bring a claim against his employers for their failure to unlawfully retain tips and properly pay his wages.  The definition of "employer" under New York wage law is extremely broad and includes both individuals and companies.  *See* N.Y. Lab. L. §§ 2(6) ("'Employer' means the *person* employing any such mechanic, workingman or laborer, whether the owner, proprietor, agent, superintendent, foreman or other subordinate.") (emphasis added), 190(3) ("'Employer' includes any *person*, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service.") (emphasis added), 651(6) ("'Employer' includes any *individual*, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer.") (emphasis added). Consistent with the plain language of the NYLL, New York courts have ruled that corporate officers, agents and shareholders can be held personally liable for failing to pay wages or unlawfully retaining tips if they qualify as the plaintiffs' "employers" under the law.  *See*, *e.g.*, *Bonito v. Avalon Partners, Inc.,* 106 A.D.3d 625, 626 (N.Y. App. Div. 1st Dep't 2013)

("[P]laintiffs here bring suit against [individually named defendant] as an employer, not as a corporate officer. Therefore, plaintiffs are not precluded from asserting claims against [Defendant] under article 6 [NYLL § 190 *et seq.*]."); *Raquer v. Café Buon Gusto Corp.*, No. 11 Civ. 7774 (PAE), 2012 WL 4494882, at *3 (S.D.N.Y. Sept. 28, 2012) (ruling that the "New York Labor Law provides a similar standard [to the FLSA] for determining whether an individual officer is an 'employer'" and determining that the individual defendant could be personally liable under the NYLL); *Janus v. Regalis Constr., Inc.,* No. 11 CV 5788 (ARR) (VVP), 2012 WL 3878113, at *4 (E.D.N.Y. July 23, 2012), *adopted by* 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) (same); *Dong v. Ng*, No. 08 Civ. 917 (JGK) (MHD), 2011 WL 2150544, at *8 & n.15 (S.D.N.Y. Mar. 8, 2011), *adopted by* 2011 WL 2150545 (S.D.N.Y. May 27, 2011) (same); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 264 (S.D.N.Y. 2008) (same).

Courts have repeatedly rejected the argument now made by Defendants that *Patrowich v. Chem. Bank*, 63 N.Y.2d 541 (1984), and *Stoganovic v. Dinolfo*, 92 A.D.2d 729 (N.Y. App. Div. 4th Dep't 1983), bar NYLL liability against individuals who are employers.  *E.g.*, *Bonito*, 106 A.D.3d at 625-26 ("Although there is no private right of action against corporate officers for violations of article 6 of the Labor Law, plaintiffs here bring suit against Au as an employer, not as a corporate officer.  Therefore, plaintiffs are not precluded from asserting claims against Au under article 6."); *Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014) ("[I]n *Patrowich* and *Stoganovic* . . . the courts found that the provisions of NYLL § 198-a subjecting *corporate officers* to criminal sanctions for violation of Article 6 indicated a legislative intent that they not be subject to civil liability.  Plaintiffs here bring suit against the individual Defendants not as corporate officers, but as employees.  The distinction is critical because courts have held that the rule set forth in *Stoganovic* is limited only to claims for unpaid wages against

officers or shareholders who do not qualify as employers under Section 190(3)."); *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009) ("[T]he rule set forth in *Stoganovic* is limited only to claims for unpaid wages against officers or shareholders 'who do not qualify as employers' under Section 190(3). Thus, the viability of the Plaintiffs' Section 191 claims turn on whether they can show that Heffernan and Pedrick are 'employers' within the meaning of Section 190(3)."); *Chung v. New Silver Palace Rest.*, 272 F. Supp. 2d 314, 318 (S.D.N.Y. 2003) ("*Stoganovic* does not affect the issue whether employers may be sued for violations of Article VI [of the NYLL]. In the instant case, plaintiffs bring suit against defendants, not as corporate officers or shareholders, but as employers. The difference is dispositive."). Accordingly, LaJaunie is liable for Plaintiffs' New York claims if he was their employer. Consistent with this legal framework, Plaintiffs alleged in their complaint that LaJaunie was their employer, and that is the basis for his liability in this case. (Schulman Decl. ¶ 5; Dkt. No. 104 ¶¶ 7-11.)

In their moving papers, Defendants set forth no facts or arguments regarding LaJaunie's alleged employer status. They argue only that individuals can never be liable for New York Labor Law violations, a position that is incorrect for the reasons set forth above. While the facts in this case clearly establish that LaJaunie was in fact Plaintiffs' employer, Plaintiffs need not argue that point here, as Defendants have failed to address it. Because Plaintiffs properly seek to hold LaJaunie individually liable based on his employer status, and Defendants have not argued that LaJaunie is not an employer, the New York claims against LaJaunie should not be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

18

Dated: New York, New York
   May 18, 2015

           /s/ Denise A. Schulman
           Denise A. Schulman
           D. Maimon Kirschenbaum
           JOSEPH & KIRSCHENBAUM LLP
           233 Broadway, 5th Floor
           New York, NY 10279
           212-688-5640
           212-688-2548 (fax)

           Jeffrey E. Goldman
           THE LAW OFFICES OF JEFFREY E.
           GOLDMAN
           501 Fifth Avenue, Suite 1900
           New York, NY 10017
           212-983-8999
           212-949-5085 (fax)

           *Attorneys for Plaintiffs, FLSA Collective*
           *Plaintiffs, and proposed Class*