UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ETHAN MURPHY, STEPHANIE CASTILLO,　　　　　Case No.: 13-CV-6503 (RJS)
CHRISTOPHER L. SCOTT, LOGAN SCOTT, NICOLE
CLOUSE, NYAMKA AYINOLA, EDGAR OCOTOXTLE,
and EFRAIN RAMIREZ, on behalf of themselves and
others similarly situated,

          Plaintiff,

  -against-

PHILIPPE LAJAUNIE, LA BOUCHERIE INC., 15 JOHN
CORP., LHLM GROUP, CORP. a/k/a BRASSERIE LES
HALLES NEW YORK and XYZ CORP.,

         Defendants.
------------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**



KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
By: Jeffery A. Meyer, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ............................................................................................ 1

POINT I .................................................................................................... 1

    PLAINTIFFS HAVE FAILED TO SET FORTH FACTS
    ESTABLISHING THAT MAITRE-D'S EXERCISED
    MANSINFUL OR SIGNIFICANT AUTHORITY .......................... 1

POINT II ................................................................................................... 4

    DEFENDANTS WERE ENTITLED TO A TIP CREDIT
    UNDER THE NYLL DESPITE THE INCLUSION OF
    OF MAITRE D'S IN THE TIP ROOM ........................................... 4

POINT III .................................................................................................. 7

    AN INDIVIDUAL CANNOT BE LIABLE AS AN
    EMPLOYER UNDER THE NYLL UNLESS AN
    INDIVIDUAL IS AN EMPLOYER IN THEIR
    PERSONAL CAPACITY ............................................................... 7

POINT IV .................................................................................................. 9

    DEFENDANTS' DECLARATIONS AND EXHIBITS
    WERE NOT IMPROPERLY SUBMITTED ................................. 9

CONCLUSION ....................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Andux v. Woodbury Auto Park, Inc.*
30 A.D.3d 362, 816 N.Y.S.2d 181 (2d Dep't 2006) ........................................................................ 8

*Azkour v. Little Rest Twelve, Inc.*
No. 10 Civ. 4132, 2012 WL 402409 (S.D.N.Y. Mar 27, 2012) ....................................................... 6

*Barenboim v. Starbucks Corp*
 21 N.Y.3d 460 (2013) ............................................................................................................ *passim*

*Barenboim v. Starbucks Corp.*
541 Fed. Appx. 1 (2d Cir. 2013) ..................................................................................................... 3

*Chowdhury v. G.K. Grill LLC,*
No. 153996/14, 2015 WL 47178 (Sup. Ct. N.Y. County Feb. 3, 2015) ......................................... 5

*Copantitla v. Fiskardo Estiatorio, Inc.*
788 F. Supp. 2d 253 (S.D.N.Y. 2011) ............................................................................................ 5

*Enclada v. SDNY 19 Mad Park, LLC*
No. 13 Civ. 1926 (PAC) (S.D.N.Y. Nov. 16, 2014) ....................................................................... 1

*Guardian Life Ins. Co. v. Gilmore,*
45 F.Supp. 310 (S.D.N.Y. 2014) .................................................................................................... 2

*Gunawan v. Sake Sushi Rest.*
 897 F.Supp. 2d 76, 89 (E.D.N.Y. 2012) ........................................................................................ 6

*Irizarry v. Catsirnatidis,*
722 F.3d 99, 117 (2d Cir. 2013) ..................................................................................................... 7

*Lanzetta v. Florio's Enters.*
763 F.Supp.2d 615, 624-626 (S.D.N.Y. 2011) ............................................................................... 6

*Marzovilla v. New York State Industrial Board of Appeals*
127 A.D.3d 1452, 2105 WL 1724727 (3rd Dep't 2015) ................................................................. 2

*Patrowich v. Chemical Bank*
63 N.Y.2d 541, 543 (1984) ............................................................................................................. 8

*Robles v. Copstat Sec. Inc.*
 2009 U.S. Dist. LEXIS 54963 (S.D.N.Y. June 29, 2009) .............................................................. 8

*Schear v. Food Scope America, Inc.*
 297 F.R.D. 114,  (S.D.N.Y. 2014) ....................................................................................... *passim*

