UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ETHAN MURPHY, *et al.*,

                Plaintiffs,

-v-

PHILIPPE LAJAUNIE, *et al.*,

                Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-24-15

No. 13–cv–6503 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiffs, former employees of Brasserie Les Halles Park Avenue and Les Halles John Street (the "Restaurants"), bring this action on behalf of themselves and others similarly situated, pursuant to the federal Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL"), alleging that Defendants Philippe LaJaunie, La Boucherie Inc., 15 John Corp, and LHLM Group, Corp., a/k/a Brasserie Les Halles New York, have violated the minimum wage and overtime provisions of both statutes, as well as NYLL's spread of hours and misappropriation of gratuities provisions. Now before the Court is Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure for the NYLL claims of all non-exempt persons employed by Defendants at the Restaurants in any tipped position on or after September 5, 2006 ("NYLL Class"). For the reasons set forth below, Plaintiffs' motion is granted.

I. BACKGROUND

A. Facts

    Brasserie Les Halles is a French restaurant with locations at John Street and Park Avenue. (Defs.' Local Civil Rule 56.1 Statement, Doc. No. 176 ("Defs. 56.1") ¶ 1). Plaintiffs are former servers, bussers, and bartenders who worked at the Restaurants between 2006 and 2014. Since 2005,

the Restaurants have maintained separate tip pool policies. (*Id.* ¶ 4.) Participants in the tip pool at both locations include: (a) maître d's; (b) servers; (c) bussers; (d) runners; and (e) bartenders (collectively the "Tip Pool Employees"). (*Id.* ¶ 5.) The Tip Pool Employees are allocated a certain number of points in or percentage of the Tip Pool based on their positions. (*Id.* ¶ 6.)

According to Defendants, the maître d's had regular interactions with customers, including: (a) seating guests; (b) working with servers and bussers when they needed assistance to take drink and food orders, as well as delivering the orders or clearing the table when needed; (c) providing menus to the guests after they were seated; (d) recommending and serving wine; and (e) serving and/or preparing tableside meals for patrons. (*Id.* ¶ 9.) Although maître d's served as team leaders to the servers, bussers, and bartenders, they were ultimately supervised by the general managers. (*Id.* ¶ 10.) Defendants argue that general managers are the only employees at the Restaurants with the power and responsibility to: (a) hire, fire, and discipline employees; (b) set employee schedules; (c) determine the employees' rates and methods of pay; and (d) maintain employment records. (*Id.*) For their part, Plaintiffs allege that the maître d's had authority to hire and fire employees, some having hired or fired the Plaintiffs themselves. (Compl. ¶ 48.) In addition, according to Plaintiffs, maître d's allegedly interviewed applicants, managed the recruitment process, made recommendations about who to hire or fire, issued written warnings about employees, verbally reprimanded employees, sent employees home for disciplinary infractions, and participated in disciplinary meetings. (Plaintiffs' Local Civil Rule 56.1 Counter-Statement, Doc. No. 182 ("Pls. 56.1") ¶¶ 37–48.) Furthermore, Plaintiffs allege that maître d's assigned tasks, controlled employee schedules, and calculated the tip distribution. (*Id.*)

B. Procedural History

On September 4, 2012, Ethan Murphy initiated this action by filing the original complaint in New York State Supreme Court, New York County, asserting putative class claims under New

2

York law. (Jan. 30, 2015 Schulman Decl. ¶ 4; Compl., *Murphy v. LaJaunie*, N.Y. Sup. Ct., No. 103550–2012.) One year later, on September 16, 2013, Defendants removed this action to federal court. (Doc. No. 1.) On May 19, 2014, Plaintiffs filed the Fourth Amended Complaint, adding an additional named Plaintiff, the spread of hours claim, a New York Labor Law minimum wage claim, and an unpaid overtime claim. (Doc. No. 104.)

On May 7, 2014, the Court granted Plaintiffs' motion for conditional certification of the FLSA claims to proceed as a collective action pursuant to 29 U.S.C. § 216(b). (Doc. No. 95.) Thereafter, Defendants identified 257 putative members of the collective class who worked for Defendants as servers, runners, bussers, and/or bartenders between August 12, 2010 and May 2014. (Jan. 30 Schulman Decl. ¶ 11.) Of these employees, 135 worked at Les Halles John Street and 122 worked at Les Halles Park Avenue. (*Id.*) Plaintiffs' counsel mailed notice to all putative members of the collective class identified by Defendants. (*Id.*) In addition to the named Plaintiffs, 72 individuals opted into this action. (*Id.* ¶¶ 12, 13.) Fact discovery closed on November 24, 2014. (Doc. No. 142.)

