UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ETHAN MURPHY, *et al.*,

                  Plaintiffs,

-v-

PHILIPPE LAJAUNIE, *et al.*,

                  Defendants.

No. 13-cv-6503 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiffs, former employees of Brasserie Les Halles Park Avenue and Les Halles John Street ("the Restaurants"), bring this action on behalf of themselves and others similarly situated, pursuant to the federal Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL"), alleging that Defendants Philippe LaJaunie ("LaJaunie"), La Boucherie, Inc., 15 John Corp., and LHLM Group, Corp., a/k/a Brasserie Les Halles New York, have violated minimum wage and overtime provisions of both statues, as well as NYLL's spread-of-hours and misappropriation-of-gratuities provisions. Now before the Court is Defendants' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Facts

    Plaintiffs are former servers, bussers, and bartenders who worked at Brasserie Les Halles, a French Restaurant with two locations in New York City – one on John Street and the other on

Park Avenue – during the period between 2006 and 2014.[1] (Def. 56.1 Stmt. ¶¶ 1–2.) Since 2005, the Restaurants maintained tip pools for "front of the house employees" at both the John Street and Park Avenue locations. (*Id.* ¶ 4.) Participants in the tip pool at both locations included: maître d's, servers, bussers, runners, and bartenders (collectively the "Tip Pool Employees"). (*Id.* ¶ 5.) Each of the Tip Pool Employees was allocated a certain portion of the tip pool distribution based on the employee's position category. (*Id.* ¶ 6.)

The parties' dispute on this motion primarily concerns the role played by the Restaurants' maître d's. While the parties agree that the Restaurants' general managers supervised the maître d's (*id.* ¶ 10), they disagree about what other responsibilities and authority maître d's exercised. According to Defendants, maître d's regularly interacted with customers and had the "primary goal" of "ensur[ing] that patrons have a superior experience while dining at the Restaurants." (*Id.* ¶¶ 7, 9.) Defendants further assert that maître d's stepped in to assist other Tip Pool Employees when they needed help taking drink and food orders, delivering orders, and clearing the table; provided guests with menus; recommended and served wine; and served and prepared certain dishes tableside for patrons, including prime rib, steak tartare, and flambé desserts. (*Id.* ¶ 9.) Defendants also aver that general managers, but not maître d's, had the authority and responsibility to hire, fire, and discipline employees and set schedules for employees. (*Id.* ¶¶ 11, 19–21.) In

---

[1] The following facts are taken from Defendants' Local Civil Rule 56.1 Statement (Doc. No. 176 ("Def. 56.1 Stmt.")) and Plaintiffs' Counter 56.1 Statement (Doc. No. 182 ("Pl. Opp'n 56.1 Stmt.")). The facts are undisputed unless otherwise noted. Where only one party's Local Rule 56.1 Statement is cited, the facts are taken from that party's statement, and the other party does not dispute the fact asserted or has offered no admissible evidence to refute that fact. In deciding Defendants' motion for partial summary judgment, the Court has also considered Defendants' memorandum of law in support of their motion (Doc. No. 166 ("Def. Br.")), Plaintiffs' memorandum of law in opposition to Defendants' motion for partial summary judgment (Doc. No. 181 ("Opp'n")), and Defendants' reply (Doc. No. 190 ("Reply")), as well as the transcript of the parties' oral argument, held on June 30, 2016 ("Tr."), and the declarations and exhibits submitted in connection with the instant motion (*see* Declaration of Jeffery A. Meyer (Doc. No. 169 ("Meyer Decl.")); Declaration of Denise A. Schulman (Doc. No. 183 ("Schulman Decl."))). In their opposition brief, Plaintiffs urge the Court to disregard portions of Defendants' submissions for being noncompliant with the Court's individual practices. (Opp'n 7–8.) As stated at oral argument, the Court denies the motion to strike and considers all submissions filed in connection with this motion. (Tr. 2.)

addition, according to Defendants, only general managers determined employees' rates and methods of pay and maintained employment records. (*Id.* ¶ 11.)

Plaintiffs, by contrast, introduce evidence that maître d's only occasionally interacted with customers but had substantial managerial authority. (Pl. Opp'n 56.1 Stmt. ¶¶ 9, 11.) In fact, Plaintiffs cite specific examples of maître d's hiring and firing employees. (*Id.* ¶¶ 37–38.) Plaintiffs also assert that maître d's had authority to discipline other employees by issuing written warnings and verbal reprimands and by sending employees home for disciplinary infractions. (*Id.* ¶¶ 39–40.) Furthermore, according to Plaintiffs, maître d's assigned tasks and exercised control over employees' schedules. (*Id.* ¶¶ 43–49, 55.) Plaintiffs also present evidence indicating that maître d's had the power to adjust employees' proportionate take from the tip pool (*id.* ¶ 51) and maintained employee records (*id.* ¶ 50).

### B. Procedural History

On September 4, 2012, Ethan Murphy initiated this action by filing a complaint in New York State Supreme Court, New York County, asserting putative class claims under New York state law. *Murphy v. LaJaunie*, No. 103550/2012 (N.Y. Sup. Ct. Sept. 4, 2012). On September 16, 2013, Defendants removed this action to federal court. (Doc. No. 1.) Thereafter, on May 7, 2014, the Court granted Plaintiffs' motion for conditional certification of the FLSA claims to proceed as a collective action pursuant to 29 U.S.C. § 216(b). (Doc. No. 95.) On May 19, 2014, Plaintiffs filed the Fourth Amended Complaint, adding an additional named plaintiff, a spread-of-hours claim, a New York Labor Law minimum-wage claim, and an unpaid overtime claim. (Doc. No. 104.)

Over the course of discovery, Defendants identified 257 putative members of the collective class who worked for Defendants – 135 at the John Street location and 122 at the Park Avenue location. (Doc. No. 153 ¶ 11.) Accordingly, Plaintiffs' counsel mailed court-approved notice to

all putative members of the collective class identified by Defendants. (*Id.*) In addition to the named Plaintiffs, 72 individuals opted into this action. (*Id.* ¶¶ 12, 13.) On January 30, 2015, Plaintiffs moved for class certification under Rule 23 of the Federal Rules of Civil Procedure for their claims brought under NYLL (Doc. No. 151), which the Court granted on July 24, 2015 (Doc. No. 196).

On April 6, 2015, Defendants filed the instant motion for summary judgment. (Doc. Nos. 165, 170.) The motion was fully briefed on June 1, 2015 (Doc. No. 190), and the Court held oral argument on the motion on June 30, 2015 (minute entry of June 30, 2015).

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*,

4

132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. DISCUSSION

Defendants now move for partial summary judgment on several issues. First, they assert that there is no genuine dispute of material fact that maître d's were tip-eligible employees under NYLL § 196-d ("Section 196-d"). Second, they argue that, even if Plaintiffs were to establish at trial that Defendants violated Section 196-d, Plaintiffs would not be entitled to "tip credit" damages. Accordingly, Defendants move for summary judgment dismissing Plaintiffs' fourth cause of action for violations of NYLL's minimum wage. And finally, LaJaunie contends that he should not be held individually liable for the claims brought against him under NYLL. The Court considers each of Defendants' contentions in turn.

### A. Tip Eligibility of Maître D's

Defendants first urge the Court to dismiss Plaintiffs' third cause of action alleging misappropriation of gratuities in violation of Section 196-d. (Def. Br. 7, 11.) Under Section 196-d, employers are prohibited from forcing their tipped employees "to share tips with employees who do not perform direct customer service – i.e., employees who are not 'busboy[s] or similar

5

employee[s]' and employees who are managers or 'agents' of the employer." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) (quoting Section 196-d). The provision is intended to "end the 'unfair and deceptive practice' of an employer retaining money paid by a patron 'under the impression that he is giving it to the employee, not to the employer.'" *Gillian v. Starjem Rest. Corp.*, No. 10-cv-6056 (JSR), 2011 WL 4639842, at *5 (S.D.N.Y. Oct. 4, 2011) (quoting *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79 n.4 (2008)). To effectuate this goal, NYLL affords a private right of action to employees to recover tip deductions unlawfully taken by an employer. *See, e.g., Chu Chung v. New Silver Palace Rests., Inc.*, 272 F. Supp. 2d 314, 317 (S.D.N.Y. 2003). Defendants urge the Court to rule as a matter of law that the maître d's who worked in the Restaurants were eligible to share in the Restaurants' tip pool, and therefore, that Defendants did not violate Section 196-d. (Def. Br. 7.)

Consistent with the statute's purpose, the "expectation[s] of the reasonable customer" guide the Court's analysis when assessing an employee's tip eligibility. *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 471 (2013). Thus, "employer-mandated tip splitting should be limited to employees, who, like waiters and busboys, are ordinarily engaged in personal customer service." *Id.* at 471–72. Furthermore, employees' eligibility to participate in a tip pool is "based upon [their] duties and not [their] titles." *Id.* at 471 (quoting 12 N.Y.C.R.R. § 146-2.14(e) (2011)). Employees who routinely provide "direct service" to restaurant customers "remain tip-pool eligible" even while "excercis[ing] a limited degree of supervisory responsibility." *Barenboim*, 21 N.Y.3d at 472. However, "there comes a point at which the degree of managerial responsibility becomes so substantial" that an employee loses her tip-pool-eligibility status, since the employee "can no longer fairly be characterized as . . . similar to general wait staff within the meaning of [Section] 196-d." *Id.* at 473. An employee loses the ability to participate in a tip pool, for the purposes of Section 196-d, if she has "meaningful authority," even if she does not have "final authority." *Id.*

6

The following factors are relevant in assessing the meaningfulness of an employee's authority for the purposes of Section 196-d: (1) the power "to discipline subordinates"; (2) the ability to "assist in performance evaluations"; (3) "participat[ion] in the process of hiring or terminating employees"; and (4) "input in the creation of employee work schedules," which "directly influenc[es] the number and timing of hours worked by staff as well as their compensation." *Id.*

While the parties agree that maître d's were ultimately accountable to the Restaurants' general managers (Def. 56.1 Stmt. ¶ 10), they vigorously dispute numerous other facts concerning the responsibilities and authority exercised by the Restaurants' maître d's. For example, Defendants point to evidence indicating that maître d's "regular[ly] interact[ed]" with customers by, among other things, providing menus to guests, recommending and serving wine, and serving or preparing certain special dishes for patrons. (Def. 56.1 Stmt. ¶ 9; *see also, e.g.*, Meyer Decl. Ex. A, 89:6–90:18; Ex. F, 88:2–91:12.) By contrast, Plaintiffs introduce evidence demonstrating that maître d's interacted with patrons only occasionally, such as during emergencies. (Pl. Opp'n 56.1 Stmt. ¶ 9; *see also, e.g.*, Schulman Decl. Ex. 8, 38:4–39:3; Ex. 9, 59:23–60:6; Declaration of Isidoro Ventura Peralta (Doc. No. 187 ("Peralta Decl.")) ¶ 11.) Similarly, although Defendants offer evidence indicating that only general managers had authority to discipline other employees (Def. 56.1 Stmt. ¶¶ 11–12; *see also, e.g.*, Meyer Decl. Ex. J, 122:9–12, 125:23–126:17), Plaintiffs respond with contrary evidence showing that maître d's issued written warnings and verbally reprimanded employees for inappropriate behavior and sent employees home for disciplinary infractions (Pl. Opp'n 56.1 Stmt. ¶¶ 11, 39–40; *see also, e.g.*, Schulman Decl. Ex. 6, 70:25–71:16; Declaration of James Toal (Doc. No. 184 ("Toal Decl.")) ¶ 5). Moreover, although Defendants offer evidence for the proposition that only general managers had authority to hire and fire employees (Def. 56.1 Stmt. ¶ 11; *see also, e.g.*, Meyer Decl. Ex. A, 74:3–13, 96:8–10), Plaintiffs point to other evidence showing that maître d's in fact hired, fired, and regularly interviewed

7

employees (Pl. Opp'n 56.1 Stmt. ¶¶ 11, 37–38; *see also, e.g.*, Schulman Decl. Ex. 3, 144:19–145:24; Ex. 4, 121:4–16, 124:17–18). And whereas Defendants' evidence suggests that only General Managers set employee schedules and determined employees' rates and methods of pay (Def. 56.1 ¶¶ 11, 20–21; *see also, e.g.*, Meyer Decl. Ex. A, 91:6–16; Ex. O, 69:21–70:2, 71:13–18, 73:3–74:10), Plaintiffs counter with evidence that maître d's had substantial input over schedules, work assignments, and compensation (Pl. Opp'n 56.1 Stmt. ¶¶ 20–21, 43–51; *see also, e.g.*, Schulman Decl. Ex. 2, 73:17–19; Ex. 6, 93:23–94:6; Affidavit of Kurt Roediger (Doc. No. 185 ("Roediger Aff.")) ¶ 7; Affidavit of Mario Quimbay (Doc. No. 186 ("Quimbay Aff.")) ¶ 5).

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that there are genuine disputes of material fact regarding the responsibilities and power of the Restaurants' maître d's. Accordingly, a reasonable trier of fact could conclude that the interactions maître d's had with customers were too infrequent or that their managerial authority was too substantial for them to have been tip-eligible under Section 196-d. Thus, the Court denies Defendants' motion for summary judgment on this issue.

### B. Entitlement to Tip Credit

Defendants also urge the Court to reject, as a matter of law, Plaintiffs' claim for "tip-credit damages" brought pursuant to Sections 196-d and 652 of NYLL. (Def. Br. 12.) Section 652 of NYLL requires an employer to compensate employees with at least a minimum wage. However, NYLL, like the FLSA, also "permit[s] an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). For instance, while the general minimum hourly wage in New York State was $6.75 in 2006 and $8.00 in 2014, the lower minimum wage for tipped food-service employees required by NYLL was $4.35 in 2006 and $5.00 in 2014. 12 N.Y.C.R.R. § 146-

1.3(b) (effective Jan. 1, 2011); 12 N.Y.C.R.R. § 137-1.5(c) (repealed effective Jan. 1, 2011).[2] The difference between the general minimum hourly wage and the food-service-worker minimum wage is known as the "tip credit." *Inclan*, 95 F. Supp. At 497. Thus, NYLL permitted a tip credit of $2.30 in 2006 and a tip credit of $3.00 in 2014.

The central legal question on this portion of Defendants' summary-judgment motion is whether Defendants' improper inclusion of maître d's in the tip pool, if proven, entitles Plaintiffs to recover the tip credits taken by Defendants, as well as the amount of tips unlawfully retained. (*Compare* Def. Br. 12–14, *with* Opp'n 14–15.) As Plaintiffs correctly note, some courts in this district have held that the misappropriation of gratuities in violation of Section 196-d entitles plaintiffs to recover tip credits as damages. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011) (holding that "defendants' violation of [Section] 196-d itself constitutes an independent and sufficient reason to find that defendants are not entitled to a tip credit"); *accord Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 387 (S.D.N.Y. 2013); *Hai Ming Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007). More recently, however, Judge Torres has relied on the statute's plain language and guidance from New York's Department of Labor ("DOL") to conclude that NYLL "does not prohibit employers" who violate Section 196-d "from availing themselves of a tip credit," unless the unlawful tip retention resulted in employees receiving less than the general minimum hourly wage. *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 133 (S.D.N.Y. 2014). For the reasons set forth, the Court agrees with Judge Torres.

In interpreting the statute, our "starting point" is the text. *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994); *accord Raynor v. Landmark Chrysler*, 18 N.Y.3d 48, 56 (2011).

---

[2] Although regulations implementing NYLL also impose notice and record-keeping requirements, *e.g.*, *Inclan*, 95 F. Supp. 3d at 498, Plaintiffs have not alleged violations of these conditions.

Here, Section 196-d plainly states that "[n]othing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter." Tellingly, while the FLSA expressly prohibits employers who unlawfully retain tips from availing themselves of the tip credit, NYLL lacks similar language. *See* 29 U.S.C. § 203(m) (tip credit not available unless "all tips received by such employee have been retained by the employee"); *see also Schear*, 297 F.R.D. at 133 (observing NYLL's absence of language prohibiting employers from availing themselves of the tip credit on account of their improper retention of tips). Thus, based on the statute's unambiguous text, a violation of Section 196-d does not entitle plaintiffs to the windfall of the tip credit.

Moreover, New York's DOL, the state administrative agency tasked with enforcing the state's labor law, has offered guidance that accords with this plain meaning.[3] Specifically, the DOL issued a guidance letter when asked to comment on a scenario in which a restaurant paid its servers with the food-service-worker minimum wage, then $4.60 per hour, and the servers received $10.00 per hour in tips, but the restaurant improperly retained ten percent of the servers' tips in violation of Section 196-d. N.Y. Dep't of Labor Op., RO-09-0063 (Sept. 22, 2009). Notwithstanding the unlawful retention of the servers' tips, the servers still earned a total hourly wage of $13.60, which exceeded the then-applicable general minimum hourly wage. Thus, DOL concluded that "the employer would not be required, under [Section 196-d], to reimburse an employee for the difference between the minimum wage and the food service worker minimum wage," so long as "the employer otherwise meets the requirements for payments under the food

---

[3] The Court concludes that DOL interpretations of NYLL elaborated in opinion letters are entitled to at least some deference, so long as they are "not irrational or unreasonable." *E.g., Samiento.*, 10 N.Y.3d at 79 (according deference to DOL's opinion letter interpreting NYLL); *see also Baltierra v. Advantage Pest Control Co.*, No. 14-cv-5917 (AJP), 2015 WL 5474093, at *7 (S.D.N.Y. Sept. 18, 2015); *but see Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339–40 (S.D.N.Y. 2005). In any event, even if, as Plaintiffs argue, DOL guidance contained in opinion letters are not entitled to deference, the Court still finds that the statute's plain language precludes Plaintiffs' interpretation.

10

service worker minimum wage." *Id.* Accordingly, the employee would be entitled to recover only the tips unlawfully retained – here, $1.00 per hour – in addition to the 16 percent annual interest from the date of the unlawful tip retention, and perhaps other remedies such as liquidated damages. *See id.*

Notwithstanding the statute's plain language, Plaintiffs urge the Court also to consider the legislative history from the enactment of Section 196-d in 1968. To that end, Plaintiffs have submitted the statute's "bill jacket" (Doc. No. 192), which includes letters, memos, and other materials "gathered by the Governor's Counsel to assist the Governor in deciding whether to sign a bill passed by the legislature." *City of New York v. A-1 Jewelry & Pawn, Inc.*, 501 F. Supp. 2d 369, 412 (E.D.N.Y. 2007). Where, as here, a statute's language is unambiguous, consideration of legislative history is generally inappropriate. *See, e.g., Conroy v. Aniskoff*, 507 U.S. 511, 518–19 (1993) (Scalia, J., concurring); *see also Marvel Chars., Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002) ("When the language of a statute is unambiguous, judicial inquiry is complete." (citations and quotation marks omitted)). But even assuming, *arguendo*, that such materials can appropriately be considered, the Court finds that the legislative history contained in the bill jacket weighs heavily *against* Plaintiffs' damages theory. For instance, just before the enactment of Section 196-d, New York Industrial Commissioner M.P. Catherwood observed that the proposed law outlawing misappropriation of gratuities "would not affect" employers' ability to claim "tipping allowances contained in minimum wage orders." *See* Memorandum from Office of Indus. Comm'r (June 6, 1968), *reprinted in* Governor's Bill Jacket, L. 1968, ch. 1007, at 4. Similarly, Neal L. Moylan, First Deputy Commissioner of the New York Department of Commerce, advised Michael Whiteman, the First Assistant and Acting Counsel to the Governor, that the proposed amendments to Section 196-d would prohibit employers from improperly taking employees' gratuities "without affecting allowances from minimum wage therefor." Letter from Neal L.

11

Moylan to Hon. Michael Whiteman (June 11, 1968), *reprinted in* Governor's Bill Jacket, L. 1968, ch. 1007, at 3. In other words, both Commissioner Catherwood and First Deputy Commissioner Moylan understood that the proposed provision outlawing the misappropriation of gratuities would not impact employers' ability to claim a tip credit.[4]

Accordingly, the Court concludes that an employer's violation of Section 196-d does not entitle employees to recover tip credits as damages, unless the unlawful misappropriation of gratuities resulted in the employees receiving less than the general minimum hourly wage. *See Schear*, 297 F.R.D. at 133. Since the parties here do not dispute that "[e]ven with the inclusion of [m]aître d's in the tip pool, the total hourly compensation paid to [P]laintiffs during each pay period, inclusive of tips, was never less than the full hourly minimum wage" (Def. 56.1 Stmt. ¶ 32), Defendants are entitled to summary judgment on this issue. Thus, if Plaintiffs establish a violation of Section 196-d at trial, they will be entitled to recover the unlawfully retained tips, but they will not be entitled to recover tip-credit damages under NYLL on this basis, since the allegedly unlawful retention of Plaintiffs' tips did not result in Plaintiffs receiving less than New York's general hourly minimum wage.

C. Plaintiffs' Minimum-Wage Claim Under Section 652

In light of Plaintiffs' admission that their total wages, inclusive of tips, always equaled or exceeded the general hourly minimum wage (Pl. Opp'n 56.1 Stmt. ¶ 32), Defendants also urge the Court to grant them summary judgment dismissing Plaintiffs' fourth cause of action for minimum-wage violations under Section 652. (Def. Br. 13–14.) But Plaintiffs' admission does not, by itself,

---

[4] Although Plaintiffs note that the Court adopted a Report and Recommendation in another suit finding that employees were entitled to tip-credit damages based on their employer's inclusion of tip-ineligible managers in the tip pool (Opp'n 15 (citing *Azkour v. Little Rest Twelve, Inc.*, No. 10-cv-4132 (RJS) (KNF), 2012 WL 402049, at *6 (S.D.N.Y. Feb. 7, 2012), *report and recommendation adopted*, No. 10-cv-4132 (RJS) (KNF), 2012 WL 1026730 (S.D.N.Y. Mar. 27, 2012)), that decision is distinguishable because there, unlike in this case, the defendants' improper misappropriation of tips resulted in the plaintiff receiving less than the general minimum hourly wage; defendants in *Azkour* also failed to satisfy NYLL's notice requirements.

12

require dismissal of Plaintiffs' minimum-wage claim. In fact, Plaintiffs allege in their Amended Complaint that Defendants failed to pay them the food-service-worker minimum wage for certain years (Doc. No. 104 ¶ 34), and failure to pay the food-service-worker minimum wage would violate Section 652(4) of NYLL, even if Plaintiffs' wages, inclusive of tips, reached or exceeded the general hourly minimum wage, *see id.*; *see also* 12 N.Y.C.R.R. § 146–1.3(b) (effective Jan. 1, 2011); 12 N.Y.C.R.R. § 137–1.5 (repealed effective Jan. 1, 2011).

Of course, Plaintiffs cannot defeat summary judgment by relying on allegations in their pleadings, *see Gottlieb v. Co. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996), and it is true that Plaintiffs neglected to address this issue in their summary judgment briefing and in their Local Civil Rule 56.1 Statement. Nevertheless, the Court has discretion to consider facts contained in the record that the parties neglected to highlight, *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), and here the wage documentation submitted by Defendants indicates that they paid at least some Plaintiffs $4.60 as their regular hourly wage in November and December 2009, rather than the then-applicable food-service-worker minimum wage of $4.65 (*see* Meyer Decl. Ex. Q at 1–3); *see also* 12 N.Y.C.R.R. § 137–1.5 (repealed effective Jan. 1, 2011).[5] In light of this evidence, and because this case will be proceeding to trial on Plaintiffs' other claims in any event, the Court declines to grant summary judgment on Plaintiffs' fourth cause of action for minimum-wage violations.

### D. LaJaunie's Individual Liability Under NYLL

LaJaunie, whom Plaintiffs allege is Defendants' principal and sole shareholder (Doc. No. 104 ¶ 7), argues that the claims against him brought under NYLL should be dismissed on two bases. First, he argues that, as a matter of law, he cannot be held individually liable because NYLL

---

[5] The Court also notes that Plaintiffs submitted some proof at the class certification stage that Defendants failed to pay them the full food-service-worker minimum wage by providing wage statements from 2009 and 2010. (*See* Doc. No. 153-11.)

"does not impose liability on directors, officers or employees of a corporation." (Def. Br. 14; *see also* Reply 26.) Second, he argues that Plaintiffs offer no proof that he acted as Plaintiffs' "employer," as that term is defined under NYLL. (Def. Br. 17.)

The Court finds LaJaunie's first argument to be unpersuasive. Under NYLL, an "employer" is "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (quoting NYLL §§ 190(3), 651(6)). In analyzing whether an individual is an "employer" under NYLL, courts apply an "economic reality" test akin to the "economic reality" inquiry under the FLSA. *E.g., Michalek v. Amplify Sports & Entm't LLC*, No. 11-cv-508 (PGG), 2012 WL 2357414, at *3 (S.D.N.Y. June 20, 2012); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013). Under the "economic reality" test, courts consider whether the alleged employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Michalek*, 2012 WL 2357414, at *3 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Where this standard has been met, New York courts have not hesitated to hold corporate officers, agents, and shareholders personally liable under NYLL. *See, e.g., Bonito v. Avalon Partners, Inc.*, 967 N.Y.S.2d 19, 20 (1st Dep't 2013); *see also Cohen v. Finz & Finz, P.C.*, 16 N.Y.S.3d 70, 72 (2d Dep't 2015) ("[W]hile corporate shareholders and officers generally are not personally liable for corporate violations of [NYLL]," plaintiff stated claim under NYLL by "alleg[ing] adequate facts to state a cause of action against each of the individual defendants in his or her distinct capacity as the plaintiff's employer within the meaning of [NYLL]."). Thus, the Court rejects LaJaunie's argument that, as a matter of law, he cannot be held individually liable under NYLL.

The Court next turns to LaJaunie's argument that Plaintiffs have failed to offer proof that he acted as an "employer" under NYLL. (*See* Def. Br. 17 (pointing to the absence of proof in the record that LaJaunie "was involved with the workers in his personal capacity").) Where, as here, the nonmoving party bears the ultimate burden of persuasion at trial, the moving party is "not required to 'support its motion with affidavits or other similar materials *negating* the opponent's claim.'" *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 713 (2d Cir. 1991) (quoting *Celotex*, 477 U.S. at 323) (emphasis in original). Rather, the moving party's burden "may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 323). Once the moving party makes this showing, the burden shifts to the nonmovant to "demonstrate . . . that there is some evidence which would create a genuine issue of material fact." *Id.* (citations and quotation marks omitted).

Because Defendants clearly "pointed out" the absence of evidence with respect to LaJaunie's conduct as an employer, the burden shifted to Plaintiffs to show "some evidence which would create a genuine issue of material fact" regarding the economic reality of LaJaunie's involvement in the Restaurants. *Id.* However, Plaintiffs have utterly failed to meet their burden. Indeed, while Plaintiffs argue conclusorily in their brief that "the facts in this case clearly establish that LaJaunie was in fact Plaintiffs' employer" (Opp'n 18), they point to no "hard evidence" in the record, *D'Amico*, 132 F.3d at 149, such as "depositions, documents . . . affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "from which a reasonable inference in [their] favor may be drawn," *Binder & Binder PC*, 481 F.3d at 148. Instead, Plaintiffs rely entirely on the allegations contained in the Amended Complaint (Opp'n 18 (citing Doc. No. 104 ¶¶ 7–11)), which are, as stated earlier, inadmissible at summary judgment, *see Gottlieb*, 84 F.3d at 518. Accordingly, since it is Plaintiffs' burden to establish LaJaunie's liability as an employer, and since Plaintiffs have offered no

15

admissible evidence relevant to the economic-reality test, the Court grants summary judgment to LaJaunie and dismisses Plaintiffs' claims brought against him under NYLL.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, the Court denies summary judgment on Count III, Plaintiffs' claim for misappropriation of gratuities in violation of Section 196-d, and on Count IV, Plaintiffs' claim for violations of the minimum wage brought pursuant to Section 652. However, the Court grants summary judgment to LaJaunie on all claims brought against him under the NYLL. Therefore, Plaintiffs shall proceed to trial on all claims against the corporate defendants, but LaJaunie shall be dismissed from Plaintiffs' third, fourth, fifth, sixth, and eighth causes of action brought under NYLL. The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 165 and 170.

SO ORDERED.

Dated: March 21, 2016
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE