G6L5murC                    conference

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  ETHAN MURPHY, et al.,

4              Plaintiffs,

5         v.                        13 Civ. 6503 (RJS)

6  PHILIPPE LAJAUNIE, *et al.*,

7              Defendants.

8  ------------------------------x

9                                  June 21, 2016
                                   3:45 p.m.
10 Before:

11              HON. RICHARD J. SULLIVAN,

12                                 District Judge

13                    APPEARANCES

14 JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM
        Attorneys for Plaintiffs
15 BY:  DANIEL M. KIRSCHENBAUM
           -and-
16      JEFFREY E. GOLDMAN

17 KAUFMAN, DOLOWITCH & VOLUCK, LLP
        Attorneys  for Defendants
18 BY:  JEFFERY A. MEYER
        AARON N. SOLOMON

19

20

21

22

23

24

25

G6L5murC                         conference

 1           (Case called)

 2           THE COURT:  Let's take appearances.  For the

 3   plaintiff?

 4           MR. KIRSCHENBAUM:  Daniel M. Kirschenbaum.  Good

 5   afternoon, your Honor.

 6           THE COURT:  Okay, Mr. Kirschenbaum, good afternoon.

 7           MR. GOLDMAN:  Jeffrey Goldman for the plaintiff.

 8           THE COURT:  Mr. Goldman, good afternoon to you.

 9           And for the defendants?

10           MR. MEYER:  Jeffrey Meyer and Aaron Solomon.

11           THE COURT:  We have Mr. LaJaunie.

12           MR. FERRARI:  I'm Robert Ferrari.  I am here -- I am

13   an attorney.  I am here as a consultant to Mr. LaJaunie on the

14   motion to be relieved as counsel.

15           THE COURT:  What does that mean to be a consultant?

16           MR. FERRARI:  Pardon me?

17           THE COURT:  What does it mean to be a consultant?

18           MR. FERRARI:  If he has any problems he is going to

19   speak on his own about why he thinks the bills are not proper.

20   If he has any problem, he will turn to me and ask me a

21   question.

22           THE COURT:  Well, I will let you sit there but

23   obviously you are not counsel of record.  Is there a plan to

24   make you counsel of record at some point?

25           MR. FERRARI:  I'm sorry, sir?

G6L5murC                              conference

1          THE COURT:  Is there plan to make you counsel of

2     record at some point?

3          MR. FERRARI:  Maybe.  Maybe not.  I don't know yet.  I

4     don't know that I want to be counsel of record.

5          THE COURT:  Everybody, have a seat.

6          MR. FERRARI:  He has attorneys now that have so-called

7     spent $200,000 of his insurance money.  He thinks that they

8     were overset spent that they weren't entitled to the $200,000.

9          THE COURT:  That's not really the issue today.  So,

10     have a seat.

11          So, we are here because of defense counsel's request

12     or motion to be relieved, based on non-payment, and then I have

13     a letter from plaintiff opposing that request arguing that to

14     relieve counsel at this point would effectively scuttle the

15     trial date that's been set and the pretrial submission dates

16     that have been set for some time.  Another thing that is

17     supposed to happen in the short-term is that defendants are

18     supposed to produce a list of class members with addresses or

19     contact numbers.  And then there is supposed to be notice that

20     goes out to those folks quickly since I think we are already

21     behind schedule on that.

22          So, we have got a full plate of things that are

23     supposed to be happening and so I guess the question is is

24     relieving counsel going to -- is it going to affect that

25     schedule.

G6L5murC                        conference

1         So, let me ask -- I am not sure you can answer that

2        question.

3         MR. KIRSCHENBAUM:  Your Honor, I just want to, before

4        defendants -- just to clarify our position.  We are much more

5        concerned with the schedule remaining on pace including the

6        class notice going out and outstanding documents being turned

7        over now than how defendants decide they want to represent

8        themselves in the long run.

9         THE COURT:  Well, that's fine, but I mean there is a

10       number of things that are supposed to be happening, only one of

11       which is the class list and -- well, are you referring to

12       discovery materials?

13        MR. KIRSCHENBAUM:  Your Honor ordered the defendants

14       to turn over a whole series of documents by June 16th.  It is

15       not clear to us why defendants still haven't turned those over,

16       but in the order that's filed on the docket is no. 219, which I

17       believe was issued shortly after our last conference before

18       your Honor there is a whole bunch of stuff they were supposed

19       to turn over so that we could stay on track to have our

20       September trial and none of that has been turned over.

21        THE COURT:  So, let me hear from the defendant on

22       that.  What is the story with the materials that are out of

23       time?

24        MR. SOLOMON:  Judge, we are fully prepared to address

25       the discovery issues as well as our motion but we are going to

G6L5murC                            conference

1    respectfully request that we be permitted to explain the

2    situation, in camera, as it relates to attorney-client

3    privilege.

4            THE COURT:  There is nothing privileged about whether

5    or when these materials that I have ordered to be produced are

6    going to be produced.

7            MR. SOLOMON:  Part of it has to deal with -- it is

8    another basis for our application to withdraw.

9            THE COURT:  I am going to deny that.  I am going to

10   deny that application subject to renewal later, but where are

11   the materials?

12           MR. MEYER:  Your Honor, as we discussed at the last

13   conference, we advised the that the restaurant now, there is

14   only one functioning restaurant, one operating restaurant; the

15   Park Avenue location closed.  Les Halles is working on a

16   skeleton crew in the admin office.  We have attempted to work

17   with the client, Mr. LaJaunie and they have done everything

18   they can to get us that information.  However, the depth and

19   breadth of it and the limited resources available to the

20   defendant, the corporate defendant, have made that impossible.

21           We have not yet received those documents.  It is one

22   individual that is employed there who, in addition to trying to

23   wind down the one restaurant merge it with the second with one,

24   keep the second document a flight has not been.

25           THE COURT:  So the Court Order, hey, that's just

least.  The Court should understand that there is other things

going on and if we are fifth or sixth on the priority list we

should be pleased.

        So, what?  Am I just to sanction defendants every day

that they don't produce these things?  Do you think that will

make them rise up the list?  Put your hand down.  Put your hand

down.

        MR. MEYER:  Your Honor, we have tried everything we

can to get these documents.  We have spoken -- we have kept up

relationship with the defendants, rapport with them about the

documents.  We have just not received them yet.

        THE COURT:  So that sounds like contempt to me so -- I

mean, I am not going to let you out of this case just because

you are not getting paid because I'm getting totally dissed

here.

        So, if I am going to endure this pain then you can

sure as hell believe you are going to endure it too and I am

not going to have the plaintiffs bear the cost of this.  So,

that's not happening.  So, I guess the issue then is what is it

going to take to make defendants comply with Court orders.  So,

what is it going to take?  $10,000 a day?  Do you think a fine

of $10,000 a day?  Do you think that would result in compliance

        MR. MEYER:  Your Honor, I would hope we would be able

to comply without contempt and without penalty.

        THE COURT:  Well, let's just sort of go through this

G6L5murC                          conference

1   again.  I issued an Order on April 15th that set dates for

2   these things to be produced and they haven't been produced.

3        MR. KIRSCHENBAUM:  And, your Honor, defendants did ask

4   for a stay since then and got rejected.

5        THE COURT:  Yes.

6        So, in any event, it seems to me that the only thing

7   to do now is to see if there are other ways to compel

8   compliance.  I guess the last resort would be to grant judgment

9   against the defendants for ignoring Court orders.  That's a

10  last resort and I don't think we need to go there today, at

11  least I hope not.  I plan to try some other things first but I

12  really do not intend to just let people ignore my orders

13  because they're more interested in other things.

14       So, Mr. LaJaunie seems to want to say something.

15       MR. FERRARI:  Your Honor --

16       THE COURT:  Mr. LaJaunie seems to want to say

17  something.

18       THE DEFENDANT:  Yes.  Yes, your Honor.  Thank you.

19       There is one and I apologize for the lack of proper

20  cooperation, but the situation we are in now is the consequence

21  of what has happened when Mr. Goldman took a court document and

22  sent it to my staff of the larger of the two restaurant, Les

23  Halles, the original one for 45 years, and he circulated a

24  motion of -- is it a motion or some eviction document that was

25  a -- it tore at my negotiation with the landlord when they were

G6L5murC                          conference

1    renegotiating the lease after 25 years and a new landlord who

2    obviously, the effect of circulating this eviction document

3    which was not an eviction process, it was part of our

4    negotiation with the landlord was that my staff walked out.

5    And when this happened then the restaurant seized operation

6    just as I was trying to finalize the lease for negotiation.  We

7    were already four months after the end of the lease and we had

8    to vacate the restaurant in 10 days with no staff.  10 days and

9    no staff.

10          The consequence of that is that physically -- forget

11   the staff walking away with wine and liquor and equipment and

12   so forth, the consequence of Mr. Goldman's action is that we

13   had to vacate the restaurant that had been open for 25 years

14   that was full of all the documents we had for this process and

15   it was dumped with chairs and kitchen equipment and everything

16   and dozens if not hundreds of boxes of documents.

17          I have lost all my staff.  I have only new staff but

18   one person who belonged to the old office.  We are trying to

19   stay open with the smaller restaurant that we have left and it

20   is going to take, as I said immediately, it is going to take

21   months to even find the boxes because everything is literally a

22   pile of wet, stinky garbage.  That's what we are dealing with.

23          So, there is no bad intention.  There is no -- there

24   is nothing other than we are trying to even find the documents

25   and I don't know how these things work.  I am trying my best to

G6L5murC                         conference

1    move things and I have this one person who is the only one left

2    to know how to administrate one restaurant and find these

3    documents.

4          At this point, it is just time.  We need time.  I have

5    three woks and one hot plate.  I don't know how to act faster.

6    We could not -- the website for the restaurant stayed as is

7    for -- until last week.  I didn't have $2,000 to have someone

8    take the old restaurant down.  Now at least it doesn't talk

9    about the second restaurant.

10          So, beyond personnel there is a lack of cash, there is

11    a lack of everything to accomplish promptly and following the

12    schedule, the Court Order.

13          As a side note, I would like to say I had requested

14    from the beginning three years ago that I would be advised of

15    every hearing, every court, even if it were just a quick

16    scheduling hearing.  I was not informed of the hearing last

17    time when all of this was decided although I was in town and I

18    would have voiced all my concern at the time and hopefully be

19    heard about what was possible and have a different calendar.

20          The calendar is just not -- we cannot accomplish this

21    Court Order as it was ordered.

22          THE COURT:  I guess I'm not persuaded.  So, I ordered

23    on April 15th a list -- a class list in Excel format was to be

24    produced by June 1st and I am told that that's not been done,

25    that there are a bunch of documents that are wet, stinky

G6L5murC                        conference

1    garbage that nobody has gone through and nobody is capable of

2    going through.

3            That's basically what you are telling me.

4            THE DEFENDANT:  No.

5            THE COURT:  No?

6            THE DEFENDANT:  If I may, your Honor, I am saying it

7    is going to take a long time to go through everything and

8    produce one by one all the names and whatever documents needs

9    to be produced.

10           THE COURT:  Okay.

11           THE DEFENDANT:  What I was saying is compared to

12   having --

13           THE COURT:  And I am hearing about that on June 21st

14   even though it was due on June 1st and I ordered it on April

15   15th.

16           THE DEFENDANT:  And I should have been here on April

17   15th and I was not made aware of the hearing and when I was

18   made aware of the hearing the Court order, that was the Court

19   order.

20           THE COURT:  No, no.  This hearing was scheduled after

21   I got a letter from your lawyer saying they wanted to withdraw.

22   That's when we scheduled this hearing.

23           THE DEFENDANT:  I understand.

24           THE COURT:  Production of documents was ordered back

25   in April, so.

G6L5murC                          conference

1          THE DEFENDANT:  And I voiced to my lawyers immediately

2     that it was going to take months and months and months to

3     produce exactly all of these documents.  The time before we

4     were very diligent, very active, perfectly on time to produce

5     every document.  At the time I had two restaurants, I had four

6     people in the office plus two interns who I had hired just for

7     that matter, meaning the request of the production -- document

8     production.

9          THE COURT:  Okay.  So, how long are you telling me

10    this is going to take?

11         THE DEFENDANT:  It is going to take months, your

12    Honor.

13         THE COURT:  Months.

14         THE DEFENDANT:  I'm sorry?

15         THE COURT:  Months is what you are telling me?

16         THE DEFENDANT:  Months, several months, many months.

17    And I expect that once we get everything organized that things

18    are going to, you know, at least are going to get things going

19    but right now it is just even finding and organizing the

20    documents that we need to provide the information requested.

21         THE COURT:  I want to be clear about the documents we

22    are talking about.  What was ordered to be produced by June 1st

23    was an Excel spreadsheet that includes the names of all the

24    class members, the last known addresses and locations for those

25    people, the dates of employment for each individual at each

G6L5murC                          conference

 1   restaurant and the names of the positions that they held.

 2              That's what we are talking about, right?

 3              There was then contemplation of post-certification

 4   discovery but that was going to be after the list was produced

 5   and notice went out on class certification.  And so, there was

 6   also an order that eight opt-in plaintiffs who had not yet

 7   provided interrogatories and documents would do so by June 1st

 8   and that's happened?

 9              MR. GOLDMAN:  Yes.

10              MR. SOLOMON:  There are some opt-in plaintiffs who

11   didn't respond.  We are going to deal with that in course.

12              THE COURT:  So, I will hear from plaintiffs as to what

13   they propose we do in light of what Mr. LaJaunie has just said.

14              MR. KIRSCHENBAUM:  Your Honor, defendants have

15   representation by counsel right now.  They had representation

16   on April 19th.  They were here present in the same room as me

17   when this discussion happened about what documents would need

18   to be produced.  They chose not to alert your Honor to anything

19   until the day before the class list was due.

20              THE COURT:  Right.

21              MR. KIRSCHENBAUM:  And on that date they asked for a

22   stay and had it rejected.

23              THE COURT:  Right.

24              MR. KIRSCHENBAUM:  So, even if Mr. LaJaunie himself is

25   having a manpower issue, there are people in this world that

G6L5murC                        conference

 1    could get this information in accordance with your Honor's

 2    April 15th order.

 3         THE COURT:  Probably.  I would say there probably are

 4    people in this world who could do it.

 5         What are you proposing?

 6         MR. KIRSCHENBAUM:  I propose that defendants be given

 7    until after the weekend to get us all the documents that your

 8    Honor ordered and the class list that your Honor ordered so

 9    that we could keep the trial date as planned and if they don't,

10    they would be subject to appropriate sanctions.

11         THE COURT:  And if then it sounds like they certainly

12    won't be able to do that, at least based on what's been

13    represented, then sanctions of what?  It is not supposed to be

14    punitive, it is supposed to be something that is going to

15    compel compliance so what would that be?

16         MR. KIRSCHENBAUM:  One question we have to ask

17    ourselves is are defendants essentially setting up the Park

18    Avenue corporation for default because if they are, why should

19    we have to go through the pain of chasing our tails the next

20    three months?  If they can't get the documents, the lawyers

21    don't want to represent them, they don't want to spend the

22    manpower to do what your Honor wants, then that entity could be

23    held in contempt and punished with a default and the remaining

24    entities could move on to a trial on their end of the

25    liability.  Mr. LaJaunie has some FLSA liability and the John

G6L5murC                              conference

1    Street location is still in operation.

2              THE COURT:  So, in other words you are saying if they

3    don't comply in short order with the April 15th order that then

4    I would enter a default.  That's what you are saying?

5              MR. KIRSCHENBAUM:  Yes, your Honor.

6              THE COURT:  Okay.

7              MR. KIRSCHENBAUM:  I would like to point out that a

8    lot of the documents also relate to the John Street location.

9    It is conceivable that defendants stored documents for John

10   Street also in Park Avenue and those documents are also wet and

11   stinky but a lot of these documents are payroll records that

12   ADP presumably has or that exist electronically as well; for

13   example, tip sheets, year end payroll reports, etc.

14             I mean, if the only way defendants could produce them

15   is in a wet format we will figure out what to do with them but

16   payroll records are something that, A, even at the Park Avenue

17   location should be easily locateable; B, may exist

18   electronically; and C, with the John Street records which we

19   don't have.

20             THE COURT:  All right.  Let me ask counsel, without

21   revealing client confidences, what steps have you taken to

22   comply with the April 15th order concerning the class list and

23   the information required?

24             MR. MEYER:  Your Honor, we have asked repeatedly via

25   e-mail, via phone call, multiple correspondence in many, many

G6L5murC                         conference

fashions with Yoko and Mr. LaJaunie that we must get this

information produced.  If the Court will recall, the last April

conference we were here, while the entire window was set at

that point there was no way -- we were told at that point, I

believe we asked for 120 days from effectively May 1 which was

shorted to the June 1 deadline.  We have done everything we can

to try to get this information from our client.  We do not know

where it exists.  We don't know what format it exists in.  We

don't have access to it.  If we did, we would produce it.  We

don't have.

        THE COURT:  You don't have access to it.  You don't

have access to going to the location where these documents are

stored?

        MR. MEYER:  We don't know what form these documents

are in.

        THE COURT:  Mr. LaJaunie said they're in boxes and

they're wet.

        MR. MEYER:  That's the first we are hearing of it.

        THE COURT:  Okay.

        Mr. LaJaunie?

        THE DEFENDANT:  Yes, your Honor.  Thank you, your

Honor.

        The main office at the time when two restaurants was

at Park Avenue so all the records were there and everything was

moved with truckloads of restaurant equipment so everything is

G6L5murC                         conference

at 50 John Street and hence the condition of the documents.

          I am not saying they are destroyed, I am not saying we
cannot find them, I am saying that everything is mixed and
sometime has pulled open entire cases of documents and at this
point I do not have the resources -- monetary or staff -- to go
through these documents in an educated way knowing what to look
for and do it fast.  That's what it is.

          So, no, at this point I cannot hire two people who are
going to know exactly where to find it and where to find it and
to put all of this together.

          MR. KIRSCHENBAUM:  Could I point out one thing, your
Honor?

          THE COURT:  Well, let him finish.

          Go ahead.  Are you finished?

          THE DEFENDANT:  Yes.  Yes, your Honor.

          THE COURT:  Okay.  Have a set.

          MR. KIRSCHENBAUM:  Were these documents moved before
April 15th or April 15th?  On April 15th your Honor made an
order to turn over the documents.  Did someone get them wet
after your Honor ordered them to be produced?  Or, if they were
already wet when your Honor ordered them to be produced,
somebody between April 15th and today should have told us about
this.  It just makes no sense.

          THE COURT:  Well, it is curious, I will say that.  And
so, Mr. LaJaunie, what was the state of these documents in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G6L5murC                        conference

1    April as of April 15th when I issued the order?

2            THE DEFENDANT:  Right.  The restaurant closed on March

3    30th, so everything has happened -- all of this precipitation

4    or panic mode happened at the end of March, and since the

5    hearing of that I was not made aware of, I have told Mr. Meyer

6    that this is the situation and this is going to take months and

7    months and months to go through all of this.

8            THE COURT:  Okay.  All right.  Look.  It is not going

9    to take months and months and months.  I am not going to let it

10   take months and months and months.  If what you are telling me

11   is I have the choice of giving you months and months and months

12   to do this on your schedule or to basically issue a default

13   judgment against you, that's an easy question for me, I will

14   just issue a default judgment against you, against the

15   corporate client or clients.  I may also allow, although I

16   previously denied this request, I may also allow the plaintiffs

17   to amend the complaint to name Mr. LaJaunie on the state claims

18   as well.  I mean I dismissed those claims because of what I

19   think were omissions or failures to include certain facts in

20   the 56.1 statements but if I think that this is really just an

21   effort to render a corporate defendants judgment-proof and to

22   leave plaintiffs sort of just with nothing but an empty

23   judgment, then it seems to me it may be in everybody's interest

24   and certainly in the interest of justice to allow individual

25   defendants to be included in additional counts for additional

G6L5murC                         conference

 1    time.

 2              So, it just seems to me that defendants clearly don't

 3    consider this to be a high priority, there are other things

 4    they consider to be much higher priorities and that they can't

 5    or won't comply with the Court order.

 6              I am just not that moved since the Court order was

 7    issued two and a half months ago and this is the first I am

 8    hearing of these kinds of problems.  So, I think I am going to

 9    do a variation on what Mr. Kirschenbaum has requested which is

10    I will give you another week to get this wrapped up but after

11    that then I am going to sanction defendants for not complying

12    with a two and a half month old order, and one of the possible

13    sanctions will be dismissal for failure to comply with court

14    orders.

15              I think that the goal here is to having not

16    successfully gotten me to stay this action or to extend the

17    period in which these things were going to happen, it seems as

18    though the decision was made, well, we are just not going to

19    comply and then Court will have no choice but to grant us the

20    stay that was originally denied and that ain't happening.  That

21    was a bad strategy if that was the strategy.

22              MR. MEYER:  Your Honor, if I can address the stay?

23              The stay was included in our letter to afford

24    Mr. LaJaunie time to find new counsel and to handle these

25    matters as we have not been --

G6L5murC                     conference

1              THE COURT:  Right, which weeks --

2              MR. MEYER:  It wasn't a strategy with Mr. LaJaunie, it

3     was a strategy in order for us -- it wasn't a strategy.  It was

4     a request --

5              THE COURT:  Well, my point is maybe the strategy was

6     to stop complying with Court orders, to stop responding to

7     requests from counsel, to stop paying counsel all in an effort

8     to frankly just buy time in which to render the corporate

9     defendants judgment-proof.  I'm not making that finding but I

10    am saying that that's certainly a possibility that leaps to

11    mind on these facts and that's not going to be a winning

12    strategy.  I'm not going to let it be.

13             So, to the extent there is a request to be relieved as

14    counsel, that's denied.  And to the extent that there is a

15    request for me to extend the June 1st deadline for several

16    months, what has been described so for and months and months,

17    that's also denied.  I will give you a week to get in

18    compliance with the Court's order and if that hasn't happened

19    by then, then I am going to sanction the defendants for not

20    complying.  Okay?  And I think it will probably be in the

21    neighborhood of something like $5,000 a day or $10,000 a day.

22    We will see if that works.  And if that doesn't work, then I

23    think I will have no choice but to enter a default judgment

24    because, clearly, people are not complying with court orders

25    and the goal is just to disrupt a litigation that's been going

G6L5murC                        conference

1    on for years -- literally years -- and for which there is a

2    trial date that's already been set.

3          So, I will memorialize that in a minute entry.

4          Mr. LaJaunie?

5          THE DEFENDANT:  Your Honor, the restaurant -- first of

6    all, there is no strategy, no plan, or anything.  At this point

7    we are trying to stay open.  We are behind the rent about a

8    hundred thousand dollars, that's tree months of rent and

9    various taxes and this and that.  Every day is a struggle.  I

10   cannot explain unless I would have a camera to take pictures

11   and show them in court, I cannot explain what the daily

12   management of this remaining restaurant is.  I could not

13   sustain another day in what was in penalty, fines.  And I am

14   saying this as plainly as I can, nothing is going to be

15   possible in one week.

16         THE COURT:  Okay.

17         THE DEFENDANT:  It is just not going to be possible

18   and the result is that it is going to close the second

19   restaurant and, again, and eliminate all possibilities of -- I

20   mean, I thought the end of the game was to pay their fees,

21   number one, and then what there is left for the plaintiffs.  I

22   would like to discuss the certification of the class action

23   which has no merit and I can prove that if given the

24   opportunity.

25         I would like to discuss the four thoughts of this

G6L5murC                    conference

1   action, these proceedings, and show the Court that one was

2   entirely manufactured.  The first one the maître d' issue is

3   non-existent because systematically --

4          THE COURT:  Look.  If you want to fight this on the

5   merits, that's great.  That's why I have a trial date.  What I

6   have asked you to produce is not terribly onerous.  It is

7   information about the people who work there who would be

8   members of a class who are entitled to notice going forward.

9   It is not that onerous.  I issued an order on April 15th that

10  gave what I considered to be plenty of time to do that.  You

11  keep telling me that it just isn't possible.  I just don't buy

12  it.  I mean, maybe you are unfamiliar with how litigation works

13  but the reality is is that there are cases in this court house

14  involving millions of pages of documents and it gets done and

15  there are ways to get it done.

16         So, it seems to me what you are saying is that between

17  various choices you've made the choice to not litigate this

18  case between working on the other restaurant, between doing

19  whatever else you think you need to do to maintain whatever

20  holdings you have.  That's your first priority and I guess

21  that's your choice, but the consequences of that choice will

22  be, ultimately, I think, a default judgment.  And if what you

23  are telling me today is you have no intention of complying with

24  the order that I'm about to issue, which is that you need to

25  comply with my prior order within a week, then maybe we should

G6L5murC                         conference

1   just go straight to default.  Right?  I mean, is there any

2   point in just dragging this out?

3           It seems to me what Mr. LaJaunie has said to me is

4   that he is really not planning to seriously try to comply with

5   the order I would issue today and if that's the case, I think

6   that representation should be enough for me to then enter a

7   default.

8           THE DEFENDANT:  Your Honor, there is absolutely no

9   intention.  I am describing consequences of what was triggered

10  by Mr. Goldman.  This restaurant was supposed to close two

11  weeks ago and we managed to stay open with -- and I am not

12  going to describe how we get supplies and everything -- this

13  was going to close one week or the other.  If you want me to

14  respond to your question, very dry question about what is going

15  to be the difference between today and one week from now, I

16  have to admit, there is not going to be a tremendous progress.

17  And I am phrasing this as carefully as possible but I have

18  described a situation that -- I mean, I am working 18 hours a

19  day, seven days a week.  I have this one person who is now

20  paid -- maybe I shouldn't say that here -- for four days and

21  she is working six days and we are trying to keep everything

22  together.

23          This will crumble at any point and at this point,

24  yeah, I don't see -- I am saying that with just as plainly as

25  possible, one week from now, there might be some progress.

G6L5murC                         conference

1    Again, out of hundreds of names there be -- we already have a

2    few names, obviously.

3              THE COURT:  Obviously.

4              THE DEFENDANT:  I'm sorry?

5              THE COURT:  Obviously.  We are not talking about

6    millions of pages of documents, we are talking about a few

7    boxes of documents is what it sounds like to me.  How many

8    employees are we talking about?

9              THE DEFENDANT:  Hundreds, your Honor.

10             THE COURT:  A couple of hundred of employees.  All

11   right.

12             THE DEFENDANT:  I think it is many more than that.

13             THE COURT:  Many more than a couple hundred employees?

14             THE DEFENDANT:  I think we are talking about five

15   years.

16             MR. MEYER:  Over a six-year window we are estimating,

17   your Honor, that it is approximately 500.

18             THE COURT:  Even that sounds high to me, but assuming

19   that is to be the case, I think these are very discrete

20   requests for information that, again, I ordered this in April

21   and we are having this conversation now.  So, it sounds like

22   the decision has been made not to make this a priority, not to

23   talk to one's lawyers and just sort of hope at the end of the

24   day you can sort of claim hard luck and expect the Court is

25   going to amend previously scheduled orders and I just think

1   that was a bad calculation.  So.

2           THE DEFENDANT:  Your Honor, the assumption is not

3   factual?

4           THE COURT:  What assumption is not factual.

5           THE DEFENDANT:  The assumption that by design we have

6   not acted in order to collect these names.  I have protested

7   from the second Mr. Meyer informed me of your order.  Where was

8   I?  Why didn't you tell me?  And I would have voiced everything

9   I am voicing now so that I would avoid to have such a tight

10  calendar.  The calendar itself --

11          THE COURT:  Tight calendar?  April to June 1st is a

12  tight calendar?

13          MR. KIRSCHENBAUM:  Your Honor, the class was

14  certified --

15          THE COURT:  I guarantee you that I myself alone,

16  knowing nothing about the documents, could have achieved this

17  result in that amount of time doing it, frankly, from 9:00

18  until midnight every night.  I guarantee you I could have done

19  that.  I am willing to stake my life on it.  This is not that

20  onerous and I gave you two months to do it, almost two months

21  to do it and it hasn't been done and now you are telling me it

22  is going to take many, many, more months on top of that.

23          We are going in circles here.  Okay?

24          MR. MEYER:  Your Honor --

25          THE COURT:  So, obviously, you are displeased and I am

G6L5murC                    conference

more than willing to live with that.  I am displeased, too, and

I assume the plaintiffs are also displeased.  It is just life.

          What did you want to say?

          MR. MEYER:  The relationship with Mr. LaJaunie has

devolved to this singular discussion about the April conference

and the extension of time or the duration of time to produce

these documents.

          THE COURT:  Yes.

          MR. MEYER:  That's what the relationship has devolved

to.  It is brought up every time we have a discussion about

whether the documents are going to be produced.  We should have

asked for more time which I believe your Honor would state that

we did, we asked for an exorbitant amount of time that was then

cut down to this June 1 deadline.

          This relationship has evaporated.  As much as

Mr. LaJaunie and I have worked together well and I believe we

have in the past, we keep coming back to this one issue and

there is no progress made as to producing these documents.  I

wish we could.  I wish I had better news for you.  I wish I had

more information to tell plaintiff's counsel but we don't.

This is what we are left with.

          Hopefully in a week we have the documents and we can

report some positive news but I just feel we are going to have

the same conversation in a week.  So, I would ask that our

motion, you at least leave it open for conversation pending a

G6L5murC                              conference

1   result in the next week or so.

2              THE COURT:  Yes, that's.

3        Fine.  Look.  If I ultimately end up granting a

4   default judgment with respect to the corporate defendants and

5   perhaps the individual defendant as well, then that will sort

6   of take care of everything, won't it.

7              So, I guess I am inclined to give this a week because

8   I'm confident that this could be done in a week if there was a

9   will, and if there isn't a will, then we will deal with that

10  when it happens.

11             Mr. Kirschenbaum, anything else you want to say on

12  this?

13             MR. KIRSCHENBAUM:  Nothing further, your Honor.

14             I guess, do we reconvene in a week or just assume it

15  is going to get done?

16             THE COURT:  No, I guess I will ask for a status letter

17  in a week.

18             MR. KIRSCHENBAUM:  Okay.

19             THE COURT:  Then depending on what I get, I will issue

20  an order -- bring everybody back in or issue an order to show

21  cause as to why I shouldn't be sanctioning and perhaps even

22  granting a judgment against the defendants for failure to

23  comply with Court orders.

24             So, I think that's the speed we should be going in.

25  Okay?  All right.  If, in the meantime, there is some other

G6L5murC                    conference

1    lawyer who wants to come in, then let me know that too, but for

2    now I am denying the motion to be removed as counsel.

3          Okay.  So, a week from today puts us at the 28th, so I

4    would like a letter from plaintiffs -- excuse me, from

5    defendants by the 28th indicating where they are with that

6    production, and then if you want to respond I will give you 24

7    hours to respond, Mr. Kirschenbaum.  Okay?

8          MR. KIRSCHENBAUM:  Yes, your Honor.

9          THE COURT:  Let's do that.

10         Is there anything else anybody would like to say?

11   Okay.

12         THE DEFENDANT:  May I ask a question?

13         What is the difference between the judgment and the

14   trial?  How could it be a judgment before the trial?

15         THE COURT:  Here is the deal.  I issued a court order

16   in April.  If a party tells me we are not complying with that

17   court order, the heck with it, we can't or won't, have no

18   intention of doing that and then don't, then I can sanction

19   them by saying, well, until you do, I am going to hold you on

20   the hook for some monetary penalties, or I can ultimately find

21   against the defendant, I can find for the plaintiffs and issue

22   a judgment against the defendants for failing to comply with

23   the Court's orders and then we wouldn't have a trial, then

24   there would just be a judgment.

25         THE DEFENDANT:  I understand.

G6L5murC                          conference

1          THE COURT:  And that judgment could be collected on

2     and that would -- that might entail additional discovery, it

3     might entail additional proceedings, I don't know, but there

4     would be a judgment and there would be no trial at that point.

5          So, we are not there yet but that is, I guess, the

6     worst case scenario if my orders are not complied with, okay?

7          THE DEFENDANT:  I understand, your Honor.

8          THE COURT:  Thanks very much.  If anybody needs a copy

9     of the transcript, you can take that up with the court

10    reporter, either now or later through the website.  Okay?

11         Thank you.

12                              o0o

13

14

15

16

17

18

19

20

21

22

23

24

25