UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ETHAN MURPHY, *et al.*,

                                        Plaintiffs,

        -v-                                                    No. 13-cv-6503 (RJS)
                                                              ORDER

PHILIPPE LAJAUNIE, *et al.*,

                                        Defendants.

RICHARD J. SULLIVAN, District Judge:

        On June 29, 2016, the Court ordered Defendants to show cause why they and their

attorneys should not be sanctioned for failing to comply with the Court's discovery orders.  (Doc.

No. 227.)  For the reasons set forth below, the Court (1) orders that Defendants pay a contempt

sanction of $500 per day until they fully comply with the Court's discovery orders, (2) reserves

decision on the issuance of a default judgment, (3) orders the parties to submit supplemental

briefing on whether the Court should reconsider its decision granting LaJaunie summary

judgment on Plaintiffs' claims brought under New York Labor Law ("NYLL") in order to allow

Plaintiffs to submit a supplemental statement pursuant to Local Civil Rule 56.1 in support of

their claims that LaJaunie was their employer under the NYLL (*see* Doc. No. 208 ("Summary

Judgment Opinion" or "S.J. Op.")), (4) orders the parties to submit supplemental briefing on

Plaintiffs' motion for the reasonable costs, including attorneys' fees, incurred in litigating this

discovery dispute, and (5) declines to sanction Defendants' attorneys.

## I. BACKGROUND

On March 22, 2016, the Court granted in part and denied in part Defendants' motion for

summary judgment. (S.J. Op. 1.)  As relevant to this order, the Court granted LaJaunie summary judgment on Plaintiffs' claims brought pursuant to the NYLL because of Plaintiffs' failure to offer any proof that he acted as an "employer" under the NYLL. (*Id.* at 15.)  On April 14, 2016, the Court denied Plaintiffs' first motion for reconsideration of the Summary Judgment Opinion. (Doc. No. 218.)

On April 15, 2016, the Court ordered that trial will commence on September 12, 2016 on Plaintiffs' remaining claims. (Doc. No. 219 ("April 15 Order" or "Apr. 15 Order") at 2.)  The Court also ordered Defendants to provide Plaintiffs, no later than June 1, 2016, with a class list in Excel format that contains all class members' (1) names; (2) last known addresses; (3) location(s) of employment; (4) dates of employment at each location; and (5) position(s) held at each location. (*Id.*)  In addition, the Court ordered Defendants to produce, no later than June 16, 2016: (1) time records for all class members from September 5, 2006 to February 26, 2011; (2) payroll records for all class members from July 29, 2009 to December 31, 2010; (3) year-end payroll reports for each class member for the years 2006 through 2015, and year-to-date payroll reports for each class member for 2016; (4) unredacted tip sheets for the entire class period – *i.e.*, from September 5, 2006 to the present; (5) year-end payroll reports for all maître d's employed at Les Halles Park Avenue and Les Halles John Street from September 5, 2006 to the present; (6) dates of employment in the maître d' position for all maître d's employed at Les Halles Park Avenue and Les Halles John Street from September 5, 2006 to the present; and (7) the outstanding payroll records for the Opt-In Plaintiffs to the extent Defendants have not already produced those records. (*Id.*)

At a conference held on June 21, 2016, Defendants acknowledged that they had failed to comply with the Court's April 15 Order. (Doc. No. 228 ("June 21 Tr.") at 5:12–6:15.)  The

2

Court repeatedly warned Defendants that, unless they complied with the Court's April 15 Order within one week, the Court would sanction Defendants and would consider granting a default judgment in Plaintiffs' favor. (*Id.* at 18:6-14, 19:17–20:2, 26:19-23, 27:15-24.) That same date, the Court ordered Defendants, no later than June 28, 2016, to provide Plaintiffs with a class list and to submit a letter apprising the Court of their compliance with the rest of the Court's April 15 Order. (Doc. No. 224 ("June 21 Order").) As the Court made clear in its order, Defendants' continued failure to comply with the Court's discovery orders would result in sanctions, including a possible default judgment, pursuant to Federal Rules of Civil Procedure 16(f) and 37(b)(2) and/or the Court's inherent sanctions power. (*Id.*)

In their letter, dated June 28, 2016, Defendants represented that they produced a class list to Plaintiffs' counsel and that Defendants also delivered several bankers' boxes of documents that Defendants' counsel averred were responsive on June 27, 2016. (Doc. No. 225.) Defendants' attorneys also indicated that their clients had advised them that "all responsive documents in their possession have been produced to Plaintiffs" (*id.*), but Defendants' counsel declined to confirm the accuracy of their clients' representation.

In a response submitted on June 29, 2016, Plaintiffs asserted that, having reviewed all documents contained in the bankers' boxes for several hours, the documents produced are mostly irrelevant and/or unresponsive and that Defendants have failed to produce most of the documents required under the April 15 Order, including: (1) most of the class members' time records between September 5, 2006 and February 26, 2011; (2) most of the class members' payroll records from July 29, 2009 to December 31, 2010; (3) most of the class-members' year-end payroll reports for 2006 to 2015 and year-to-date payroll reports for 2016; (4) the identities and dates of employment of all maître d's; (5) year-end payroll reports for 2006 to 2015 for the

maître d's; (6) several outstanding opt-in Plaintiffs' payroll records; and (7) a large number of tip sheets, primarily from Les Halles Park Avenue during the period between September 5, 2006 through May 25, 2008.  (Doc. No. 226 at 2–3.)

On June 29, 2016, the Court ordered Defendants and their attorneys to show cause why they should not be sanctioned for failing to comply with the Court's April 15 Order.  (Doc. No. 227.)  In their response, dated July 1, 2016, Defendants tellingly do not argue that they have in fact complied with the Court's directives.  (Doc. No. 231.)  Rather, most of their submission references client-confidential communications relevant to Defendants' attorneys' fruitless efforts to obtain compliance with the Court's orders, which were submitted to the Court *in camera*.  In the publicly filed portion of their submission, Defendants' attorneys admit that, "[a]gainst all of our guidance, assistance, and advice, Defendants did not comply with [the April 15] Order."  (*Id.* at 1.)

On July 6, 2016, Defendants' counsel wrote the Court to indicate that their clients, who had earlier represented that they had produced "all responsive documents in their possession," had in fact "located twelve (12) additional boxes that contain material responsive to the Court's [April 15] order."  (Doc. No. 234.)  That same date, the Court ordered Defendants to produce the additional twelve boxes to Plaintiffs and to submit a letter apprising the Court of their contents no later than July 8, 2016.  (Doc. No. 235.)  The Court also directed Plaintiffs to submit a response no later than July 11, 2016.  (*Id.*)

On July 8, 2016, Defendants submitted an update to the Court indicating that the boxes contained additional payroll records.  (Doc. No. 236.)  Defendants made no claim to have fully complied with the Court's April 15 Order or any of the Court's subsequent discovery orders.  (*See id.*)  In their response, Plaintiffs catalogued the numerous categories of discovery

4

Defendants were required to produce under the April 15 Order have not been fully provided, including: (1) class members' time records from September 5, 2006 to February 26, 2011, (2) certain of the class members' payroll records from July 29, 2009 to December 31, 2010, (3) class members' year-end payroll reports for 2006 to 2015 for most of the years at issue and year-to-date payroll reports for 2016, (4) identities and dates of employment of all maître d's, (5) year-end payroll reports for the maître-d's for 2006 to 2015, (6) certain of the outstanding payroll records for Opt-In Plaintiffs, and (7) unredacted tip sheets from September 5, 2006 to the present. (Doc. No. 237.)

## II. DISCUSSION

### A. Civil Contempt

"[A] party who flouts" the Court's discovery orders "does so at his peril." *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989) (internal citation and quotation marks omitted). It is well established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (internal citation and quotation marks omitted). Moreover, Federal Rule of Civil Procedure 37(b)(2)(A)(vii) authorizes a court to "treat[] as contempt of court the failure to obey any order except an order to submit to a physical or medical examination." *See also* 18 U.S.C. § 401 (authorizing courts "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command"). "The purpose of civil contempt, broadly stated, is to compel a reluctant party to do what a court requires of [it]." *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986); *see also Gucci Am., Inc. v. Li*, No. 10-cv-4974 (RJS), 2015 WL 7758872, at *1 (S.D.N.Y. Nov. 30, 2015). "Because a contempt order is a severe sanction, it is subject to the higher 'clear and convincing' evidence

standard rather than the usual preponderance of the evidence standard applicable to other civil cases." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001) (collecting cases). Thus, a court may hold a party or a non-party in civil contempt for failing to comply with a court order where: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal citation and quotation marks omitted). "It need not be established that the violation was willful." *Id.*

Applying these factors to the case at hand, the Court first finds that (1) the April 15 Order setting forth Defendants' discovery obligations was "clear and unambiguous" in that it clearly describes the documents to be produced and Defendants' deadlines for such production, and (2) the June 21 and June 29 Orders make clear that Defendants' continued noncompliance would result in sanctions. (*See* Doc. Nos. 219, 224, 227.) In other words, the April 15, June 21, and June 29 Orders can "leave no uncertainty in the minds of those to whom [they are] addressed." *Hess v. N.J. Trans. Rail Operations*, 846 F.2d 114, 116 (2d Cir. 1988). Furthermore, at the June 21 Conference, the Court warned LaJaunie personally of the consequences of continued noncompliance with its orders, and LaJaunie represented that he "underst[ood]" the consequences of continuing to defy the Court. (June 21 Tr. 27:15-25.)

Significantly, Defendants' attorneys have never argued that their clients have fully complied with the April 15 Order. In fact, in the publicly filed portion of their letter, dated July 1, 2016, Defendants' counsel admits: "against all of our guidance, assistance, and advice, Defendants did not comply with [the April 15] Order." (Doc. No. 231 at 1.) Defendants'

representation on June 28, 2016 that "all responsive documents in their possession have been produced to Plaintiffs" was demonstrably false, as evidenced by Defendants' production, one week later, of twelve more boxes of responsive documents. (Doc. Nos. 225, 234.) Accordingly, the Court has no trouble concluding that proof of Defendants' noncompliance is "clear and convincing."

Finally, the Court also concludes that Defendants have not diligently attempted to comply with the April 15 and June 21 Orders in a reasonable manner. Defendants have been aware of their discovery obligations for nearly *three months*. In fact, as Defendants' *ex parte* submissions reveal, their attorneys warned them in early May that continued noncompliance with the Court's orders would lead to sanctions. While Defendants aver that the "depth and breadth" of the discovery ordered by the Court and the "limited resources available" to Defendants in light of Les Halles Park Avenue's recent closure make full compliance "impossible" (June 21 Tr. 5:18-20; *see also* Doc. No. 231 at 4–5), the Court finds this argument entirely unpersuasive. The Fair Labor Standards Act ("FLSA") imposes a duty on employers to maintain the very records the Court has compelled – "proper record[s] of wages, hours and other conditions and practices of employment," *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946); 29 U.S.C. § 211(c), and the Department of Labor imposes regulations that detail the records employers engaged in interstate commerce must maintain, *see Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 397–98 (E.D.N.Y. 2013) (describing relevant Department of Labor regulations). Furthermore, this suit has been pending since 2013. Thus, for several years, Defendants have been obligated under the Federal Rules of Civil Procedure "to preserve" records that they "know[], or reasonably should know[], [are] relevant in the action, [are] reasonably calculated to lead to the discovery of admissible evidence, [and/or are] reasonably likely to be requested

during discovery . . . ." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (internal citations and quotation marks omitted). Accordingly, the Court concludes that Defendants have not diligently attempted to comply in a reasonable matter, and that all of the factors set forth by the Second Circuit in *Paramedics* weigh in favor of a finding of civil contempt.

### B. Contempt Sanctions

Civil contempt sanctions may be used to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *N.Y. Stale Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1352 (2d Cir. 1989); *see United States v. United Mine Workers of Am.,* 330 U.S. 258, 304 (1947); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1,6 (2d Cir. 1989). "It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014).

The Court finds that a coercive sanction is warranted here in light of Defendants' repeated failures to comply with the Court's orders. When the purpose of a sanction is coercive, courts have "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus. Inc. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir. 1982); *see also Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) ("[T]he district judge, sitting in equity, is vested with wide discretion in fashioning a remedy."). In devising a remedy for a party or non-party's civil contempt, courts must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon [it]." *Dole Fresh Fruit Co. v. United Banana Co.,*

821 F.2d 106, 110 (2d Cir. 1987). In essence, a fine must "be substantial enough to make it more economical for [Defendants] to comply than not to comply." *Perfect Fit Indus., Inc.,* 673 F.2d at 57.

The Court concludes that a fine of $500 per day for each day of continued noncompliance over the next two weeks is necessary to coerce Defendants into compliance with the April 15 Order and the Court's subsequent discovery orders. First, Plaintiffs represent, and the Court has no reason to doubt, that Defendants' continued noncompliance has made it difficult – if not impossible – for Plaintiffs to prepare their case for trial. *See Gucci Am.*, 2015 WL 7758872, at *3 (finding coercive sanctions warranted where "continued non-compliance has made it difficult – if not impossible – for [p]laintiffs to prosecute their claims against [d]efendants . . . ."). Second, Defendants have flouted the Court's discovery orders since April, with the exception of their piecemeal and deficient productions after the June 21 Conference. Therefore, the Court finds that Defendants' conduct leaves the Court with "little alternative but to impose a significant sanction that will motivate [Defendants] to comply with the Court's Orders." *Id.*

With respect to the third factor, the Court accepts at face value Defendants' insistence that their resources are limited. In fact, it appears that Defendants also have failed to pay their legal fees for several months. (Doc. No. 220.) Nevertheless, the Court rejects the suggestion that compliance with the Court's prior orders is impossible or inordinately onerous. Accordingly, the Court has every reason to believe that a sanction of $500 per day will provide sufficient incentive for Defendants to meet their discovery obligations. However, the Court's patience is not limitless, and Defendants are on notice that coercive fines will be imposed for a limited duration of time, since, for the reasons set forth in the next section, the Court will likely grant a default judgment in two weeks if Defendants continue to defy the April 15 Order.

C. Default Judgment

The Court next considers Plaintiffs' request for the immediate issuance of a default judgment in light of Defendants' non-compliance with the April 15 Order. As a general rule, "default judgments are disfavored," and "[a] clear preference exists" in this Circuit for "cases to be adjudicated on the merits." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001). However, "'[i]f a party . . . fails to obey an order to provide or permit discovery,' the district court may impose sanctions, including 'rendering a default judgment against the disobedient party.'" *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450 (2d Cir. 2013) (quoting Fed. R. Civ. P. 37(b)(2)(A)(vi)). A default judgment, while a "severe sanction[]," is nonetheless "appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party." *Id.* (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)). The Second Circuit has identified the following factors to guide the district court's exercise of discretion in deciding whether to enter a default judgment: "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned." *Id.* (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir.2009) (per curiam)).

First, the Court concludes that Defendants willfully and deliberately defied the Court's April 15 Order and other relevant discovery orders, as illustrated by their "repeated failures to comply" even after Defendants "explicitly acknowledg[ed]" that they violated the Court's discovery order at the June 21 Conference, *Robertson v. Dowbenko*, 443 F. App'x 659, 661 (2d Cir. 2011), and even after the Court repeatedly warned Defendants that failure to comply with the April 15 Order may result in sanctions, including default (June 21 Order 1; June 21 Tr. 17:12-13, 28:15-25); *see also Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x 607, 609 (2d

10

Cir. 2014) (affirming imposition of default judgment where party "blatantly disregarded multiple warnings and orders"). The Court is especially troubled by Defendants' false representation to their attorneys on June 28, 2016 that they fully complied with the April 15 Order, which reflects bad faith on Defendants' part. (*See* Doc. Nos. 225, 234); *see also Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 225 (S.D.N.Y. 2003) (finding that false representations of compliance with discovery orders evinces bad faith). Thus, because Defendants willfully failed to comply with the Court's April 15 Order and acted in bad faith, the Court concludes that the first factor weighs in favor of entry of a default judgment.

The Court also concludes that the third and fourth factors clearly favor a default judgment. As noted above, Defendants' noncompliance has persisted since the April 15 Order. *See Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 265–66 (S.D.N.Y. 2015) (noting that "durations of time as brief as a few months have been held to weigh in favor of dispositive sanctions") (collecting cases). Furthermore, the Court "was unmistakably clear as to the scope of [D]efendants' production obligations" in the April 15 Order and its subsequent orders, *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010), and, as stated earlier, the Court warned Defendants at the June 21 Conference and in the June 21 and June 29 Orders that failure to comply might result in sanctions, including entry of a default judgment (Doc. Nos. 224, 227; June 21 Tr. 17:10-25, 18:6-14, 19:17–20:2, 26:19-23, 27:15-24).

Nevertheless, the Court will forego, for the moment, the imposition of a default judgment because it believes lesser sanctions may still be effective. Defendants have at least started to comply with the Court's April 15 Order, albeit belatedly and in a scattershot manner, through their productions on June 28, 2016, July 1, 2016 and July 8, 2016. The Court thus remains

hopeful that the contempt sanctions it has ordered – coupled with the threat of default judgment in the face of continued noncompliance – will effectively compel Defendants' compliance with its discovery orders.

Even so, the Court's patience with Defendants' recalcitrance is running low, and "district courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *S. New Eng. Tel. Co.*, 624 F.3d at 148. In fact, should Defendants' noncompliance continue for an additional two weeks, it will mark nearly two months since their first missed deadline under the April 15 Order, thus seriously jeopardizing the September 12, 2016 trial date ordered by the Court. Thus, while the Court reserves decision on whether to enter a default judgment, it is highly likely the Court will grant Plaintiffs a default judgment in two weeks should Defendants' noncompliance continue.

D. Reconsideration of the Court's Summary Judgment Opinion

Plaintiffs also ask the Court to reconsider its summary judgment decision dismissing their NYLL claims against LaJaunie. (Doc. No. 226 at 4.) Because the order granting summary judgment to LaJaunie was a non-final order, *see Johnson v. Commodore Cruise Lines, Ltd.*, 897 F. Supp. 740, 746 n.7 (S.D.N.Y. 1995), Federal Rule of Civil Procedure 54(b) and Local Rule 6.3 authorize reconsideration under certain circumstances. The Second Circuit has "limited district courts' reconsideration of earlier decisions," holding that "those decisions may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *In re Fannie Mae 2008 ERISA Litig.*, No. 09–cv–1350 (PAC), 2014 WL 1577769, at *3 (S.D.N.Y. Apr. 21, 2014) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir.2003)).

The Court finds that the interests of justice may require reconsideration of its decision to dismiss Plaintiffs' NYLL claims against LaJaunie.   At the June 21 Conference, the Court expressed concern that LaJaunie, who announced that he was closing the Park Avenue Restaurant within days of the Court's order dismissing claims against him, had embarked on a "strategy" to defy court orders and to stop paying his attorneys in order to "buy time in which to render the corporate defendants judgment-proof."   (June 21 Tr. 19:5-12.)   Plaintiffs note, correctly, that Defendants have provided no adequate explanation for their continued defiance of the Court's orders.   Plaintiffs also represent, and the Court has no reason to doubt, that Defendants' delay is designed to "prevent Plaintiffs from preparing for trial," since the missing class discovery is "critical to determining damages" at the September 12, 2016 trial.   (Doc. No. 226 at 4.)

Furthermore, although Plaintiffs' attorneys neglected to introduce such evidence as part of their Local Civil Rule 56.1 Statement during summary judgment, Plaintiffs assert that there is a substantial amount of evidence showing that LaJaunie acted as their employer under the NYLL. (*See* Doc. No. 211.)   Specifically, Plaintiffs represent that there is deposition testimony from LaJaunie and others indicating that LaJaunie made hiring decisions, supervised and controlled employee work schedules, and determined Plaintiffs' rate and method of payment, among other things.   (*Id.* at 13–14; *see also* S.J. Op. at 14 (setting forth the factors relevant to the "economic reality" test under the NYLL).)   While the Court is mindful that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again," *Coopers & Lybrand, LLP,* 322 F.3d at 167, the Court is now concerned that Defendants' gamesmanship and defiance are designed to leave the corporate Defendants judgment-proof and Plaintiffs empty-handed even if successful at trial.

Accordingly, the Court orders Defendants to show cause, no later than one week from the date of entry of this order, why the Court should not reopen summary judgment briefing and allow Plaintiffs to submit a revised Local Civil Rule 56.1 Statement with respect to LaJaunie's status as an employer under the NYLL.  Defendants shall submit a brief of no more than ten (10) pages.  Within one week of Defendants' supplementary submission, Plaintiffs shall respond with a brief of no more than ten (10) pages in support of reconsideration, along with a proposed Local Civil Rule 56.1 Statement concerning LaJaunie's status as an employer under the NYLL, and up to five (5) affidavits or exhibits containing relevant evidence.

### E.  Plaintiffs' Costs

Plaintiffs also request an award for the reasonable expenses, including attorneys' fees, incurred in connection with this discovery dispute.  (Doc. No. 226 at 5.)  Although the Court has already ordered civil contempt sanctions against Defendants, Rule 37(b)(2)(C) authorizes a Court to also order a party who has disobeyed its discovery orders "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

Accordingly, the Court orders Plaintiffs to submit, no later than a week after entry of this order, a letter of no more than five (5) pages in support of an application for attorney's fees and other reasonable expenses.  Plaintiffs must "document the expenses and fees claimed, supported by time records in the form required by Second Circuit law," *Intertec Contracting Turner Steiner Int'l, S.A.*, No. 98-cv-9116 (CSH), 2001 WL 812224, at *12 (S.D.N.Y. July 18, 2001) (citing *N.Y. State Ass'n for Retarded Children Inc. v. Carey*, 706 F.2d 956, 1147–48 (2d Cir. 1983)), and must establish that such costs "were a direct result of [Defendants'] violation of the Court's April 15 Order or other recent discovery orders," *id.*  The Court orders Defendants to submit, no

later than a week after Plaintiffs submit their application for fees, a response of no more than five (5) pages in opposition to any application for fees.

### F. Sanctions Against Defendants' Attorneys

On June 28, 2016, the Court ordered Defendants' counsel to show cause why Defendants' counsel should not also be sanctioned for their clients' noncompliance with the Court's orders. (Doc. No. 227.) Having reviewed Defendants' attorneys' *in camera* submissions, the Court is satisfied that counsel attempted to facilitate Defendants' compliance with the April 15 Order. While Defendants' attorneys could be faulted for waiting until *the day before* the class list was due under the April 15 Order, May 31, 2016, to bring their motions for a stay and to withdraw (Doc. No. 220), the Court declines to order a monetary sanction against Defendants' attorneys, whose own clients have not paid them for their services for several months (*id.* at 2). The Court nonetheless reminds Defendants of their ongoing duties, as officers of the Court, to facilitate their clients' compliance with Court orders.[1]

### III. CONCLUSION

For the foregoing reasons, the Court holds Defendants in civil contempt for their failure to comply with the Court's April 15 Order, and ORDERS that Defendants shall pay to the Court a coercive fine of $500 per day for each subsequent day of noncompliance.

IT IS FURTHER ORDERED that, no later than one week from the date of this order, Defendants shall show cause as to why the Court should not reconsider its decision granting LaJaunie summary judgment on Plaintiffs' claims brought under the NYLL in conformity with

---

[1] The Court is in receipt of a voice mail from LaJaunie inquiring regarding the status of his attorneys' motion to withdraw from the case. As set forth on the record at the hearing that LaJaunie attended personally and in the minute entry publicly filed on the docket sheet, the Court denied the motion to withdraw. (*See* Minute Entry June 21, 2016; *see also* June 21 Tr. 5:9-10, 27:1-2.) Accordingly, since LaJaunie remains a represented party, any communications with the Court must be conducted through his counsel.

Section 2D of this order. Plaintiffs shall file their response no later than a week after Defendants have made their submission.

IT IS FURTHER ORDERED that, within one week from the date of this order, Plaintiffs shall make their submission in support of their motion for costs in conformity with Section 2E of this order. Defendants shall file their response no later than one week after Plaintiffs have made their submission.

SO ORDERED.

Dated:        July 14, 2016
              New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/14/16_