**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ETHAN MURPHY, STEPHANIE CASTILLO, CHRISTOPHER L. SCOTT, LOGAN SCOTT, NICOLE CLOUSE, NYAMKA AYINOLA, EDGAR OCOTOXTLE, and EFRAIN RAMIREZ,** on behalf of themselves and others similarly situated, | No. 13 Civ. 6503 (RJS) |

          **Plaintiffs,**

    **v.**

**PHILIPPE LAJAUNIE, LA BOUCHERIE INC., 15 JOHN CORP, LHLM GROUP, CORP. a/k/a BRASSERIE LES HALLES NEW YORK, and XYZ CORP.,**

          **Defendants.**

 

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RECONSIDERATION OF DISMISSAL OF NEW YORK LABOR LAW CLAIMS AGAINST PHILIPPE LAJAUNIE**

 

| | |
|---|---|
| JOSEPH & KIRSCHENBAUM LLP | THE LAW OFFICES OF JEFFREY E. GOLDMAN |
| D. Maimon Kirschenbaum, Esq. | Jeffrey Goldman, Esq. |
| Denise Schulman, Esq. | 501 Fifth Avenue, Suite 1900 |
| 32 Broadway, Suite 601 | New York, New York 10017 |
| New York, New York 10004 | 212-983-8999 |
| 212-688-5640 | |

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ i

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     ARGUMENT ........................................................................................................ 1

   A.   This Court May Reconsider Its Summary Judgment Decision........................... 1

   B.   The Record Supports A Finding That LaJaunie Was Class Members' Employer Under
        The NYLL................................................................................................................. 5

      i.   Legal standard for individual liability under the NYLL ................................... 5

      ii.  A jury could find that LaJaunie was the Class Members' employer under the NYLL  6

         a.   LaJaunie had the power to hire, fire, and promote employees ................................ 6

         b.   Lajaunie supervised and controlled employee work schedules or conditions of
              employment........................................................................................................... 7

         c.   LaJaunie has the authority to determine the rate and method of payment................ 9

         d.   Assessing the totality of the circumstances, a fact finder could conclude that
              LaJaunie was Class Members' employer under the NYLL .................................... 10

III.    CONCLUSION.................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Anixter v. Home-Stake Prod. Co.*, 977 F.2d 1533 (10th Cir. 1992)..................................2

*Audi Vision Inc. v. RCA Mfg. Co., Inc.*, 136 F.2d 621 (2d Cir. 1943) .............................2,4

*Nurani v. Marissa by GHR Indus. Trading Corp.*, 151 F.R.D. 32 (S.D.N.Y. 1993)........4

*Flanigan v. Vulcan Power Group, LLC*, No. 14-444,
      2016 U.S. App. LEXIS 4680, 2016 WL 963935 (2d Cir. Mar. 15, 2016)...........5,6,7

*Friedman v. N.Y.C. Administration for Children's Servs.*, No. 04-3077,
      2009 U.S. Dist. LEXIS 62175, 2009 WL 2222803 (E.D.N.Y. July 21, 2009).....4

*Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132 (2d Cir. 1999) .......................................6,7,10

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) .......................................................7,8,9,10

*Manzi v. DiCarlo*, 62 F. Supp. 2d 780 (E.D.N.Y. 1999) ...................................................4

*Murphy v. LaJaunie*, No. 13 CV 6503,
      2016 U.S. Dist. LEXIS 37137, 2016 WL 1192689 (S.D.N.Y. Mar. 22, 2016)....3,4

*Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513 (S.D.N.Y. 2014)...................................6,9

*Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014).................................6,8

*Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241 (E.D.N.Y. 2015).........................................6,8,10

**Rules**

Fed. R. Civ. P. 16............................................................................................................2

Fed. R. Civ. P. 37............................................................................................................2

Fed. R. Civ. P. 54............................................................................................................2

## I.     PRELIMINARY STATEMENT

In accordance with the Court's July 14, 2016 Order (Dkt. No. 238), Plaintiffs submit this memorandum of law in support of reconsideration of the Court's entry of summary judgment dismissing their New York Labor Law ("NYLL") claims against Defendant Philippe LaJaunie ("LaJaunie").[1]  Defendants do not contend that they have complied with the Court's Orders. Instead, they argue a point that is seemingly not up for debate, namely, that the Court has the power and authority to sanction Defendants' for their continued defiance of this Court's Orders by reconsidering the dismissal of the NYLL claims against LaJaunie.  The law is clear that the Court does in fact have such power and authority.

There is ample evidence in the record to support a finding on the merits that LaJaunie is an employer under the NYLL.  Astonishingly, LaJaunie himself submitted a letter to the Court on or about July 22, 2016 (Dkt. No. 245-1) in which he essentially conceded his control over employees, which is key to finding him to be an employer under the NYLL.  Therefore, the Court should reopen summary judgment briefing with respect to LaJaunie's employer status under the NYLL or, in the alternative, reinstate the NYLL claims against him.

## II.    ARGUMENT

### A.  This Court May Reconsider Its Summary Judgment Decision

This Court has already found that it has the authority to reconsider its summary judgment decision dismissing the NYLL claims against LaJaunie.  (July 14, 2016 Order (Dkt. No. 238) at

---

[1] With this memorandum, Plaintiffs submit their proposed Local Civil Rule 56.1 Statement ("Pls.' 56.1 Statement") and the July 27, 2016 declaration of Denise A. Schulman ("Schulman Decl.") and Exhibits 1 to 4 ("Ex. 1", "Ex. 2", "Ex. 3", "Ex. 4") thereto.  References herein to "Ex. 14" are to Dkt. No. 185-14.

12-14.)  Defendants' argument in their July 21, 2016 letter that the Court lacks this authority under the circumstances of this case is therefore misguided.

This Court's dismissal of the NYLL claims against LaJaunie was an interlocutory order that "may be revised at any time before the entry of a judgment adjudicating all the claims[.]" Fed. R. Civ. P. 54(b).  In fact, the Tenth Circuit found no abuse of discretion where a district court to reinstated claims previously dismissed on summary judgment *during* trial based on the evidence presented at trial: "[W]e must properly acknowledge the role of the trial judge, which is broadly circumscribed by the discretion to conduct the trial proceedings consistent with what plays out before the court, not inflexibly constrained by pretrial rulings which may not be borne out by the trial process." *Anixter v. Home-Stake Prod. Co.*, 977 F.2d 1533, 1547-1548 (10th Cir. 1992); *see also Audi Vision Inc. v. RCA Mfg. Co., Inc.*, 136 F.2d 621 (2d Cir. 1943) (noting that a partial summary judgment "order is expressly subject to medication  at the trial to prevent manifest injustice.") (quotation marks omitted).

Most significantly, as the Court may reconsider its summary judgment decision, it certainly has the authority to do so as a sanction for Defendants' willful defiance of its Orders. Under Fed. R. Civ. P. 16(f)(1)(c), "a court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  The sanctions delineated in Rule 37 include striking the pleadings, entering a default judgment, and dismissing an action.  Fed. R. Civ. P. 37(b)(2)(A).  Reconsidering the summary judgment decision and reinstating the NYLL claims against LaJaunie is a less severe sanction than the default and dismissal authorized by Fed. R. Civ. P. 37, as it is not a substantive

decision on the merits.[2]  Thus, the Court may reconsider its summary judgment decision as a

sanction, and reconsideration is appropriate in light of Defendants' malfeasance.

      As this Court has noted, an interlocutory order "may not usually be changed unless there

is an intervening change of controlling law, the availability of new evidence, or the need to

correct a clear error or prevent a manifest injustice."  (Dkt. No. 218 at 1.)  This Court has already

identified one manifest injustice that is present here: that the pattern of events in this case

indicates that LaJaunie has strategically used the dismissal of claims against him to render the

corporate defendants judgment-proof.  (Dkt. No. 238 at 13.)  This alone justifies reconsideration.

      An important consideration, akin to the availability of new evidence, is LaJaunie's

uninvited July 22, 2016 submission to the Court in which he admits that he "organized a

complete interviewing of the staff of both restaurants, during which staff was met in large groups

and then in groups with similar grievances, and even individually."  (Dkt. No. 248 at 12.)  As

discussed more fully below, this type of control over employees is highly indicative of employer

status under the NYLL.

      Moreover, the determination of LaJaunie's employer status under both the FLSA and

NYLL would be based on the same facts and will apply similar, if not virtually identical, law.

*Murphy v. LaJaunie*, No. 13 CV 6503, 2016 U.S. Dist. LEXIS 37137, at *25, 2016 WL 1192689

(S.D.N.Y. Mar. 22, 2016) ("In analyzing whether an individual is an 'employer under NYLL,

courts apply an 'economic reality' test akin to the 'economic reality' inquiry under the FLSA.").

Because the Court did not dismiss the FLSA claims against LaJaunie (indeed, Defendants did not

seek summary judgment on that issue), his individual liability under the FLSA remains to be

decided.  The facts underlying Plaintiffs' claim that LaJaunie is an employer under the NYLL

---

[2] That said, in the event that LaJaunie *continues* to defy this Court's Orders, it is likely that the
Court will hold him in default for those violations.  (July 14, 2016 Order at 12.)

will be set forth at trial or in a default judgment if Defendants continue to violate this Court's

Orders.  Under these circumstances, Plaintiffs respectfully submit that it makes logical sense and

promotes judicial efficiency to reinstate the NYLL claims against LaJaunie:

> "If one [or more] of a number of integrally related causes of action have to be
> tried, it makes no sense to grant summary judgment as to one or more of them, as
> it may prove necessary to hold yet another trial in the event that it is determined
> on appeal that summary judgment was improperly granted."  *Manzi v. DiCarlo*,
> 62 F. Supp. 2d 780, 793 (E.D.N.Y. 1999).   Indeed, as the Second Circuit has
> observed:
>
> > [T]here seems no question that in the long run fragmentary
> > disposal of what is essentially one matter is unfortunate for the
> > waste of time and expense caused the parties and the courts, but
> > because of the mischance of differing dispositions of what is
> > essentially a single controlling issue.
>
> *Audi Vision Inc. v. RCA Mfg. Co.*, 136 F.2d 621, 625 (2d Cir. 1943).

*Friedman v. N.Y.C. Administration for Children's Servs.*, No. 04-3077, 2009 U.S. Dist. LEXIS

62175, at *17-18, 2009 WL 2222803 (E.D.N.Y. July 21, 2009).

Plaintiffs further submit that failing to reinstate the NYLL claims against LaJaunie

creates a high risk of inconsistent judgments that would be manifestly unjust.  Specifically, if

LaJaunie is found – either at trial or in default – to be an employer under the FLSA, it would be

highly unjust for him to be relieved of liability under the NYLL's substantially similar standard,

particularly when the corporate Defendants are likely to be judgment proof.

In addition, inasmuch as the Court's summary judgment decision was based on a

technical failure to present evidence rather than a finding that the record evidence could not

support a finding of individual liability, that decision was not a decision on the merits.  In light of

Defendants' defiance of the Court's Orders, which provides a new basis for reconsideration,

Plaintiffs respectfully submit that reinstatement at this juncture would avoid a non-merits based

dismissal of claims.  *Cf. Nurani v. Marissa by GHR Indus. Trading Corp.*, 151 F.R.D. 32, 36

(S.D.N.Y. 1993) (noting that "courts view Rule 60(b) motions more favorably where, as here, granting the motion will permit an adjudication on the merits").  For the foregoing reasons, this Court has the authority to reconsider its summary judgment decision, and reconsideration is an appropriate sanction.

### B.   The Record Supports A Finding That LaJaunie Was Class Members' Employer Under The NYLL

#### i.   Legal standard for individual liability under the NYLL

As set forth by this Court in its original summary judgment decision, to determine whether an individual is an employer, courts apply an economic reality test similar to the FLSA's economic reality test.  *Murphy*, 2016 U.S. Dist. LEXIS 37137, at *25.  Under this analysis, courts consider "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."  *Id*. at *25-26; *see also Flanigan v. Vulcan Power Group, LLC*, No. 14-4444, 2016 U.S. App. LEXIS 4680, at *8, 2016 WL 963935 (2d Cir. Mar. 15, 2016) ("Whether an individual qualifies as an employer [under the NYLL] depends on whether the particular defendant had the power to hire and fire employees, whether he supervised and controlled the conditions of employment, and whether he determined rates and methods of payment, and the like.").

All of these factors need not be satisfied to support a finding that an individual is an employer.  Rather, a fact finder must ultimately consider the totality of the circumstances to determine whether an individual exercised sufficient control to be an employer.  "Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive. Since economic reality is determined based upon *all* the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition."

*Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Thus, in a recent decision, the Second Circuit affirmed a jury verdict finding that an individual was an employer under the NYLL where he (1) "had the power to hire and fire [the plaintiff] and the authority to supervise her"; and (2) "controlled the purse strings and controlled how [the company] operated on a day-to-day basis." *Flanigan*, 2016 U.S. App. LEXIS 4680, at *8 (internal quotation marks omitted; alteration in original); *see also*, *e.g.*, *Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 255-256 (E.D.N.Y. 2015) (denying defendants' summary judgment motion with respect to two individuals who did not determine the rate and method of payment or maintain employment records, and for whom there were disputed issues of fact concerning their power to hire and fire employees and supervise or control employee work schedules or conditions of employment); *Ramirez v. Riverbay Corp.*, 35 F. Supp. 3d 513 (S.D.N.Y. 2014) (denying defendants' summary judgment with respect to individual who did not have the power to hire or fire employees); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 135 (S.D.N.Y. 2014) (denying defendants' summary judgment motion where plaintiffs set forth evidence that individual defendant "supervised and controlled employee work schedules or conditions of employment and determined their rate and method of payment").

### ii.  A jury could find that LaJaunie was the Class Members' employer under the NYLL

Under the economic reality test, a jury could conclude that LaJaunie was the Class Members' employer under the NYLL. As such, the claims against LaJaunie should be reinstated.

### a.  LaJaunie had the power to hire, fire, and promote employees

LaJaunie is the sole owner of the Corporate Defendants. (Pls.' 56.1 Statement ¶ 1.) In that capacity, he had and exercised the authority to hire, fire, and promote employees. He

6

promoted a maitre d' to general manager, hired a director of operations, fired a server, and was involved in the decisions to hire, fire, and promote assistant managers and maitre d's.  (*Id.* at ¶¶ 2-5, 7.)  While LaJaunie exercised his hiring and firing authority primarily with respect to managers and supervisors, "the fact that he hired individuals who were in charge of [the Class Members] is a strong indication of control."  *Herman*, 172 F.3d at 140.  The frequency with which LaJaunie exercises this authority is irrelevant, as it is clear that he "had the power to hire and fire" employees.  *Flanigan*, 2016 U.S. App. LEXIS 4680, at *8; *Irizarry v. Catsimatidis*, 722 F.3d 99, 114 (2d Cir. 2013) (power to hire and fire factor satisfied where individual employer "possesses, but rarely exercises, the power to hire or fire anyone he chooses"); *Herman*, 172 F.3d at 139 ("Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence.").  In addition, before this Court LaJaunie referred to Les Halles Park Avenue employees repeatedly as "my employees," further suggesting that he has ultimate authority over them and their jobs.  (Pls.' 56.1 Statement ¶ 24.)

### b. Lajaunie supervised and controlled employee work schedules or conditions of employment

LaJaunie clearly had and exercised overall control over the restaurants and in fact micromanaged many aspects of the restaurants' operations.  The restaurants' general managers reported to LaJaunie and communicated daily with him about restaurant operations.  (Pls.' 56.1 Statement ¶ 8-9.)  While this alone indicates that LaJaunie exercised control over the conditions of Class Members' employment, he also made decisions and set rules that directly related to service employees.  For example, he has the authority to change employees' uniforms, which he exercised in November 2012 when he mandated that maitre d's wear suits.  (*Id.* at ¶ 21.)  He directed an employee at Les Halles John Street to train at Les Halles Park Avenue.  (*Id.* at ¶ 22.)

LaJaunie also signs immigration sponsorship paperwork for non-citizen employees, a function he alone performs because of its importance.  (*Id*. at ¶ 19.)

LaJaunie regularly visits the restaurants and gives directives concerning service and the restaurants' cleanliness, equipment, music, lighting, décor, and menu that must be followed.  (*Id*. at ¶ 12.)  *See Irizarry*, 722 F.3d at 113 (discussing suggestions made by individual employer regarding stores' cleanliness, displays, and inventory); *Wang*, 81 F. Supp. 3d at 257 n.9 ("[D]irecting employees how to do their jobs is one of many relevant factors that may, when viewed in the totality of the circumstances, be relevant to determining whether an individual is or is not an employer.").  This included such minutiae as requiring service employees, *i.e.*, Class Members, to use particular containers, offer a certain amount of complimentary bottled water from his water company, set tables in a particular way, and promote a particular menu.  (Ex. 4, P3669, P3685, P3687, DLH 37173; Ex. 14, P979.)  That LaJaunie frequently relayed his directives through a manager rather than communicating directly with service workers is immaterial.  *Schear*, 297 F.R.D. at 135 (giving directions to employees through managers is evidence that the putative employer supervised and controlled conditions of employment).  He also set overall goals and policies for the restaurant and established criteria for "secret shoppers" who visited and evaluated the restaurants.  (Pls.' 56.1 Statement ¶ 23.)  In fact, LaJaunie is so involved in managing the restaurants' activities that the Les Halles Park Avenue e-mailed the restaurant's maitre d's stating, "While I'm gone I'm sure Philippe and company (Yoko) will be on your case as much as possible."  (*Id*. at ¶ 14.)

LaJaunie also has a significant role in addressing employees' workplace issues, indicating his control over employees' conditions of employment.  After this lawsuit began, LaJaunie held staff meetings to discuss the lawsuit and any employee grievances.  At the meetings, LaJaunie

told employees to come to him or the director of operations with any workplace concerns.  (*Id*. at ¶ 15.)  He subsequently required service employees to attend private meetings with him and the director of operations.  (*Id*. at ¶ 17.)  Similarly, under the Corporate Defendants' discrimination and harassment policies, discrimination and harassment can be reported to LaJaunie.  (*Id*. at ¶ 18.)  He is, therefore, plainly vested with authority concerning personnel matters.

### c.  LaJaunie has the authority to determine the rate and method of payment

LaJaunie has authority over employee compensation.  For example, he has authorized wage payments to employees who cannot work due to illness or injury.  (*Id*. at ¶ 20.)  As that is within his power, it is clear that he could – if he chose to – dictate employees' wage rates as well. *See Ramirez*, 35 F. Supp. 3d at 521 (determining rate and method of payment factor can be satisfied by evidence that putative employer authorized overtime and compensatory time payments).  In fact, LaJaunie stated at a staff meeting that because of this lawsuit, he could not afford to give the kitchen staff raises.  (Pls.' 56.1 Statement ¶ 16.)  Clearly, then, LaJaunie had the power to decide when to give employees raises.

LaJaunie also "control[s] the compan[ies] financially[,]" which weighs in favor of finding this factor to be satisfied.  *Irizarry*, 722 F.3d at 115 (internal quotation marks omitted).  For example, he personally negotiated the lease terms for Les Halles Park Avenue.  (Pls.' 56.1 Statement ¶ 25.)  In addition, based on LaJaunie's representations in Court, it is all but obvious that he made the ultimate decision to close the Park Avenue restaurant.  (June 21, 2016 Hearing Tr. 7:19-9:12 (Dkt. No. 226-1).)  He made other significant operational decisions for the restaurants that directly affected how Class Members were compensated, including deciding to create a separate company to hand back office functions for the restaurants, such as payroll, coordinating employee benefits, accounts payable and receivable, and licensing, and he regularly

receives sales reports.  (*Id*. at ¶¶ 10, 11.)  *Irizarry*, 722 F.3d at 112 (noting that individual employer reviewed profit and loss statements and other financial reports).  Accordingly, this factor clearly weighs in favor of finding LaJaunie to be an employer under the NYLL.

               **d.**    **Assessing the totality of the circumstances, a fact finder could conclude that LaJaunie was Class Members' employer under the NYLL**

In sum, there is sufficient evidence from which a jury could conclude that the first, second, and third factors of the economic reality test are satisfied and that LaJaunie had extensive control over Class Members' employment.  Based on this, a jury could find that LaJaunie was Class Members' employer under the NYLL.  That the fourth factor (maintaining employment records) is not satisfied does not undermine this.  On the contrary, courts routinely deny defendants' summary judgment motions, grant plaintiffs' summary judgment motions, and/or affirm jury verdicts in plaintiffs' favor where just two or three factors in the economic reality test are satisfied.  *Herman*, 172 F.3d at 140 (stating that a putative employer's failure to maintain employment records "is not dispositive"); *Wang*, 81 F. Supp. 3d at 257 (stating that "technical factors" of whether putative employer determined the rate and method of payment and maintained employment records "are not dispositive on the issue of whether he is an employer").  Accordingly, if summary judgment briefing is re-opened, Defendants will be unable to show that they are entitled to summary judgment dismissing the NYLL claims against LaJaunie.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its entry of summary judgment dismissing the NYLL claims against LaJaunie.

Dated: New York, New York
      July 27, 2016

/s/ Denise A. Schulman
Denise A. Schulman
D. Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
212-688-5640
212-688-2548 (fax)

Jeffrey E. Goldman
THE LAW OFFICES OF JEFFREY E.
GOLDMAN
501 Fifth Avenue, Suite 1900
New York, NY 10017
212-983-8999
212-949-5085 (fax)

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*

11