UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ETHAN MURPHY, *et al.*,

                Plaintiffs,

  -v-                                       No. 13-cv-6503 (RJS)
                                                              ORDER

PHILIPPE LAJAUNIE, *et al.*,

                Defendants.

RICHARD J. SULLIVAN, District Judge:

      On August 2, 2016, the Court held a conference to address Defendants' continued noncompliance with the Court's discovery orders (the "August 2 Conference"). For the reasons stated on the record and set forth below, the Court: (1) orders that Defendants pay a $7,000 contempt sanction pursuant to the Court's order, dated July 14, 2016 (Doc. No. 238 ("July 14 Order")); (2) deems Plaintiffs' motion for reconsideration of the Court's Summary Judgment Opinion (Doc. No. 208 ("Summary Judgment Opinion" or "S.J. Op.")) dismissing claims against LaJaunie under the New York Labor Law ("NYLL") made and grants the motion; (3) grants Defendants' counsel's renewed motion to withdraw as counsel of record; and (4) enters a default judgment against Defendants on Plaintiffs' remaining claims.

I. BACKGROUND AND PROCEDURAL HISTORY

      On March 22, 2016, the Court granted in part and denied in part Defendants' motion for summary judgment. (Doc. No. 208.) As relevant to the instant order, the Court granted LaJaunie's motion for summary judgment on Plaintiffs' NYLL claims on the ground that Plaintiffs had failed to offer any proof that LaJaunie acted as an "employer" for liability purposes under the NYLL. (*Id.* at 15.) Plaintiffs' Fair Labor Standards Act ("FLSA") claims

against LaJaunie remain pending in this case, since Defendants did not move for summary judgment to dismiss the those claims. (*See* Doc. Nos. 104 ("Am. Compl."), 166 ("S.J. Mem.") at 14–17.) Thereafter, Plaintiffs moved for reconsideration of the Summary Judgment Opinion, which the Court denied in an order dated April 14, 2016. (Doc. No. 218.)

On April 15, 2016, the Court ordered that trial on Plaintiffs' remaining claims will commence on September 12, 2016. (Doc. No. 219 ("April 15 Order" or "Apr. 15 Order") at 2.) In light of the Court's prior order granting Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (Doc. No. 196), the Court also ordered Defendants to provide Plaintiffs, no later than June 1, 2016, with a class list in Excel format that contained all class members' (1) names; (2) last known addresses; (3) location(s) of employment; (4) dates of employment at each location; and (5) position(s) held at each location. (*Id.*) In addition, the Court ordered Defendants to produce, no later than June 16, 2016: (1) time records for all class members from September 5, 2006 to February 26, 2011; (2) payroll records for all class members from July 29, 2009 to December 31, 2010; (3) year-end payroll reports for each class member for the years 2006 through 2015, and year-to-date payroll reports for each class member for 2016; (4) unredacted tip sheets for the entire class period – i.e., from September 5, 2006 to the present; (5) year-end payroll reports for all Maître D's employed at Les Halles Park Avenue and Les Halles John Street (the "Restaurants") from September 5, 2006 to the present; (6) dates of employment in the Maître D' position for all Maître D's employed at the Restaurants from September 5, 2006 to the present; and (7) payroll records for the 72 Plaintiffs who consented to join the FLSA collective action (the "Opt-In Plaintiffs"), to the extent Defendants had not already produced such records. (*Id.* at 1–2.)

On May 31, 2016, Defendants' attorneys moved to withdraw, pursuant to Local Civil Rule 1.4, on the ground that Defendants have failed to pay over $100,000 in legal fees in

connection with this matter. (Doc. No. 220.) The Court held a conference on June 21, 2016 (the "June 21 Conference"), at which the Court denied the motion to withdraw without prejudice to renewal. (Doc. No. 228 ("June 21 Tr.") at 5:9–11.)

During the June 21 Conference, Defendants also admitted that they had failed to comply with the Court's April 15 Order and had produced none of the materials that were the subject of that order. (*Id.* at 5:12–6:15.) Accordingly, the Court ordered Defendants to comply with the April 15 Order within one week; the Court also warned Defendants that their continued non-compliance would result in the imposition of sanctions pursuant to Federal Rules of Civil Procedure 16(f) and 37(b)(2) and/or the Court's inherent sanctioning power, including the possible grant of a default judgment in Plaintiffs' favor. (*Id.* at 18:6–14, 19:17–20:2, 26:19–23, 27:15–24; Doc. No. 224 ("June 21 Order").)

On June 28, 2016, Defendants submitted a letter to the Court in which they represented that they had produced a class list to Plaintiffs' counsel, along with several bankers' boxes of documents that Defendants' counsel averred were responsive to the items described in the Court's April 15 Order. (Doc. No. 225.) Defendants' attorneys also indicated that their clients had advised them on the afternoon of June 27, 2016 that "all responsive documents in their possession have been produced to Plaintiffs" (*id.*), an assertion that Defendants' counsel expressly declined to confirm. In a response submitted on June 29, 2016, Plaintiffs asserted that, having reviewed all of the documents contained in the bankers' boxes for several hours, the documents produced were mostly irrelevant and/or unresponsive and that Defendants failed to produce most of the documents required under the April 15 Order, including: (1) most of the class members' time records between September 5, 2006 and February 26, 2011; (2) most of the class members' payroll records from July 29, 2009 to December 31, 2010; (3) most of the class-members' year-end payroll reports for 2006 to 2015 and year-to-date payroll reports for 2016;

(4) the identities and dates of employment of all Maître D's; (5) year-end payroll reports for 2006 to 2015 for the Maître D's; (6) several outstanding Opt-In Plaintiffs' payroll records; and (7) a large number of tip sheets, primarily from Les Halles Park Avenue during the period between September 5, 2006 through May 25, 2008. (Doc. No. 226 at 2–3.)

On June 29, 2016, the Court ordered Defendants and their attorneys to show cause why they should not be sanctioned for failing to comply with the Court's prior orders. (Doc. No. 227.) In their response, dated July 1, 2016, Defendants tellingly did not argue that they had in fact complied with the Court's directives. (Doc. No. 231.) Rather, most of their submission referenced confidential client communications, which were submitted to the Court *in camera*, relevant to Defendants' attorneys' fruitless efforts to obtain compliance with the Court's orders,. In the publicly filed portion of their submission, Defendants' attorneys admitted that, "[a]gainst all of our guidance, assistance, and advice, Defendants did not comply with [the April 15] Order." (*Id.* at 1.)

On July 6, 2016, Defendants' counsel wrote the Court to indicate that their clients, who had earlier represented that they had produced "all responsive documents in their possession" (Doc. No. 225), had in fact "located twelve (12) additional boxes that contain material responsive to the Court's [April 15] order." (Doc. No. 234.) That same date, the Court ordered Defendants to produce the additional twelve boxes to Plaintiffs and to submit a letter apprising the Court of their contents no later than July 8, 2016. (Doc. No. 235.) The Court also directed Plaintiffs to submit a response no later than July 11, 2016. (*Id.*)

On July 8, 2016, Defendants submitted a letter to the Court indicating that the boxes contained additional payroll records. (Doc. No. 236.) Defendants made no claim to have fully complied with the Court's April 15 Order or any of the Court's subsequent discovery orders. (*See id.*) That same date, Plaintiffs submitted a response setting forth numerous categories of

documents that Defendants had still failed to produce despite the April 15 Order, including: (1) class members' time records from September 5, 2006 to February 26, 2011, (2) certain of the class members' payroll records from July 29, 2009 to December 31, 2010, (3) class members' year-end payroll reports for 2006 to 2015 for most of the years at issue and year-to-date payroll reports for 2016, (4) identities and dates of employment of all Maître D's, (5) year-end payroll reports for the Maître D's for 2006 to 2015, (6) certain of the outstanding payroll records for the Opt-In Plaintiffs, and (7) unredacted tip sheets from September 5, 2006 to the present. (Doc. No. 237.)

On July 14, 2016, the Court held Defendants in civil contempt for their failure to comply with the April 15 Order and subsequent discovery orders. (July 14 Order 6.) The Court ordered that Defendants pay a fine of $500 per day for each day of continued noncompliance through July 28, 2016. (*Id.* at 9.) While the Court declined to issue a default judgment in the hope that the contempt sanctions would compel compliance with the Court's April 15 Order, the Court warned Defendants that its "patience with [their] recalcitrance [was] running low" and that in the event Defendants' noncompliance persists, "it is highly likely the Court will grant Plaintiffs a default judgment." (*Id.* at 12.) Finally, the Court invited briefing from the parties on: (1) Plaintiffs' contemplated renewed motion for reconsideration of the Summary Judgment Opinion dismissing Plaintiffs' NYLL claims against LaJaunie and (2) Plaintiffs' application for reasonable attorney's fees and costs incurred in connection with the discovery dispute. (*Id.* at 13–14.)

After issuing the July 14 Order, the Court received several submissions from the parties that prompted the Court to schedule the August 2 Conference. First, on July 20, 2016, the Court received a letter from Defendants' attorneys requesting once again that they be relieved from this action and enclosing a lengthy letter from LaJaunie. (Doc. No. 248 ("LaJaunie Letter") at 9–14;

5

*see also* Doc. No. 239.) The letter from LaJaunie contained numerous allegations against his attorneys, whom he maintained were "not representing [him] and the co-defendants to the full extent of their obligations." (LaJaunie Letter 9.) Among other things, LaJaunie alleged that his attorneys intentionally failed to defeat Plaintiffs' motion for class certification in order to incur more fees, neglected to rectify "willfully false information" provided to the Court by Plaintiffs' attorneys, and attributed his failure to comply with the Court's prior discovery orders to his attorneys' failure to adequately convey the Court's directives to him. (*Id.* at 9–12.) LaJaunie also averred that Defendants had produced all responsive documents in their possession and asked that the Court reverse the July 14 Order of sanctions against him. (*Id.* at 9–10.) Although Defendants' attorneys moved to have their letter and LaJaunie's letter submitted under seal, the Court ordered on July 26, 2016 that nearly all of the letters be publicly docketed and that only references to attorney-client-privileged conversations be redacted. (Doc. No. 248 at 1–5.) On July 21, 2016, the Court received Defendants' letter in opposition to Plaintiffs' contemplated motion for reconsideration of the Summary Judgment Opinion dismissing the NYLL claims against LaJaunie (Doc. No. 242 ("Def. Recon.")), and on July 28, 2016, the Court received Plaintiffs' letter in support of their contemplated motion, as well as Plaintiffs' proposed supplemental Local Civil Rule 56.1 Statement and relevant exhibits (Doc. Nos. 249 ("Pl. Recon."), 250 ("Proposed 56.1 Stmt."), 251). On July 21, 2016, Plaintiffs filed their application for reasonable attorney's fees and costs incurred in connection with the discovery dispute (Doc. No. 241), and on July 28, 2016 Defendants filed their response to Plaintiffs' motion (Doc. No. 243).

Notwithstanding LaJaunie's representation in his letter to the Court that Defendants have now fully or substantially complied with the Court's discovery orders, Plaintiffs submitted a letter, dated July 29, 2016, indicating that they have not received any additional discovery from

Defendants since the issuance of the July 14 Order. (Doc. No. 255 at 2.) In a response, dated August 1, 2016, Defendants claimed that they had substantially complied with *most* of the Court's discovery orders, but admitted that: (1) they are awaiting records from ADP "in approximately *five weeks*" with respect to year-end payroll reports for class members and Maître D's, and (2) it will take "approximately *two months*" to produce the identities and dates of employment for all Maître D's employed from September 5, 2012 to the present. (Doc. No. 257 at 2 (emphasis added).)

At the August 2 Conference, LaJaunie again complained about his attorneys' conduct. Most notably, LaJaunie averred that he had provided his lawyers with nearly all of the discovery ordered by the Court in the April 15 Order, that his lawyers failed to produce such discovery to Plaintiffs, and that his lawyers had lied to the Court regarding Defendants' compliance with the April 15 Order and other discovery orders. (Transcript of Conference, dated August 2, 2016 ("Aug. 2 Tr."), at 23:2–24:23, 30:23–31:2, 33:16–34:6.) The Court indicated on the record that it would grant Defendants' counsel's renewed motion to withdraw as counsel of record, as well as Plaintiffs' contemplated motion for reconsideration and application for attorney's fees, but the Court reserved on whether to order a default judgment. (*Id.* at 41:3–5.)[1]

## II. DISCUSSION

### A. Contempt Sanctions

As set forth in the July 14 Order, the Court levied contempt sanctions on Defendants for their continuing violations of the Court's discovery orders. (July 14 Order 9.) Specifically, the Court ordered Defendants to pay $500 per day between July 14, 2016 and July 28, 2016 for each continued day of noncompliance with the Court's orders, which were clear and unambiguous.

---

[1] Because, for the reasons set forth below, the Court enters a default judgment, Plaintiffs may now recover reasonable attorney's fees and costs as of right under the FLSA and NYLL. *See, e.g.*, *Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013). Accordingly, rather than award Plaintiffs attorney's fees on a limited basis at this stage, the Court will award attorney's fees to Plaintiffs in a single proceeding at the close of the case.

(July 14 Order 9.)  Since Defendants have, by their own admission, still not fully complied with the Court's April 15 Order and subsequent orders regarding discovery, which was originally to be completed by June 16, 2016 (Doc. No. 257 at 2; *see also* April 15 Order 2), the Court orders Defendants to pay a $7,000 sanction for their contempt.  The check shall be made payable to the "Clerk of the Court of the Southern District of New York" and shall be sent, along with a copy of this Order, to the following address:

> United States District Court for the Southern District of New York
> Daniel Patrick Moynihan U.S. Courthouse
> Finance Department
> 500 Pearl Street
> New York, New York 10007

### B.  Renewed Motion for Reconsideration

The Court next turns to Plaintiffs' contemplated renewed motion for reconsideration of the Court's Summary Judgment Opinion, in which Plaintiffs' NYLL claims against LaJaunie were dismissed for failure to present evidence in Plaintiffs' Local Civil Rule 56.1 statement.  Because the order granting summary judgment to LaJaunie was a non-final order, *see Johnson v. Commodore Cruise Lines, Ltd.*, 897 F. Supp. 740, 746 n.7 (S.D.N.Y. 1995), Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3 authorize reconsideration under certain circumstances, including where "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *In re Fannie Mae 2008 ERISA Litig.*, No. 09-cv-1350 (PAC), 2014 WL 1577769, at *3 (S.D.N.Y. Apr. 21, 2014) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 167 (2d Cir. 2003)).  Furthermore, district courts possess "wide discretion" in imposing "just orders" pursuant to Rule 37(b)(2)(A) in the face of a party's failure to comply with a court's discovery orders.  *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010).

Here, the interests of justice require reconsideration of the Court's decision to dismiss Plaintiffs' NYLL claims against LaJaunie. At the June 21 Conference, the Court expressed concern that LaJaunie, who announced that he was closing the Park Avenue Restaurant within days of the Court's order dismissing the NYLL claims against him, had embarked on a "strategy" to defy the Court's orders and to stop paying his attorneys in order to "buy time in which to render" Defendants La Boucherie Inc., 15 John Corp., LHLM Group, Corp., and XYZ Corp. (the "Corporate Defendants") "judgment-proof." (June 21 Tr. 19:5–12.) Notwithstanding LaJaunie's lengthy letter to the Court attempting to excuse Defendants' noncompliance, Defendants have failed to offer any adequate explanation for their continued defiance of the Court's orders. In light of Defendants' admittedly deteriorating financial condition, the Court has serious concerns that Defendants' serial evasiveness and outright defiance are part of a strategy designed to "prevent Plaintiffs from preparing for trial," since the missing class discovery is "critical to determining damages" at the trial currently scheduled for September 12, 2016. (Doc. No. 226 at 4.) Indeed, Defendants' insistence that they are two months away from producing some of the most important discovery compelled by the April 15 Order – the identities and dates of employment of the Maître D's (Doc. No. 257 at 2) – only serves to underscore the Court's concerns. And while Defendants note, correctly, that the Court rejected similar arguments regarding Defendants' deteriorating financial condition made in Plaintiffs' first motion for reconsideration as "speculative" (Def. Recon. 2 (quoting Doc. No. 218 at 5)), Defendants' subsequent conduct has illustrated that Plaintiffs' concerns are warranted.

Plaintiffs have also pointed to a substantial amount of evidence that their lawyers failed to introduce at summary judgment that would warrant a finding that there is a genuine dispute of material fact as to LaJaunie's liability as an employer under the NYLL. In determining whether a fact is genuinely disputed for the purpose of a Rule 56 motion, a court "is not to weigh the

9

evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Under the NYLL, an "employer" is "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (quoting NYLL §§ 190(3), 651(6)). In analyzing whether an individual is an "employer" under the NYLL, courts apply an "economic reality" test akin to the "economic reality" inquiry under the FLSA. *Michalek v. Amplify Sports & Entm't LLC*, No. 11-cv-508 (PGG), 2012 WL 2357414, at *3 (S.D.N.Y. June 20, 2012); *accord Flannigan v. Vulcan Power Grp., LLC*, -- F. App'x --, No. 14-4444, 2016 WL 963935, at *3 (2d Cir. Mar. 15, 2016). Under the "economic reality" test, courts consider whether the alleged employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Michalek*, 2012 WL 2357414, at *3 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

With respect to the first factor, Plaintiffs point to proof that LaJaunie possessed the power to hire, fire, and promote employees at the Restaurants. (Proposed 56.1 Stmt ¶¶ 3–7; *see also* Doc. No. 251-3 at 7:5–15, 14:19–21.) While Plaintiffs' evidence centers mostly on LaJaunie's involvement in hiring and firing Plaintiffs' supervisors, as opposed to members of the class themselves (*see* Proposed 56.1 Stmt. ¶¶ 2, 4 (citing Doc. No. 251-3 at 3:4-7, 7:13–15, 14:19–21)), this evidence nonetheless supports a finding of employer liability for LaJaunie, *see Herman*, 172 F.3d at 140 ("Although this hiring involved mainly managerial staff, the fact that he hired individuals who were in charge of the [plaintiffs] is a strong indication of control.").

Turning to the second factor, Plaintiffs also point to proof that LaJaunie exercised control

over Plaintiffs' conditions of employment by issuing directives regarding the Restaurants' "cleanliness, equipment, music, lighting, decor, menu, and service," as well as employees' uniforms. (Proposed 56.1 Stmt. ¶¶ 9, 12, 21–23; *see also* Doc. No. 251-4 at 2–3, 8–9, 11–14, 21.) This evidence, while not dispositive, also weighs in favor of finding that LaJaunie acted as Plaintiffs' employer. *See Jin Dong Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 257 n.9 (E.D.N.Y. 2015) ("[D]irecting employees as to how to do their job is one of many relevant factors that may, when viewed in the totality of the circumstances, be relevant to determining whether an individual is or is not an employer.").

With respect to the third factor – LaJaunie's control over Plaintiffs' rate and method of payment – Plaintiffs' evidence is somewhat more limited. However, they do point to some instances in which LaJaunie exercised discretion over employees' wages, including when employees could not go to work due to illness. (Proposed 56.1 Stmt. ¶ 20; *see also* Doc. No. 251-2 at 13:20–14:15.) In addition, Plaintiffs point to at least some evidence of LaJaunie's financial control over Defendants, including the fact that he received weekly sales reports and made significant budgetary decisions, including over payroll. (Proposed 56.1 Stmt. ¶¶ 10–11; *see also* Doc Nos. 251-1, 251-2 at 2:14–25, 251-3 at 4:16–25); *see Flannigan*, 2016 WL 963935, at *4 (affirming district court's finding that the economic reality test had been satisfied where, among other things, defendant "controlled the purse strings"). Thus, this factor favors a finding that LaJaunie was Plaintiffs' employer, even if only slightly.

Turning to the fourth factor, maintenance of employment records, Plaintiffs admit that there is no evidence that LaJaunie maintained employment records. (Pl. Recon. 10.) Even so, this factor is "not dispositive" in assessing LaJaunie's liability. *Herman*, 172 F.3d at 140. Rather, as the Second Circuit has underscored, "the economic reality test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry v. Catsimatidis*, 722 F.3d 99,

106 (2d Cir. 2013) (internal quotation marks omitted). Viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in Plaintiffs' favor, *see Weyant*, 101 F.3d at 854, there are clearly genuine disputes of material fact regarding the degree of control LaJaunie exercised over Plaintiffs.

In opposing Plaintiff's reconsidertation motion, Defendants rely heavily on *dicta* in a footnote of an unpublished district court opinion for the proposition that "reconsideration to correct a 'manifest injustice'" is appropriate only if a court concludes "that its prior decision was 'dead wrong'" on the merits. (Def. Recon. 1–2 (quoting *Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, No. 02-cv-3143 (RWS), 2007 WL 4563485, at *1 n.1 (S.D.N.Y. Dec. 18, 2007)).) Even if that standard were controlling on this Court – which it is not – that case is also clearly distinguishable from this one. First, the Court's authority to reconsider the Summary Judgment Opinion in this case is pursuant, in part, to the Court's "wide discretion" to remedy noncompliance with discovery orders pursuant to Rule 37(b)(2)(A), which was not at issue in *Crash at Belle Harbor*. *See S. New England Tel. Co.*, 624 F.3d at 143–44 (recognizing that district courts possess "wide discretion" to impose "just orders" pursuant to Rule 37). Second, the summary judgment opinion at issue in *Crash at Belle Harbor* involved dismissal of *all claims* brought by certain individual plaintiffs. Here, by contrast, Plaintiffs' FLSA claims against LaJaunie are still part of this case, since Defendants did not move for summary judgment to dismiss them. (*See* S.J. Mem. at 14–17.) Thus, Plaintiffs' FLSA claims require assessment of the same evidence relevant to LaJaunie's employer status as the NYLL claims (albeit over a shorter time period because of the FLSA's shorter statute of limitations). Accordingly, unlike in *Crash at Belle Harbor*, it would not undermine judicial economy and efficiency to grant reconsideration under these circumstances. *Cf. Frank v. Reassure Life Ins. Co.*, No. 12-cv-2253 (KBF), 2013 WL 541426, at *1 (S.D.N.Y. Feb. 11, 2013) (noting that "[t]he standard for

granting reconsideration is strict and premised upon principles of judicial efficiency, preservation of resources, and finality").

In sum, reconsideration of the Court's Summary Judgment Opinion is warranted, pursuant to Rules 37(b)(2)(A) and 54(b), to prevent manifest injustice because of what appear to be Defendants' attempts to render the Corporate Defendants judgment-proof. Furthermore, as the evidence set forth in Plaintiffs' Proposed Rule 56.1 Statement makes clear, there are genuine disputes of material fact regarding LaJaunie's employer status. Accordingly, the Court deems Plaintiffs' renewed motion for reconsideration made, grants the motion, and reinstates the claims against LaJaunie under the NYLL.

### C. Defendants' Renewed Application to Withdraw

Next, the Court turns to Defendants' attorneys' renewed motion to withdraw. (Doc. No. 248.) Pursuant to Local Civil Rule 1.4, "[a]n attorney who has appeared as attorney of record" seeking to withdraw as counsel "may be relieved or displaced only by order of the Court" and must make "a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case." This rule affords the district court "considerable discretion in deciding a motion for withdrawal of counsel." *SEC v. Pentagon Capital Mgt. PLC*, No. 08-cv-3324 (RWS), 2013 WL 5815374, at *4 (S.D.N.Y. Oct. 29, 2013). In deciding the motion, the Court considers "[1] the reasons for withdrawal and [2] the impact of the withdrawal on the timing of the proceeding." *Battino v. Cornelia Fifth Ave., LLC*, No. 09-cv-4113 (LGS), 2013 WL 4779635, at *1 (S.D.N.Y. June 26, 2013) (quoting *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08-cv-6469 (DAB) (JCF), 2011 WL 672245, at *1 (S.D.N.Y. Feb. 17, 2011)).

Here, in light of Defendants' attorneys' representation that Defendants owe them more than $100,000 for work undertaken in this case, Defendants' attorneys have demonstrated a satisfactory reason to withdraw. (Doc. No. 220 at 2); *see also United States v. Up to $6,100,000*

13

*on Deposit in Account No. 15.5876 at Bank Julius Baer Co. Ltd (Guernsey Branch)*, No. 07-cv-4430 (RJS), 2009 WL 1809992, at *5 (S.D.N.Y. June 24, 2009) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal of counsel under Local Civil Rule 1.4." (internal quotation marks omitted)).

Moreover, Defendants' attorneys' withdrawal is further justified by the complete breakdown in their relationship with their clients. As previously noted, LaJaunie has alleged that his attorneys "are not representing [him] and the co-defendants to the full extent of their obligations," that his attorneys intentionally failed to defeat Plaintiffs' motion for class certification in order to obtain greater fees in this case, and that his lawyers lied to the Court regarding Defendants' compliance with the Court's discovery orders. (LaJaunie Letter 9, 12; Aug 2 Tr. 23:2–24:23, 30:23–31:2, 33:16–34:6.) Courts have routinely granted motions to withdraw where, as here, "a severe breakdown of trust has occurred between" parties and their lawyers. *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01-cv-2950 (DAB), 2005 WL 1963945, at *2 (S.D.N.Y. Aug. 15, 2005); *see also Shea v. F.C. Fin. Servs., Inc.*, No. 92-cv-5756 (JFK), 1994 WL 649176, at *1 (S.D.N.Y. Nov. 16, 1994) ("The existence of the acrimony [between attorney and client] by itself is enough to convince the [c]ourt that [attorneys] are no longer in a position to represent defendant's best interests in this action."); *McGuire v. Wilson*, 735 F. Supp. 83, 85 (S.D.N.Y. 1990) (denying client's motion for reconsideration of grant of attorney's motion to withdraw where record included "vituperative letters documenting the hostility that exists between [client] and counsel" and party's submissions in support of reconsideration were "replete with accusations of bad faith and dishonesty" and evinced the "lack of trust between counsel and client"). Accordingly, the Court finds that Defendants' attorneys have clearly shown satisfactory reasons to withdraw.

Turning to the next factor, the Court finds that granting Defendants' motion to withdraw

14

will have a minimal impact on the timing of this proceeding, since, for the reasons set forth below, the Court intends to grant a default judgment in Plaintiffs' favor. Furthermore, Defendants' attorneys are not seeking a charging lien. (*See* Doc. No. 220 at 2.) Accordingly, the Court grants Defendants' attorneys' motion to withdraw.

### D.  Default Judgment

Finally, the Court turns to the propriety of a default judgment against Defendants on Plaintiffs' remaining claims. Notwithstanding the strong preference in the Second Circuit for adjudication of cases on the merits, *see Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001), "'[i]f a party . . . fails to obey an order to provide or permit discovery,' the district court may impose sanctions, including 'rendering a default judgment against the disobedient party,'" *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450 (2d Cir. 2013) (quoting Fed. R. Civ. P. 37(b)(2)(A)(vi)). A default judgment, while a "severe sanction[]," is nonetheless "appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party." *Id.* (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)). The Second Circuit has identified the following factors to guide a district court's exercise of discretion in deciding whether to enter a default judgment: "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned." *Id.* (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).

Here, all four factors favor issuance of a default judgment. First, Defendants' defiance of the April 15 Order has been willful and deliberate, as evidenced by their repeated failures to comply even after admitting their noncompliance (*see, e.g.*, Doc. No. 257 at 2), and even after the Court's repeated warnings to them that their failure to comply with the April 15 Order would

result in sanctions, *see, e.g.*, *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x 607, 609 (2d Cir. 2014) (affirming imposition of default judgment after party "blatantly disregarded multiple warnings and orders"); *Robertson v. Dowbenko*, 443 F. App'x 659, 661 (2d Cir. 2011) (finding defendant's noncompliance with court orders "willful and deliberate" in light of his "repeated failures to comply even after . . . acknowledg[ing] his discovery obligations" at court conference). Indeed, LaJaunie misrepresented to the Court on July 20, 2016 that he had "fully or substantially fulfilled" his obligations under the Court's April 15 Order and the Court's subsequent discovery orders (LaJaunie Letter 10), when in fact his own lawyers have conceded that there are still several egregious gaps in their document production (Doc. No. 257). In fact, Defendants indicated that they are *two months* from producing the identities and dates of employment for Maître D's, which is critically important discovery to Plaintiffs, whose suit is largely premised on the unlawful misappropriation of gratuities by the Maître D's. (*Id.* at 2.) The Court thus finds that LaJaunie's claim that Defendants "substantially fulfilled" their discovery obligations, like his false representation to his attorneys on June 28, 2016 that he fully complied with the April 15 Order, reflects his bad faith. *See Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 225 (S.D.N.Y. 2003) (finding that false representations of compliance with discovery orders evinces bad faith).

Similarly, the Court finds LaJaunie's eleventh-hour attempt at the August 2 Conference to shift blame for Defendants' noncompliance to his lawyers to be not credible and to also illustrate bad faith. In addition, even if the Court were to credit LaJaunie's allegations against his attorneys – which it does not – it is hornbook law that any failures by Defendants' lawyers to produce discovery compelled by the Court are attributable to LaJaunie and his co-defendants. *See SEC v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of

16

his freely selected agent would be wholly inconsistent with our system of representative litigation." (internal quotation marks omitted)). Indeed, the proper remedy for Defendants' lawyers' alleged misconduct is not to relieve Defendants from the Court's sanctions – or to make Plaintiffs endure still further delay – but rather for Defendants to "raise any objections to their attorney's performance in a separate malpractice proceeding." *SEC v. Gerasimowicz*, 9 F. Supp. 3d 378, 382 (S.D.N.Y. 2014).

Second, the Court concludes that lesser sanctions would not be effective to compel Defendants' compliance with the Court's orders. *See Birnbaum*, 722 F.3d at 450. As the Second Circuit has instructed, the Court is "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *S. New Eng. Tel. Co.*, 624 F.3d at 148. Nevertheless, in its July 14 Order, the Court expressed hope that the imposition of lesser, monetary contempt sanctions would compel Defendants' compliance with their discovery obligations, since Defendants had begun to comply, albeit belatedly and in a scattershot manner, through their productions on June 28, 2016, July 1, 2016, and July 8, 2016. (July 14 Order 11–12.) Unfortunately, as set forth above, Defendants have not complied with the Court's orders and now admit to being two months away from full compliance (Doc. No. 257 at 2), which would be long past the September 12 date when trial is scheduled to begin in this matter. In other words, despite the Court's prior imposition of sanctions, Defendants have elected to prolong this discovery dispute for at least two more months.

The third and fourth factors also clearly favor entry of a default judgment. Defendants' noncompliance has persisted since at least the April 15 Order. *See Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 265–66 (S.D.N.Y. 2015) (noting that "durations of time as brief as a few months have been held to weigh in favor of dispositive sanctions" (collecting cases)). Furthermore, the Court "was unmistakably clear as to the scope

17

of [D]efendants' production obligations" in the April 15 Order and its subsequent orders, *S. New Eng. Tel. Co.*, 624 F.3d at 148, and as already discussed, the Court warned Defendants at the June 21 Conference and in orders dated June 21, June 29, and July 14 that failure to comply might result in sanctions, including entry of a default judgment (July 14 Order 11; Doc. Nos. 224, 227; June 21 Tr. 17:10–25, 18:6–14, 19:17–20:2, 26:19–23, 27:15–24).

Having defied the Court for months, to the point where the September 12 trial is now a virtual impossibility (Aug. 2 Tr. 41:6–20), Defendants have left the Court with little choice but to issue a default judgment against them on all of Plaintiffs' remaining claims in this action. To do otherwise would be to reward Defendants' intransigence, and to run the risk that Plaintiffs will be left with a toothless future judgment. That is something the Court is not willing to do. Accordingly, for the reasons set forth above, the Court concludes that such a default judgment is warranted against Defendants.[2]

### III. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT: (1) Defendants shall pay a contempt sanction totaling $7,000 pursuant to the July 14 Order (*see* July 14 Order 9); (2) Plaintiffs' contemplated motion for reconsideration of the Court's Summary Judgment Opinion dismissing claims against LaJaunie under the NYLL (*see* Doc. No. 249) is deemed made and is GRANTED; (3) Defendants' attorneys' renewed motion to withdraw as counsel of record (*see* Doc. No. 248) is GRANTED; and (4) a default judgment is ORDERED, ADJUDGED, and DECREED against Defendants on all of Plaintiffs' remaining claims.

---

[2] A default judgment against the Corporate Defendants is also warranted because of their failure to obtain new counsel in this matter by August 9, 2016. At the August 2 Conference, the Court warned LaJaunie that the Corporate Defendants' failure to obtain counsel within one week would result in a default judgment against the Corporate Defendants. (Aug. 2 Tr. 8:8–14); *see Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) ("[I]t is well established that a layperson may not represent a corporation."); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 767 F. Supp. 2d 480, 486 (S.D.N.Y. 2011) (finding default judgment warranted based on corporation's failure to retain counsel by court-imposed deadline). Because no attorney has appeared on the Corporate Defendants' behalf, a default judgment is entered against them on this independent basis.

IT IS FURTHER ORDERED that this action is referred to Magistrate Judge Sarah Netburn for an inquest on damages. Specifically, Judge Netburn is respectfully directed to award damages for Plaintiffs' claim for misappropriation of gratuities under NYLL § 196-d in conformity with the Court's Summary Judgment Opinion, in which the Court concluded that Plaintiffs may recover "unlawfully retained tips" for violations of Section 196-d but are not "entitled to recover tip-credit damages under NYLL on this basis." (*See* S.J. Op. 8–12.)

IT IS FURTHER ORDERED THAT Plaintiffs shall serve a copy of this Order on Defendants no later than August 11, 2016 and shall file an affidavit on ECF indicating that such service was effectuated.

SO ORDERED.

Dated:   August 10, 2016
         New York, New York

                                        _____
                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/10/16