RECEIVED
SDNY PRO SE OFFICE
2016 AUG 12 PM 12:51
S.D. OF N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ETHAN MURPHY et al.
Write the full name of each plaintiff or petitioner.

Case No. 13 cv 6503 (RJS)

-against-

PHILIP LAJAUNIE et al.

NOTICE OF MOTION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8-12-16

Write the full name of each defendant or respondent.

PLEASE TAKE NOTICE that  defendant  PHILIP LAJAUNIE
plaintiff or defendant    name of party who is making the motion

requests that the Court:
RECONSIDERATION, STAY
USDC SDNY DOC. NO. 260
DEFENDANT LAJAUNIE IMPLORES THE COURT
TO RECONSIDER ITS ORDER (DOC 260 FILED 08/10/16) AND
STAY THE PROCEEDINGS

Briefly describe what you want the court to do. You should also include the Federal Rule(s) of Civil Procedure or the statute under which you are making the motion, if you know.

In support of this motion, I submit the following documents (check all that apply):

☐ a memorandum of law
☑ my own declaration, affirmation, or affidavit
☑ the following additional documents:

08/12/16
Dated

Signature

PHILIP LAJAUNIE
Name

Prison Identification # (if incarcerated)

411 PARK AVE SOUTH          Apt #3D   NEW YORK   NY   10016
Address                     City      State       Zip Code

(917) 771-0727                        PLAJAUNIE@OUTLOOK.com
Telephone Number (if available)       E-mail Address (if available)

SDNY Rev: 5/24/2016

*Attachment to Notice of Motion*

**US District Court**

**Southern District of New York**

**Notice of Motion**

**Motion for reconsideration**

**Ethan Murphy v Lajaunie, et al.**

**13-cv-6503**

**Court Order**

**Document 260, filed 08/10/16**

I, Philip Lajaunie, declare under penalty of perjury that the following facts are true and correct:

Defendants have not been in continued noncompliance. Defendants have produced a substantial amount of the discovery requests that is satisfying the Discovery Documents Request by normal standards. Defendants have the proof of these deliveries, except for the 10 boxes of documents that were not indexed by Defendants' lawyers, although they did contain appropriate materials. Plaintiffs' lawyers have misrepresented the content of these boxes to the Court.

Therefore, Defendants implore the Court to reconsider the following Orders:

  (A) Imposing $7,000 for Contempt Sanctions
  (B) Granting Plaintiffs' Motion to make Lajaunie liable under NYLL
  (C) Defendants' counsel's Motion to Withdraw
  (D) Default Judgment

I. **Background**
   Lajaunie is not an employer as characterized by NYLL. Lajaunie has not been involved in restaurant management since 1989. He has a specialty of conceiving, negotiating, opening restaurants (20 in 20 years), in several states and countries. It is impossible to manage restaurants if not present. Moreover, Lajaunie has been involved in different series of non-restaurant ventures that has taken his full attention since 2004. His interests and capacities are in venture incubation and marketing.
   Lajaunie would like to note that his lack of involvement and knowledge, as well as his sudden lack of administrative staff, explains why certain discovery items have taken longer than expected, albeit have been furnished.
   The Court notes that "Defendants did not move for summary judgment to dismiss those claims". Defendants themselves could not know what needs to be done, how, and when. This is another indication that Defendants' *lawyers* have been

grossly negligent, at best. This fact alone should create a doubt in the Court's evaluation of Defendants' lawyers' performance in representing Defendants. Defendants can demonstrate that all documents have been furnished to their lawyers up to November 2014. The documents for the remaining period have been furnished progressively until July 2016.
The Court has suggested that Defendants could sue their lawyers for malpractice; but why would Defendants be penalized by a Default Judgment? Moreover, the very Default Judgment prevents any economic means to sustain claims for malpractice. A Default Judgment, especially one of that magnitude, only guarantees Defendants total and immediate ruin; it is not an appropriate remedy to a perceived non-compliance attributed to Defendants' will.

In respect to the Defendants' lawyers' Motion to Withdraw, Defendants would like to note that the law firm was imposed by the insurance company, with no negotiation possible. It is Defendants' belief that the firm overbilled, and the firm refused to provide their billing until one business day before the June 21 Hearing. Moreover, it is the insurance company that refuses to pay the lawyers, not Defendants.

Defendants have the following complaints about their lawyers:

- i- Overbilling
- ii- Did not transmit discovery materials as furnished by Defendants
- iii- Refused to follow Defendants directions and approvals when writing to the Court, making unauthorized and false statements
- iv- Let Defendants exposed to sanctions and judgments by not furnishing discovery documents in their possession
- v- Did not move to dismiss certain claims, as the Court points out in its Order
- vi- Misrepresented to the Court the state of discovery
- vii- Actively implied that Defendants were not complying to the Court's Orders

Defendants have electronic records of most of the documents produced, except for the 22 boxes of paper documents that were characterized as insignificant by Plaintiffs' lawyers, although they corresponded exactly to the production request. Defendants also have supporting correspondence demonstrating proper production to their lawyers.

In respect to the June 29, 2016 hearing and Order to Show Cause (Doc No.227 and 231), Defendants' *lawyers* misguided the Court by not arguing that Defendants had delivered ten boxes of documents. Unfortunately, Lajaunie was out of the country at the time, and was relying on his lawyers to make proper representations. Worse, Defendants' *lawyers* misguided the Court with self-serving statements, accusing Defendants not to provide documents, when –just as a massive example- they in fact had all documents until November 2014, and most of the following period's documents.

Subsequently, such as July 8 (Doc. No.236) Defendants' *Lawyers* "made no claim to have fully complied with the Court's April 15 Order or any of the Court's subsequent discovery orders."

After Defendants were held in contempt on July 14, 2016, Lajaunie realized how bad his representation was, and after fighting with his lawyers (who strongly advised and acted against sending the letter), sent a letter to the Court (07/20/16 Doc.No.248).

It is to be noted that in his letter, contrary to the Court's statement "(Lajaunie) attributed his failure to comply with the Court's prior discovery orders to his attorneys' failure to adequately convey the Court's directives to him", Lajaunie argues that his lawyers did not transmit the documents to the Plaintiff's lawyers.

Plaintiffs' lawyers' assertions in Doc.No.255 are not factual, as they continue to deny the value of the documents produced in the "22 boxes".

In respect to Doc.No.255 and 257, it is again Defendants' *lawyers*' correspondence that is considered, not Defendants'. Defendants have all data; the imposed formatting is what has taken time, because of the lack of administrative assistance. When these proceedings started, Defendants had the economic resources to hire four extra staff to provide all documents. After all documents were provided, most of the temporary staff was let go. When the main restaurant closed abruptly, and the offices had to move, Defendants were left with only one administrative staff.

To this date, all requests have been substantially produced.

## II. Discussion

When Defendants have complained about their lawyers' misrepresentation, the Court (approximately) stated that "It was not some kind of social legal worker, and that if Defendants have issues with their lawyers, Defendants could file an action for malpractice" (Lajaunie's best recollection at this stage, and in a state of high tension. I apologize if the Court's statement greatly departs from the foregoing). The reality, however, is that the Court has consistently relied on Defendants' *lawyers*' statements to issue its now devastating Orders. Because of it, Defendants truly believe that they have been deprived of their just Due Process, and therefore of their Constitutional Rights. Defendants are exposed to sudden ruin (after losing all revenues and savings in the last three years) because of their lawyers' actions, and the Court not giving a fair chance to Lajaunie to prove his assertions.

This represents an extraordinary error and manifest injustice. Moreover, as soon as Defendants will be allowed to correspond freely with the Plaintiffs' lawyers –and have all correspondence and documents supervised by the Court-, *new evidence* to Defendants' compliance will have been furnished.

Lajaunie will demonstrate that there was no "strategy" and "intentions" leading to the current perceived non-compliance, and all penalties should be mitigated, and stayed.

### A. Contempt Sanctions

Defendants implore the Court to stay the Sanctions until Defendants can prove they had complied with the Court's Orders. Lajaunie had all documents on flash drives at the August 2 Hearing, and can furnish them to the Court at any time.

### B. Renewed Motion for Consideration

Lajaunie implores the Court to revise its Order to its initial two findings, as Lajaunie is not an employer as defined under NYLL, and should not be found liable because of a perceived lack of will to comply with Court Orders.

As for the Court's interpretations in respect to the restaurant closing and the timing of it, Defendants are ready to produce the attorney who was negotiating with the landlord. He will testify about how hard and irrational these negotiations were, and that the break off had nothing to do with the events in this action, except for Goldman's sending the Landlord/Tenant Court Order (which was a negotiating arrangement) to employees, triggering a walk-out. Under no angle of speculation, could Defendants be suspected of voluntarily closing its restaurant in connection with the actions before this Court.

Lajaunie's 07/20/16 letter (Doc.No.248) was not intended to be an excuse for non-compliance –as the Court speculates- but was a letter to explain that _Defendants had complied, and why it appeared they had not_.

In brief, the appearances against Defendants and Lajaunie in particular have been misinterpreted.

_Moreover, since Defendants' lawyers have not moved to dismiss the FLSA claims against Lajaunie, Lajaunie moves to dismiss those claims._

### C. Defendants' Attorneys Motion to Withdraw

Defendants implore the Court to reverse Its Decision, as Defendants are deprived of all documents that have been given to their attorneys, and cannot have access to them because of the attorneys' claims for legal fees.

Defendants' attorneys should review and rectify their excessive billing, and doing so will provide pre-paid legal time to review Defendants claims and deliver the documents that they are holding. This would instantly repair the Defendants' relationship with their attorneys. In turn, Defendants and their lawyers would be ready for the Trial on September 12, with no further delay.

Defendants note that at the August, 2 Hearing, the Court proposed to move the Trial date to October, but that Plaintiffs' lawyers proposed December. Therefore, the Court has no grounds to conclude that a Default Judgment is warranted against Defendants for a calendar reason.

### D. Default Judgment

Defendants have not failed to produce the discovery documents; Lajaunie has not made any misrepresentation to the Court; Defendants' lawyers did, and so did Plaintiffs' lawyers. This much can be proven: Lajaunie will produce, if necessary, correspondence with Defendants' lawyers showing that Lajaunie's letter to the Court or his statements on August, 2 Conference were not a "eleventh-hour attempt to shift blame" to his lawyers, and certainly did not illustrate bad faith. There was no discovery dispute, other than the difficulties in providing discovery documents following certain formats, with no assistance to do so properly.

Lajaunie reiterates that the Trial could proceed on September 12, or that it could be displaced to December, as Plaintiffs' lawyers had suggested at the August, 2 Conference.

### III. Conclusion

In consideration of the foregoing and given the potential consequences of the current Orders, <u>Lajaunie is hereby requesting an emergency hearing to be held with all parties under sworn testimony,</u>

Being given the nature of this Motion, its underlying claims, the Orders' potential consequences, and the contemplated outcome, <u>Lajaunie hereby request that all current proceedings be stayed.</u>

> In preparation to this hearing, Lajaunie is requesting all transcripts of all hearings and conferences before the Court since inception of these proceedings, whether Lajaunie was present or not, as well as all Defendants' lawyer's correspondence to the Court.

In terms of finding new lawyers, Lajaunie has been frantically seeking new counsel. Being given the complexity of the proceedings and the summer vacations of many top lawyers, this search (although looking hopeful) will take at least another two weeks to be completed. Lajaunie's hopes is that the Court will grant his request to deny the Motion to Withdraw, until proper transition is implemented with the new legal team.

Lajaunie humbly apologizes for the length of this Motion, as being given the timeline of the judgment, and the fact that Lajaunie was not provided with the Order despite having registered with the Pro Se Office, as well as Plaintiff's lawyers forwarding the Court Oder's with a day delay, I had no time to make it shorter. Additionally, I apologize for the layman's vocabulary and lack of legal education in structuring this motion; I just followed the same structure as the Court's Order. I do thank the Court for the time it will spend reading the document.