*Stoganovic v. Dinolfo*
61 N.Y.2d 812 (1984) ...................................................................................................................... 8

*U.S. v. Dauray*
215 F.3d 257, 260 (2d Cir. 2000).................................................................................................... 5

*Wicaksono v. XYZ 48 Corp.*
 No. 10 Civ. 3635, 2011 WL 2022644 (S.D.N.Y. May 2, 2011) ..................................................... 5

**Statutes**

29 U.S.C. § 203(d) ......................................................................................................................... 7

29 U.S.C. § 216(b) ......................................................................................................................... 7

Fed. R. Civ. P. 56........................................................................................................................... 1

N.Y. Lab. Law § 651.6 .................................................................................................................. 7

N.Y. Lab. Law § 662. .................................................................................................................... 8

NYLL § 195-d................................................................................................................................ 4

NYLL § 196-d............................................................................................................................ 5, 6

NYLL § 663 ............................................................................................................................. 7 - 8

**PRELIMINARY STATEMENT**

Defendants Philippe LaJaunie, La Boucherie, Inc. and 15 John Corp. (collectively "Defendants") respectfully submit this Memorandum of Law, with the accompanying in support further of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Here Plaintiffs admit that at all times, with tips included; they earned more than the hourly minimum wage. As a result, Defendants were entitled to the tip credit even if NYLL 196-d was violated. Accordingly, Defendants are not obligated to reimburse Plaintiffs for the difference between the minimum wage and the food service worker minimum wage. In addition, the Individual Defendant, Philippe LaJaunie, cannot be held liable under the NYLL because he is not *the employing entity.* Finally, for the reasons discussed herein, Plaintiffs fail to offer admissible evidence demonstrating that Maître Ds possessed meaningful or significant authority. As a result, they were not tip-ineligible.

**ARGUMENT**

**POINT I**

**PLAINTIFFS HAVE FAILED TO SET FORTH FACTS ESTABLISHING THAT MAITRE-D'S EXCERCISED MEANINGFUL OR SIGNIFICAT AUTHORITY**

The parties do not dispute that *Barenboim v. Starbucks Corp.* 21 N.Y.3d 460 (2013) is controlling. Nor do the parties dispute that, pursuant to *Barenboim,* a Maitre-D is tip ineligible if he exercises *meaningful* or *significant* authority over tipped employees. In order for a Maitre-D to exercise meaningful or significant authority, a Maitre-D must *frequently* exercise such authority. *See Enclada v. SDNY 19 Mad Park, LLC,* No. 13 Civ. 1926 (PAC), at 9-10 (S.D.N.Y. Nov. 16, 2014) (Maitre-D found to have exercised meaningful or significant authority where he

frequently interviewed new employees, frequently disciplined employees, frequently terminated employees, and had sole authority over employee scheduling); *Alvarado v. Five Towns Car Wash,* (employees did not have final or regular authority over hiring and firing and could not be found have exercised meaningful or significant authority); *See Marzovilla v. New York State Industrial Board of Appeals,* 127 A.D.3d 1452, 2105 WL 1724727 (3rd Dep't 2015) (head waiter was tip ineligible because he *extensively* participated in the hiring process and the creation of employee schedules). Here, the "evidence" cited by Plaintiffs falls far short of demonstrating such, frequent, meaningful, or significant authority.

In their opposition, Plaintiffs' primarily rely on the redbook and claim that because the red book entries are written in the first person, they must reflect actions taken by the Maître-Ds. But, Plaintiffs have not provided a single declaration or pointed to a single piece of testimony by any current or former Maître-D demonstrating that the redbook entries reflect decisions made and actions taken by a Maître-D and not a record of what occurred in the restaurants. Plaintiffs can only raise issues of fact to oppose summary judgment through *admissible* evidence. *See Guardian Life Ins. Co. v. Gilmore*, 45 F.Supp. 310 (S.D.N.Y. 2014) ("the principles governing admissibility of evidence do not change on a motion for summary judgment and as a result only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment"). Here, the problem for Plaintiffs is that a significant portion of the redbook entries they cite contain inadmissible hearsay and therefore, cannot be used to oppose summary judgment.[1]

In fact, there is little admissible evidence to show that the Maître Ds regularly hired or fired employees. Plaintiffs claim that Maître Ds were regularly involved in hiring or firing, or

---

[1] Even if Plaintiffs argue that the cherry picked pages of the Redbook would be admissible as a business record, almost all of the pages contain records of conversations or occurrences that are inadmissible as hearsay within hearsay.

20

made the decisions themselves. (*See Pls. 56.1 Counter Statement at § 37*). But the material cited by Plaintiffs simply does not offer admissible evidence support this argument.[2] Similarly, Plaintiffs' deposition testimony does not support counsel's argument that Maître Ds regularly disciplined employees. (*See Pls. 56.1 Counter Statement at § 39-42*).[3] Moreover, even if Maître Ds had some input in scheduling or determining when to "cut" tipped employees when business is slow on a limited basis or on sporadic occasions, Plaintiffs admit that the General Managers of the restaurant were the only employees who had regular authority over scheduling. (*See Def. 56.1* at ¶ 20-21). Finally, the fact that Maître Ds provided some input to management regarding employee performance does not establish "meaningful or significant control." (*See Barenboim v. Starbucks Corp.*, 541 Fed. Appx. 1 (2d Cir. 2013) (Starbucks shift supervisors did not exercise "meaningful or significant control" even though they provided feedback regarding barista performance).[4]

---

[2] For example, plaintiff Ramierez claimed that John, a Maître D fired him. However, Rameriez actually testified that, in reference to a scheduling change, John told him that "If [you] don't like it, you have to leave." *See Schulman Dec. Ex. 7* at 72:14-25. Thus, no matter how Ramierez felt about the conversation, it is unclear if John actually terminated Ramierez's employment or Rameriez quit because of the scheduling change. Plaintiff Severs claims that Maître Ds were responsible for hiring, but his claim is based on his observation of a single occasion when Maître Ds were handed resumes by prospective employees during a conversation at a table in the restaurant. *Schulman Dec. Ex. 3* at 144:14-25. Plaintiff Moyakabi testified that she observed John Lopez, a Maître D tell an employee to go home because "he did not like [the employee's work]." *See Schulman Dec.* Ex. 10. But this testimony is hearsay since it is being offered for the truth of the matter asserted. Plaintiff Ben Scott claimed he was hired by a Maître D, but there is no testimony which establishes that he had any personal knowledge of who made the decision to hire him. *See Schulman Dec. Ex. 5 at 29*. Plaintiff Verner's self-serving testimony, to the extent it conflicts with his prior sworn declaration, should be completely disregarded. *Schulman Dec.* Ex 4; *See Ramos v. Baldor Specialty Foods, Inc.,* 687 F.3d 554, 556 (2d Cir.2012) (declining "to consider those portions of plaintiffs' declarations that conflict with prior deposition testimony"). In addition, even if the Court were inclined to consider Verner's testimony, it is devoid of specifics regarding the alleged hiring and firing he witnessed. Finally, the three Redbook entries cited by Plaintiffs, even if they could be considered to be a record of isolated actions of a single Maître D, fall far short of establishing that other Maître Ds frequently exercised such authority. *See Pls. 56.1 Counter Statement* at § 37.

[3] For example, plaintiff Crucianelli admits that he was reprimanded by a Maître D on only one occasion. *See Schulman Dec. Ex. 6* at 73:4-9. On that occasion, a female Maître D told Crucianelli that she "was not happy with his service." *See Schulman Dec. Ex. 6* at 71:8-10. Crucianelli admits that he never wrote up an employee as a Maître D. *Schulman Dec. Ex. 6* at 80:16-19. Plaintiff Logan Scott also admits that he never issued written discipline to an employee when he was working as a Maître D. *Schulman Dec. Ex. 5* at 136:16-17.

[4] Likewise, the fact that Maître Ds handled customer complaints, voided, or "comped" items has little bearing on whether they exercised meaningful or significant authority over tipped employees because these functions relate to customer service. In addition, the fact that a Maître D sent an injured employee to the hospital due to an emergency

Plaintiffs do not dispute that the Maître Ds primary function was customer service. In *Barenboim* the Court of Appeals held that an employee who regularly services patrons can possess limited supervisory responsibilities and participate in a tip pool as long as such responsibility is not meaningful or significant. *See Barenboim* 21 N.Y.3d at 473. Here, the admissible evidence before the Court shows that the authority exercised by Maître Ds was not frequent, meaningful, or significant. And the fact that, construing the admissible evidence in the light most favorable to Plaintiffs, Maître Ds may have exercised some authority over tipped employees on isolated occasions is insufficient to satisfy the standard articulated in *Barenboim*. Accordingly, the inclusion of Maître Ds in the tip pool was proper.

## POINT II

### DEFENDANTS WERE ENTITLED TO A TIP CREDIT UNDER THE NYLL DESPITE THE INCLUSION OF MAITRE D'S IN THE TIP POOL

Plaintiffs' admit that, even with the inclusion of Maître Ds in the tip pool, their hourly earnings, including the tips they received, always exceeded minimum wage.[5] Because of this undisputed fact, Defendants are not obligated to reimburse Plaintiffs for the difference between the minimum wage and the food service worker minimum wage, *as a result of the inclusion of* Maître Ds in the tip pool, even if said inclusion violates NYLL § 195-d. *See Schear v. Food Scope America, Inc.,* 297 F.R.D. 114, 133, (S.D.N.Y. 2014).

Plaintiffs claim that *Schear* should be disregarded because the New York State Department of Labor's opinions and interpretations of the statutes it is supposed to enforce should have no bearing on the Court's analysis. Although Defendants submit that this argument

---

on a single occasion does not establish that Maître D's had general managerial responsibility over the *entire* restaurant.
[5] *See* Plaintiff's Rule 56.1 counter statement of material facts at ¶ 32.

is patently flawed,[6] Defendants need not address it because the *Schear* Court did not simply adopt the Department of Labor's opinion of the law, it arrived at its holding through its own interpretation of the plain language of NYLL § 196-d.

The starting point of any statutory analysis is the plain meaning of the statute itself. *See U.S. v. Dauray,* 215 F.3d 257, 260 (2d Cir. 2000). Here, § 196-d expressly states: "Nothing in this subdivision shall be construed as affecting the allowances *from the minimum wage* for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter." In *Schear*, because of this language, the Court held that a violation of § 196-d does not prevent an employer from paying a restaurant server the food service worker minimum wage. *See Schear,* 297 F.R.D. at 133. The plain language of the statute cannot be ignored.

Of course, the cases cited by Plaintiffs entirely fail to address the language of NYLL § 196-d. Moreover, they are distinguishable because, unlike here, in each case Plaintiffs cite the violation of NYLL § 196-d resulted in tip pool members receiving less than minimum wage. *See Chowdhury v. G.K. Grill LLC,* No. 153996/14, 2015 WL 47178 at *2 (Sup. Ct. N.Y. County Feb. 3, 2015) (motion to dismiss denied where tipped employees alleged that they "were not paid minimum wage and required to work off the clock"); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011);[7] *Wicaksono v. XYZ 48 Corp.,* No. 10 Civ. 3635, 2011 WL

---

[6] New York Courts give weight to the Department of Labor's interpretation unless it is unreasonable or irrational. *See Seenaraine v. Securitas Sec. Services USA, Inc.* 37 A.D.3d 700 (2d Dep't 2007). Indeed, courts have deferred to the opinions of the agency charged with enforcing a statute. *See e.g. Yang v. ABCL Corp.,* 2005 U.S. Dist. LEXIS 31567, *26-27 (S.D.N.Y. Dec. 5, 2005).

[7] Plaintiffs' citation to *Copantitla* is especially disingenuous because in that case, defendant's entitlement to the tip credit was invalidated because defendant failed to maintain the records necessary to be entitled to a tip credit under the NYLL in the first place. *See Copantitla*, 788 F.Supp.2d at 290 ("Here, although defendants provided plaintiffs with a pay statement listing hourly pay, deductions, and tip income, the pay statements do not show "allowances ... claimed as part of the minimum wage." Neither do defendants' payroll records show "allowances ... claimed as part of the minimum wage." Both the pay statements and the payroll records show only that plaintiffs earned tip-related income; they do not record that any of the tip income was claimed as part of the minimum wage. Accordingly,

23

2022644 at *5 (S.D.N.Y. May 2, 2011) (servers working five to five and a half days per week and only being paid $80-$85 dollars weekly were awarded "tip credit damages" for a violation of § 196-d); *Gunawan v. Sake Sushi Rest.,* 897 F.Supp. 2d 76, 89 (E.D.N.Y. 2012) (Gunwan, who was paid $500 per month regardless of the number of hours she worked (she worked approximately 67 hours a week), was entitled to "tip credit damages" due to the fact that the restaurant retained 10% of her tips in violation of § 196-d); *Lanzetta v. Florio's Enters.,* 763 F.Supp.2d 615, 624-626 (S.D.N.Y. 2011) (Plaintiff, who worked 60 hours per week, worked for tips only and received no wages); *Azkour v. Little Rest Twelve, Inc.,* No. 10 Civ. 4132, 2012 WL 402409 (S.D.N.Y. Mar 27, 2012) (Azkour, who worked "at least 10 hours per day, 6 days per week," "received routinely no more than $60 a week, via check, and, $200, in cash, for tips").

Thus, the "weighty" authority cited by Plaintiffs' really has no weight here whatsoever. If anything, the cases cited by Plaintiffs show that most wage and hour matters, arising in the restaurant industry, involve Plaintiffs who receive far less than minimum wage, even with tips included. Contrary to the caselaw cited by Plaintiffs, since they admit, in this case before the Court, that they always received more than minimum wage, *Schear* is controlling. *See Schear,* 297 F.R.D. at 133 ("Plaintiffs have not alleged that the inclusion of the alleged tip ineligible employees in the tip pool resulted in their receiving less than New York's minimum wage. Thus, Defendants' motion for summary judgment regarding Plaintiffs' third cause of action is granted").

In sum, Plaintiffs' effort to conglomerate easily distinguishable caselaw to craft a remedy that the statute, *by its plain language,* expressly declines to afford must be summarily rejected and summary judgment should be granted with respect to Plaintiffs' fourth cause of action.

---

defendants have failed to meet this requirement of claiming a "tip allowance" under New York law.") (citations omitted). The violation of the NYLL's record keeping requirements is distinct from a violation of NYLL § 196-d.

24

## POINT III

## AN INDIVIDUAL CANNOT BE LIABLE AS AN "EMPLOYER" UNDER THE NYLL UNLESS AN INDIVIDUAL *IS* AN EMPLOYER IN THEIR PERSONAL CAPACITY

Plaintiffs claim that New York State and Federal Courts universally recognize that corporate officers, agents and shareholders may be individually liable as employers under the NYLL. Plaintiffs cite decisions echoing a prevailing misconception that the FLSA standard, for employer status, recently re-interpreted by the Second Circuit in *Irizarry v. Catsirnatidis,* 722 F.3d 99, 117 (2d Cir. 2013),[8] applies under state law and completely fails to address the subtle statutory differences between the FLSA and the NYLL. Plaintiffs' arguments are no substitute for legal analysis which demonstrates that New York law does not impose any individual or personal liability on the individual defendant Phillipe Lajaunie.

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wage." 29 U.S.C. § 216(b). The definition of employer under the FLSA expressly "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Therefore, a person can be an FLSA "employer" when they act in the interest of the employer in relation to the employee – *e.g.,* hire and fire the employee, set wages, and make schedules.

The NYLL, on the other hand, uses entirely different statutory language. For the purpose of NYLL Article 19 (the Minimum Wage Act), "'employer' includes any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons acting as employer." N.Y. Lab. Law § 651.6. With respect to unpaid minimum wages, NYLL §

---

[8] Indeed, the New York Court of Appeals has yet to apply the *Irizzary* test for FLSA employer status to the NYLL.

663 authorizes a civil action "if any employee is paid by his employer less than the wage to which he is entitled." The NYLL, unlike the FLSA, does not impose liability for an individual acting in the interest of an employer, but instead only imposes civil liability on the employing entity. It is undisputed that the corporate defendants, La Boucherie, Inc. and 15 John Corp. were the employing entities here. This interpretation is made inescapable by the immediately preceding section of the NYLL imposing criminal liability for non-payment of wages upon *officers or agents* of a corporation. N.Y. Lab. Law § 662. The inclusion of "officer or agent of any corporation" in this section is wholly unnecessary if the NYLL's definition of "employer" already included such persons.

This differential wording in adjacent sections of the NYLL led the New York Court of Appeals to conclude that officers and agents of a corporation that officers and agents of a corporation are not personally liable for unpaid wages under Article 6 of the NYLL. *Stoganovic v. Dinolfo*, 61 N.Y.2d 812 (1984); *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 543 (1984). Plaintiffs' claims here arise under Article 6, and as a result, *Patrowich* and *Staoganovic* require the summary dismissal of all NYLL claims against the individual Defendant, Phillipe Lajaunie. *See e.g., Robles v. Copstat Sec. Inc.,* 2009 U.S. Dist. LEXIS 54963, at *12 (S.D.N.Y. June 29, 2009) ("Agents and officers are not subject to liability under the Minimum Wage Act absent piercing of the corporate veil"); *Andux v. Woodbury Auto Park, Inc.*¸ 30 A.D.3d 362, 362, 816 N.Y.S.2d 181 (2d Dep't 2006) (finding individual was not labile pursuant to Labor Law Article 6 for the obligations of the corporate Defendant).

Plaintiffs' arguments regarding individual liability under New York Law[9] completely misconstrue the law. Indeed, Plaintiffs mistake the concept that an individual can only be held as

---

[9] Plaintiffs rely on *Bonito v. Avalon Partners, Inc.* 106 A.D.3d 625, 626 (1st Dep't 2013) for the proposition that, despite the holdings of *Stoganovic* and *Patrowich*, an individual can be held to be an "employer" even if he does not

an employer under the NYLL if that individual *is the employing entity* with a concept of individual liability for managers and shareholders.  But Plaintiffs' misconception is not the law, and accordingly, Plaintiffs' NYLL claims against the individual Defendant, Phillipe Lajaunie must be dismissed.

**POINT IV**

**DEFENDANTS' DECLARATIONS AND EXHIBITS WERE NOT IMPROPERLY SUBMITTED**

Defendants do not dispute that the Court set a limit of 15 declarations and 20 exhibits (of 15 pages each) for the pending Rule 56 and Rule 23 briefings.  Rather than submit separate records for each motion, Defendants submitted a combined factual record to support their motion for summary judgment and to oppose Plaintiffs' motion for class certification.  In so doing, Defendants interpreted the Court's order to mean that they could submit a few extra pages and a few extra declarations since Defendants were foregoing their right to submit a second set of exhibits and declarations.

While Defendants respect the Court's desire to not waste time with extra submissions, Defendants submit that their record is rather lean.  In contrast, Plaintiffs submitted a grand total of 33 exhibits and 8 declarations/affidavits in support of their Rule 23 motion and in opposition to this motion.  Defendants submit that the pending motions should be judged on a complete factual record and respectfully request that the Court consider the entire factual record submitted in support of this motion.

---

"employ" in his personal capacity.  However, in this case, the First Department brushed aside *Stoganovic* and *Patrowich* without even analyzing their reasoning.

## **CONCLUSION**

Defendants respectfully request that the Court grant Defendants' motion for summary judgment, and award Defendants such other and further relief as the Court deems just and proper.

Dated:   Woodbury, New York
         June 1, 2015

                              Respectfully submitted,

                              KAUFMAN DOLOWICH & VOLUCK, LLP

                              By: _____/s *Jeffery A. Meyer*_____
                                      Jeffery A. Meyer, Esq.
                              *Attorneys for Defendants*
                              135 Crossways Park Drive, Suite 201
                              Woodbury, New York 11797
                              (516) 681-1100

4829-5191-4020, v. 1