On January 30, 2015, Plaintiffs filed the instant motion for Rule 23 class certification with respect to the NYLL claims. (Doc. No. 152 ("Class Mem.").) Defendants filed their opposition on April 6, 2015. (Doc. No. 167 ("Class Opp'n").) The motion became fully briefed on May 18, 2015, when Plaintiffs filed their reply. (Doc. No. 179 ("Class Reply").)

II. LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs class certification. In order to proceed as a class action, the proposed class must meet the following Rule 23(a) prerequisites:

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 98–99 (2d Cir. 2007). If the Rule 23(a) criteria are satisfied, the proposed class must also qualify under at least one of the categories provided in Rule 23(b) to be certified as a class action. *See Cordes*, 502 F.3d at 104. Plaintiffs seek certification under Rule 23(b)(3), which allows for class certification if common questions "predominate over any questions affecting only individual members" and if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To alert class members to their right to "opt out," Rule 23 also requires "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Finally, Rule 23(g) provides that "a court that certifies a class must also appoint class counsel." Fed. R. Civ. P. 23(g)(1).

A plaintiff moving for class certification must establish each of the Rule 23 requirements by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). The burden to prove each element is on the party seeking certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). In order to certify a class, the Court must "resolve[] factual disputes relevant to each Rule 23 requirement" and find that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Although the Rule 23 analysis may overlap with merits issues, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Id*. The only question at the class certification stage "is whether [plaintiffs] may pursue those claims on behalf of a class of similarly situated persons, or whether they must do so as individuals." *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 476 (S.D.N.Y. 2005).

The district court is afforded broad discretion in class certification questions because it is often in the best position to assess the propriety of the class action. *Sumitomo Copper Litig. v.*

4

*Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001). Additionally, the district court has the ability to "alter or modify the class, create subclasses, and decertify the class whenever warranted." *Id.*

Although there are "broad commonalities" between federal and state labor law actions, the key differences in certification are "the time span (three years for 'willful' FLSA claims versus six for NYLL claims) and the default scope of the class (opt-in for FLSA claimants and optout for NYLL claimants)." *Megason v. Starjem Rest. Corp.*, No. 12–cv–1299 (NRB), 2014 WL 113711, at *6 (S.D.N.Y. Jan. 13, 2014). Furthermore, the requirements to grant class certification under Rule 23 are much more rigorous than the "similarly situated" standard that applies to FLSA collective actions. *Levinson v. Primedia*, No. 02–cv–2222 (CBM), 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).

### III. Discussion

For the reasons set forth below, the Court finds that Plaintiffs have met the requirements of Rule 23 and that class certification is appropriate.

#### A. Rule 23(a) Requirements

A proposed class must satisfy the following four prerequisites in order to qualify for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

Under the first prong of Rule 23(a), the proposed class must be "so numerous that joinder of each member is impracticable." Fed. R. Civ. P. 23(a). Impracticability is satisfied where individual adjudication would take a long period of time, *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 351 (E.D.N.Y. 1997), and joinder of the claims into one proceeding would be "expensive, time-consuming, and logistically unfeasible," *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992). However, "[i]mpracticable does not mean impossible." *Robidoux v. Celani*,

987 F.2d 931, 935 (2d Cir. 1993). Rule 23(a)(1) numerosity is presumed where a putative class has forty or more members. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). Plaintiffs have satisfied the numerosity requirement because they have identified 257 class members who worked for Defendants for "just a portion of the Class period – August 12, 2010 to May 2014." (Class Mem. at 13.) Joinder of each class member into one proceeding is clearly impracticable, and would be expensive, time consuming, and logistically unfeasible.

Although the Court considers the two requirements separately, commonality and typicality "'tend to merge into one another, so that similar considerations animate [the] analysis' of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)); *see also Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."). Commonality is met "if plaintiffs' grievances share a common question of law or of fact." *Marisol A.*, 126 F.3d at 376. Commonality does not require all issues to be identical as to each member; rather, it requires "that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (internal quotation marks omitted). Even a single common issue of law may satisfy the commonality requirement if it is at the core of the alleged cause of action. *Friedman–Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 155 (S.D.N.Y. 2010).

Here, Plaintiffs have raised questions of fact or law that are common to all class members, including whether: (1) maître d's were eligible to receive tips under § 196-d; (2) Defendants' policy of distributing a portion of the tips to maître d's and bar managers was unlawful; (3) Defendants'

policy, practice, and procedure of not paying a spread of hours premium when Class members' spread of hours exceeded 10 hours was unlawful; and (4) Defendants' policy, practice, and procedure of paying Class members less than $4.65 per hour between July 24, 2009 and December 31, 2010 was unlawful. In this Circuit, courts have found that similar cases satisfy the commonality requirement. *See, e.g.*, *Shahriar*, 659 F.3d at 252 (finding commonality where the NYLL class claims all derived from the same compensation policies and tipping practices and "arose under the same New York State statutes and regulations"); *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 351–52 (W.D.N.Y. 2014), *reconsideration denied*, No. 13–cv–06455 (EAW), 2014 WL 5088879 (W.D.N.Y. Oct. 8, 2014) (finding commonality where all class members allegedly suffered the same harm from Defendants' deficient wage and tip notices); *Schear*, 297 F.R.D. at 124 (S.D.N.Y. 2014) (finding commonality where all plaintiffs were subject to the same allegedly illegal tip policies of their employer). Similar to the class members in *Shahriar*, *Hicks*, and *Schear*, all of Plaintiffs' proposed class members were affected by the same restaurant-wide policies. Thus, their claims share a "unifying thread" that warrants class treatment. *See Damassia*, 250 F.R.D. at 156. Additionally, "[t]he harm that the named [p]laintiffs have allegedly suffered in this case is the same harm suffered by each class member," *Schear*, 297 F.R.D. at 124, since the alleged harm resulted from policies that applied to all Tip Pool Employees at the Restaurants.

Typicality requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936. A plaintiff's claims are typical of the class claims where their "'injuries derive from a unitary course of conduct by a single system.'" *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (quoting *Marisol A.*, 126 F.3d at 377). The factual predicate of each claim does not need to be identical to that of all class members. *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 625 (S.D.N.Y. 2010). The typicality requirement is usually met when "the

same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, . . . irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.

Plaintiffs have satisfied the typicality requirement because Plaintiffs' and the class members' "injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377. Both the named Plaintiffs and the proposed class members were tip-eligible employees who were affected by the same restaurant-wide tip pooling, overtime, and minimum wage policies. Since 2005, the Tip Pool Employees participated in front of the house tip pools at the Restaurants. (Defs. 56.1 ¶ 5.) Although the Restaurants had slightly different policies for how Tip Pool Employees received their tips – at John Street each received points based on his or her positions and at Park Avenue each received a percentage – the policies applied to all of the Tip Pool Employees at each location. (*Id.* ¶¶ 4, 6.) Additionally, the Restaurants' overtime and minimum wage policies applied to the proposed class. (Compl. ¶ 36–41.) Not surprisingly, courts have found typicality where, as here, employees were affected by the same employment policies. *See, e.g.*, *Shahriar*, 659 F.3d at 252 (finding typicality in a tip pool case because a determination that certain employees were "included inappropriately in the tip pool" would "affect every plaintiff and would result in everybody else getting something more") (internal quotation marks omitted); *Spicer*, 269 F.R.D. at 337 (finding commonality and typicality where all class members were subject to the same policies regarding their employers' distribution of a service charge); *Schear*, 297 F.R.D. at 124–25 (finding typicality satisfied where all class members were tipped front of the house employees who were allegedly denied gratuities that they were entitled to receive). Thus, since each class member's claim arises from the same restaurant-wide tip pooling, overtime, and minimum wage policies, and requires similar legal arguments to prove Defendants' liability, Plaintiffs clearly have demonstrated typicality. *See Robidoux*, 987 F.2d at 936.

Finally, Rule 23(a) requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To meet the adequacy requirement, "the class members must not have interests that are antagonistic to one another," *Brown*, 609 F.3d at 479 (internal quotation marks omitted), and class counsel must be "qualified, experienced, and able to conduct the litigation," *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. A conflict must be "fundamental" for it to defeat a motion for certification. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Plaintiffs have proposed six class representatives who do not have any interests that are antagonistic to the other class members. The Court is satisfied that Plaintiffs are prepared to fully prosecute the action and have no conflicts with any class member. As such, Plaintiffs have met the Rule 23(a) adequacy requirement.

Although not explicitly required by Rule 23(a), "courts have required that 'a class be identifiable before it may be properly certified.'" *Schear*, 297 F.R.D. at 125 (quoting *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 396 (N.D.N.Y. 2011)). In *Schear*, the class was easily identified from the defendants' records because it was comprised of "the tip eligible employees who worked at [the restaurant] throughout the class period." *Id*. Similarly, the class here is easily ascertainable since Defendants have records of all of the Tip Pool Employees who worked at the Restaurants. Moreover, the parties have already identified a large portion of the class for the FLSA claims, making it even easier to identify the NYLL class members.

### B. Rule 23(b)(3) Requirements

As noted above, to satisfy Rule 23(b)(3), Plaintiffs must show that common questions "predominate over any questions affecting only individual members" and that class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

9

Civ. P. 23(b)(3). To alert class members to their right to "opt out," Rule 23 also requires "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see Amchem*, 521 U.S. at 617.

Generally speaking, the predominance inquiry tests "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Brown*, 609 F.3d at 476 (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006)). This requirement is met if "the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Cordes*, 502 F.3d at 107–08 (citation, internal quotation marks, and alterations omitted). Although predominance "is a more demanding criterion than the commonality inquiry under Rule 23(a)," *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002), the mere existence of individualized defenses does not preclude a finding of predominance, *Brown*, 609 F.3d at 485, so long as "a sufficient constellation of common issues binds class members together," *id.* at 483 (internal citations and quotation marks omitted).

Rule 23(b)(3) also requires that a class action be the most fair and efficient method of resolving the case. Fed. R. Civ. P. 23(b)(3). In conducting this superiority analysis, courts consider four nonexclusive factors: (1) the interest of the class members in controlling the litigation of separate actions; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Both the predominance and superiority requirements have been met here. Plaintiffs challenge the Restaurants' commonly applied employment policies and practices. (Class Mem. at 19.) Courts in this District have routinely found that common questions predominate in wage and

10

hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices. *See, e.g., Enea v. Bloomberg, L.P.*, No. 12–cv–4656 (GBD), 2014 WL 1044027, at *6–7 (S.D.N.Y. Mar. 17, 2014) (finding predominance where the defendant's legal argument and defenses applied equally against all potential class members and the defendant did not identify any issues with respect to liability that would require individual inquiries); *Megason*, 2014 WL 113711, at *6–7 (finding predominance where the defendants' practice of permitting tip ineligible employees to share in tip pools affected all other tip eligible employees in the proposed class); *Schear*, 297 F.R.D. at 125–26 (finding that class issues predominated over individualized issues because if the plaintiffs succeeded in showing that certain employees who participated in the tip pool were not eligible to receive tips under New York law, each of the class members would likely prevail on his or her § 196-d claims). Similarly, in this action, the issues of whether the Restaurants' tip pool, spread of hours, and minimum wage policies were lawful predominate over all individualized inquiries. Moreover, the fact that each class member's damages may vary is not relevant to the predominance inquiry, because damages calculations merely entail the application of simple mathematical computations that are consistent with the theories of liability. *See, e.g., Schear*, 297 F.R.D. at 126 (finding that the damages calculations for tips that were allegedly unlawfully retained and distributed was a "straightforward, mechanical process").

      Additionally, the superiority requirement is met since the Tip Pool Employees were affected by the same tip pooling, minimum wage, and overtime policies. "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." *Id*. After considering the Rule 23(b)(3) factors, the Court concludes that the Tip Pool Employees have an interest in concentrating the litigation of their claims into one action because they were affected by the same tip pool, minimum

wage, and overtime policies. Furthermore, "the overwhelming precedent in the Second Circuit has made it clear that adjudicating FLSA collective actions and Rule 23 state law claims together is superior to other available methods." *Enea*, 2014 WL 1044027, at *8 (citing *Damassia*, 250 F.R.D. at 164 (finding the superiority requirement satisfied "in light of the overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions.")). Thus, the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010), by ensuring that all of the Tip Pool Employees are treated the same. Accordingly, a class action is the superior method of resolving this case.

C. Rule 23(g) Requirements

The final issue to be considered by the Court is whether Plaintiffs' counsel should be appointed as counsel for the class pursuant to Rule 23(g). In conducting this inquiry, the Court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Here, there can be no dispute that Plaintiffs' counsel has investigated the potential claims in this action and is qualified and experienced in class action law and wage and employment litigation. Furthermore, Plaintiffs' counsel has fairly and adequately prosecuted this action thus far. Defendants do not challenge these assertions. Accordingly, the Court appoints Plaintiffs' counsel as class counsel pursuant to Rule 23(g).

IV. CONCLUSION

For the foregoing reasons, the motion for class certification pursuant to Rule 23 is GRANTED and Joseph & Kirschenbaum LLP is hereby appointed as counsel for the class. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 151. By September 30, 2015, the parties shall submit a joint letter concerning the status of the parties' settlement discussions.

SO ORDERED.

Dated: July 24, 2015
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE