**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

ETHAN MURPHY, et al.,

                                        Plaintiffs,

                -against-

PHILIPPE LAJAUNIE, et al.,

                                        Defendants.

-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 2/2/2018
```

13-CV-6503 (RJS)(SN)

**REPORT AND**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE RICHARD J. SULLIVAN:**

On August 10, 2016, the Honorable Richard J. Sullivan entered a default against

Defendants due to their repeated failure to comply with the Court's orders to produce documents

relevant to Plaintiffs' claims. ECF No. 260 at 18. Judge Sullivan also referred the case to my

docket to conduct an inquest and to report and recommend concerning Plaintiffs' damages. Id. at

19. Plaintiffs submitted Proposed Findings of Fact and Conclusions of Law in support of

damages and attorneys' fees on July 10, 2017. Defendant Philippe Lajaunie responded to

Plaintiffs' Proposed Findings of Fact and Conclusions of Law on November 27, 2017. I

recommend awarding Plaintiffs damages of $3,988,512.70, plus prejudgment interest with

respect to the compensatory damages awarded under New York law. I also recommend awarding

Plaintiffs attorneys' fees of $666,332.50 and costs of $20,378.09.

## BACKGROUND

Plaintiffs are former servers, runners, bussers, and bartenders who worked at Brasserie

Les Halles Park Avenue and Brasserie Les Halles John Street (collectively, the "Restaurants").

ECF No. 296-1 at 38. Lajaunie was the owner of La Boucherie Inc. and 15 John Corp., which owned and operated the Park Avenue and John Street Restaurants respectively. ECF No. 296-4 at 88–92, 100–01.

On September 4, 2012, Plaintiff Ethan Murphy filed the original complaint against Defendants in the Supreme Court of the State of New York. The complaint alleged that Defendants violated §§ 196-d and 652 of the New York Labor Law ("NYLL") by requiring putative class members to share tips with maître d's, even though the maître d's purportedly were managers and thus ineligible to participate in tip pools. ECF No. 296-1 at 40–41, 43–45. Plaintiffs filed a second amended complaint on August 12, 2013, which added Fair Labor Standards Act ("FLSA") claims for unpaid minimum wage and overtime compensation on behalf of a putative collective as well as individual overtime claims on behalf of Plaintiff Logan Scott. ECF No. 296-3 at 4–5, 10–11.

On September 16, 2013, Defendants removed this action to federal court. ECF No. 1. The Court subsequently granted Plaintiffs' motion to conditionally certify the case as a FLSA collective action. ECF No. 95. Thereafter, on May 19, 2014, Plaintiffs filed their fourth amended complaint, adding a New York spread-of-hours claim, a New York minimum-wage claim, and unpaid overtime claims under FLSA and New York law (including individual overtime claims on behalf of Plaintiff Efrain Ramirez). ECF No. 104 ¶¶ 34–35, 38–40, 42–43. Approximately 75 individuals filed consent to sue forms, thereby joining the action as opt-in Plaintiffs. ECF No. 296-1 at 2. On July 24, 2015, the Court granted Plaintiffs' motion to certify a class pursuant to Federal Rule of Civil Procedure 23. ECF No. 196.

Defendants later moved for summary judgment, and on March 22, 2016, the Court granted in part and denied in part Defendants' motion. ECF No. 208. Specifically, the Court

(1) declined to dismiss the § 196-d claim in its entirety, (2) dismissed Plaintiffs' claim for tip-credit damages under §§ 196-d and 652, (3) declined to dismiss the New York minimum wage claim, and (4) dismissed all of the NYLL claims against Lajaunie. Id. With respect to the § 196-d claim, the Court determined that there were "genuine disputes of material fact regarding the responsibilities and power of the Restaurants' maître d's." Id. at 8. Thus, the Court held that "a reasonable trier of fact could conclude that the interactions maître d's had with customers were too infrequent or that their managerial authority was too substantial for them to have been tip-eligible under Section 1960-d." Id.

Over the months that followed, the Court repeatedly ordered Defendants to produce a list of class members and various employment and payroll records relating to Plaintiffs' claims. ECF No. 260 at 2–3. Nevertheless, Defendants did not produce the list of class members until after the deadline set by the Court and failed to produce many of the relevant employment and payroll records. Id. at 3–4. On May 31, 2016, Defendants' attorneys moved to withdraw as counsel due to Defendants' failure to pay over $100,000 in legal fees. ECF No. 220. The Court denied the attorneys' motion to withdraw without prejudice. See ECF No. 260 at 2–3. But a few months later, Defendants had still failed to comply with the Court's orders to produce the relevant records. Id. at 3–7. Accordingly, on August 10, 2016, Judge Sullivan (1) reinstated the NYLL claims against Lajaunie, (2) granted Defendants' attorneys' renewed motion to withdraw as counsel, and (3) entered a default against Defendants "on all of Plaintiffs' remaining claims." Id. at 18.

## DISCUSSION

Federal Rule of Civil Procedure 55 provides that courts must follow a two-step process in entering a default judgment. First, an entry of default "formalizes a judicial recognition that a

defendant has, through its failure to defend the action, admitted liability to the plaintiff." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011); accord Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (noting that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability"). Second, the entry of default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled." Mickalis Pawn Shop, 645 F.3d at 128.

## I. Joint and Several Liability

Plaintiffs argue that liability in this case is joint and several. ECF No. 296-15 at 8. Under the single employer test, "separate corporations under common ownership and management . . . can be deemed to constitute a single enterprise." Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005). In such a circumstance, "employee[s], who [are] technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." Id. In addition, an individual can be held liable as an employer under FLSA and NYLL so long as the individual "possess[es] control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99, 102, 109 (2d Cir. 2013).

The fourth amended complaint alleges that Defendants jointly operated the Restaurants and that Lajaunie managed operations at both Restaurants. ECF No. 104 ¶¶ 8–11. Thus, Plaintiffs claim that Defendants constituted a single integrated employer, despite the fact that they were nominally distinct entities and individuals. ECF No. 296-15 at 8. Lajaunie contests this claim. He notes that he "was not a manager, was not managing, and was not even present in the

restaurants." ECF No. 318 at 1. He also asserts that "La Boucherie, Inc. and 15 John Corp. had separate management teams, had different Rules and Regulations, different systems, different suppliers, and different employees." Id.

In its August 10, 2016 Order, the Court determined that there were "genuine disputes of material fact regarding LaJaunie's employer status." ECF No. 260 at 13. But by virtue of the default, Lajaunie was deemed to have conceded to Plaintiffs' allegations that he is an employer of all class members who is liable for all damages. See Greyhound Exhibitgroup, 973 F.2d at 158. Furthermore, Defendants were deemed to have conceded that the separate entities constituted a single employer for liability purposes. See id. Accordingly, I recommend holding Defendants jointly and severally liable for all damages.

## II.    Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Id. Accordingly, "a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 121 (S.D.N.Y. 2008) (quoting Langenberg v. Sofair, No. 03-CV-8339 (KMK)(FM), 2006 WL 3518197, at *1 (S.D.N.Y. Dec. 7, 2006)). In assessing the appropriate amount of damages, a court must determine (1) "the proper rule for calculating damages on the claim" and (2) whether "the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages." Id. (quoting Langenberg, 2006 WL 3518197, at *1); accord Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

A.        **Willfulness and Bad Faith**

The fourth amended complaint asserts that Defendants willfully and intentionally violated FLSA and NYLL. ECF No. 104. These allegations have an important impact on the assessment of damages in this case. First, violations of FLSA are generally subject to a two-year limitations period, but "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Thus, if Defendants are deemed to have acted willfully, they may be subject to liability under FLSA for an additional year. Second, under both FLSA and NYLL, determinations of whether to award liquidated damages turn on whether an employer willfully violated the law or acted on a good faith belief that the conduct was legal. See 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a).

Ordinarily, when a default is entered, a plaintiff's allegations of a willful violation are taken as true, and defendants are precluded from showing good faith or reasonable belief that they acted in accordance with the law. See, e.g., Rodriguez v. Globe Inst. of Tech., No. 15-CV-1435 (RA)(SN), 2016 WL 5795127, at *2 (S.D.N.Y. Aug. 10, 2016), report and recommendation adopted, 2016 WL 5818573 (Oct. 4, 2016); Alvarez v. 215 N. Ave. Corp., No. 13-CV-7049 (NSR)(PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015); Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014). In the majority of cases, however, a default judgment is rendered due to a defendant's failure to respond to the complaint. See, e.g., Greyhound Exhibitgroup, 973 F.2d at 156. Under those circumstances, it is entirely sensible to conclude that the defendant has conceded to all of the plaintiff's well pleaded allegations of liability because the defendant has entirely failed to object to them. See id. at 158.

But in this case, the default was entered as a sanction for Defendants' failure to produce documents in a timely manner, not for a failure to respond to the complaint, and Defendants

actively objected to the allegations that they willfully and intentionally violated FLSA and NYLL. In fact, the Defendants moved for summary judgment on the issue that maître d's were employees, not managers, who lawfully participated in the tip pool. The Court, however, denied the motion, finding that this was a disputed issue. ECF No. 208 at 8. This record demonstrates that Defendants *might* have been able to prove to a jury (1) that maître d's were employees, or at least (2) that their belief that they were was in good faith and reasonable.

Accordingly, this case potentially presents a more complicated question of how to assess damages in the default context, for the Court has a very well-developed, and highly contested, record on which it could evaluate the defaulted Defendants' positions. Recognizing the serious consequences at stake, the Court requested supplemental briefing on the question of whether Defendants' default entered as a sanction after full discovery and a decision on Defendants' motion for summary judgment should be treated the same as a default for failure to answer a complaint. ECF No. 321. Having reviewed the parties' submissions and the relevant case law, I find that the consequences of the default are the same regardless of the reason for the default. Although the result in this case may be harsh, such outcome is mandated by the entry of default.

The Supreme Court has "equated the sanction of default to a waiver by the malefactor of the opportunity to contest the factual or legal basis for the adverse ruling or judgment imposed as a sanction." Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union, No. 00-CV-3613 (LAP), 2004 WL 1943099, at *13 (S.D.N.Y. Aug. 27, 2004) (citing Hammond Packing Co. v. State of Ark., 212 U.S. 322, 351 (1909)); Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982)); see also Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (holding that an employer "forfeited, by virtue of its default, any argument that [the employee] failed to establish its willfulness," even though

there had been factual disputes at the summary judgment phase over whether the employer acted willfully). Therefore, "so long as the facts as painted by the complaint '*might* have been the case' they may not now be successfully controverted by" a party in default. Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 64 (2d Cir. 1971), rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973). In other words, "a defaulting party ordinarily cannot contest the merits of the plaintiff's claim absent 'indisputable' contradictory evidence." In re Crazy Eddie Sec. Litig., 948 F. Supp. 1154, 1160 (E.D.N.Y. 1996) (quoting Trans World Airlines, 449 F.2d at 64).

In his supplemental briefing, Lajaunie states that Defendants had good faith bases for believing that the maître d's were eligible to participate in tip pools. According to Lajaunie, maître d's "are servers who are the most knowledgeable, personable, attentive, flexible and responsive in a restaurant's dining room." He characterizes the maître d's as "flying servers" because they are tasked with keeping an eye on the entire dining room and quickly stepping in to help other servers who are "stuck caring for a special table of guests, or a large party." By contrast, Lajaunie contends that managers "have totally different functions, and are responsible for long lists of administrative tasks, including scheduling, hiring and firing."

Although these statements might have convinced a jury at trial, they are disputed by the Plaintiffs. Lajaunie has not offered *indisputably contradictory* evidence that challenges the allegations that Defendants violated FLSA and NYLL willfully and not in good faith. Indeed, in ruling on Defendants' summary judgment motion, the Court concluded that the evidence on the question of the maître d's classification was disputed. Thus, Defendants' default is deemed to constitute a concession to Plaintiffs' well-pleaded claims that the alleged FLSA and NYLL

violations were willful and not in good faith. Lajaunie's arguments to the contrary cannot be considered.

**B.     Statutes of Limitations**

As discussed above, FLSA imposes a three-year limitations period for willful violations, 29 U.S.C. § 255(a), and by virtue of the default, Defendants are deemed to have conceded that the alleged FLSA violations were willful, Alvarez, 2015 WL 3855285, at *3. Thus, Plaintiffs' FLSA claims are subject to a three-year limitations period. In addition, a collective action is considered to be commenced with respect to an individual plaintiff when he or she files a written consent to become a plaintiff. 29 U.S.C. § 256. Thus, Defendants are liable to each named and opt-in Plaintiff for FLSA violations that occurred on or after the date that is three years before the filing of his or her consent-to-sue form. The first forms were filed with the second amended complaint on August 12, 2013, ECF No. 296-3 at 17–20, so the Plaintiffs who filed those forms may recover for FLSA claims arising as early as August 12, 2010.

The NYLL claims are subject to a six-year limitations period. N.Y. Lab. Law § 198(3) (setting the limitations period for § 196-d claims); id. § 663(3) (setting the limitations period for the other NYLL claims in this matter). Therefore, Plaintiffs may recover for § 196-d claims arising on or after September 4, 2006, which is six years before the filing of the original complaint asserting those claims. Plaintiffs may recover for spread-of-hours and New York tip-credit claims arising on or after May 19, 2008—six years before the filing of the fourth amended complaint, which asserted those claims for the first time.

Scott's individual overtime claims were first asserted in the second amended complaint filed on August 12, 2013. He alleges that he was denied overtime compensation between October 4, 2009, and December 29, 2012. ECF No. 296-15 at 17. Scott may recover under New York law

for overtime claims arising before August 12, 2010, and he may recover under FLSA or New York law for overtime claims arising thereafter.

Ramirez's individual overtime claims were first asserted in the fourth amended complaint filed on May 19, 2014. He alleges that he was denied overtime compensation between July 3, 2012, and July 6, 2013. Id. All of these claims arose within three years of the fourth amended complaint; thus, he may be awarded damages under FLSA or New York law.

### C.   Missing Records

Under FLSA, an employer is required to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211. "Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Therefore, "[w]hen a defendant in a suit for lost wages under the FLSA fails to maintain employment records as required by the Act, an employee . . . may 'submit sufficient evidence from which . . . the amount of an award may be reasonably inferred.'" Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997) (quoting Martin v. Selker Bros., Inc., 949 F.2d 1286, 1296–97 (3d Cir.1991)); accord Kuebel v. Black & Decker Inc., 643 F.3d 352, 361–62 (2d Cir. 2011). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Anderson, 328 U.S. at 687–88. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id. at 688; accord Kuebel, 643 F.3d at 362.

Likewise, under New York law, when an employer fails "to keep adequate records," "the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196-a; accord Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005). The employer must show "by a preponderance of the evidence that plaintiff was properly paid for the hours he worked." Doo Nam Yang, 427 F. Supp. 2d at 337 n.15. If the employer fails to meet this burden, then a court may award damages to the employee, even though the award may be approximate. Jiao v. Shi Ya Chen, No. 03-CV-0165 (DF), 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007).

A default was entered against Defendants in this case because they failed to comply with the Court's orders requiring them to produce employment and payroll records. ECF No. 260 at 15. As a result of Defendants' noncompliance, Plaintiffs do not have all of the records they need to establish the appropriate damages. See ECF No. 296-15 at 12. In calculating damages in this case, Plaintiffs filled in gaps in the information they received "by using samples from or averages derived from the records Defendants did produce." Id. at 13. Lajaunie has not presented any evidence to rebut the reasonableness of the inferences Plaintiffs have drawn regarding the appropriate amount of damages. See ECF Nos. 318–20.

### D.    Appropriate Amount of Damages

The Court entered default "on all of Plaintiffs' remaining claims." ECF No. 260 at 18. When the default was entered, the only claim that had been dismissed and not reinstated was Plaintiffs' claim for tip-credit damages pursuant to §§ 196-d and 652. See ECF Nos. 209, 260. Therefore, Plaintiffs' remaining claims were that Defendants: (1) violated FLSA by paying the named and opt-in Plaintiffs pursuant to a tip credit while requiring them to share tips with maître d's, see 29 U.S.C. §§ 203(m), 206, 207; (2) violated NYLL § 196-d by requiring class members

to share tips with maître d's who were ineligible to participate in tip pools; (3) violated New

York's minimum wage law by paying class members less than New York's tip-credit minimum

wage (and corresponding overtime rate) from July 24, 2009, to December 31, 2010, see N.Y.

Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.5(e) (repealed 2010); (4) violated

New York's spread-of-hours requirements by failing to pay class members a spread-of-hours

premium before March 2011, see N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 (repealed

2010); id. § 146-1.6; and (5) violated FLSA and New York law by failing to pay Scott and

Ramirez an overtime premium for overtime hours worked when they were improperly paid a

weekly salary, see 29 U.S.C. § 207; N.Y. Lab. Law § 655; N.Y. Comp. Codes R. & Regs. tit. 12,

§ 137-1.3 (repealed 2010); id. § 146-1.4.

Plaintiffs assert that they should be awarded damages for each of these claims. ECF No.

296-15 at 13–18. They also argue that they should be awarded liquidated damages under FLSA

and NYLL. Id. at 12–13. Rather than responding to Plaintiffs' arguments regarding the

appropriate amount of damages, Lajaunie instead focuses on challenging the reasoning

underlying the Court's decision to enter a default in the first place—he argues that he produced

all of the relevant employment and payroll records and contends that maître d's were eligible to

participate in tip pools. ECF No. 318. But the appropriateness of entering the default is not

currently at issue. The only question before the Court is the amount of damages Defendants

should be required to pay.

### 1.    FLSA collective damages

FLSA "allows an employer to pay tipped employees an hourly rate less than the federal

minimum wage, by allowing them to credit a portion of the actual amount of tips received by the

employee against the required hourly minimum wage." Chung v. New Silver Palace Rest., 246 F.

Supp. 2d 220, 228 (S.D.N.Y. 2002); accord 29 U.S.C. §§ 203(m), 206. But "an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with . . . managers." Shahriar v. Smith & Wollensky Rest. Grp., 659 F.3d 234, 240 (2d Cir. 2011). Defendants paid the opt-in Plaintiffs pursuant to a tip credit but required them to share tips with maître d's. ECF No. 104 ¶¶ 33, 46. Plaintiffs contend that these maître d's were managers who were ineligible to share in the tip pool. Id. ¶¶ 46–59. Therefore, Plaintiffs allege that Defendants violated FLSA by paying Plaintiffs using a tip credit when they were not entitled to do so. Id. ¶ 65.

The appropriate compensatory damages for these violations are "the difference between the full federal hourly wage . . . and the hourly wages actually paid to the plaintiffs for the hours they worked." Chung, 246 F. Supp. 2d at 231; accord 29 U.S.C. § 216(b). At all relevant times between August 12, 2010, and the entry of the default on August 10, 2016,[1] the minimum wage under FLSA was $7.25 per hour. 29 U.S.C. § 206(a). Thus, Plaintiffs are entitled to recover the difference between $7.25 and the regular hourly rate they were paid for non-overtime hours and the difference between $10.88 and the overtime rate they were paid for overtime hours. Plaintiffs have submitted sample tip sheets from the Restaurants as well as spreadsheets showing their calculations of the appropriate FLSA damages. See ECF No. 296-1 at 8–16. After reviewing these materials, I am satisfied that Plaintiffs have established the basis for the damages with reasonable certainty. Accordingly, I recommend awarding Plaintiffs compensatory damages of $277,439.36 for the Park Avenue location and $120,290.35 for the John Street location.

In addition, an employer who violates FLSA is liable for liquidated damages equal to the compensatory damages unless "the employer shows to the satisfaction of the court that the act or

---

[1] The Park Avenue location closed on March 23, 2016, but it appears that the John Street location remained in operation at least until the Court entered the default on August 10, 2016. ECF No. 296-1 at 2.

omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation." 29 U.S.C. §§ 216(b), 260; see also Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 120 (2d Cir. 1997) (holding that liquidated damages were appropriate where defendant willfully violated FLSA). As previously discussed, Defendants are deemed to have acted willfully by virtue of the default. See Alvarez, 2015 WL 3855285, at *3. Therefore, I recommend awarding Plaintiffs liquidated damages equal to their compensatory damages under FLSA.

### 2.     Misappropriated tips under NYLL § 196-d

Under § 196-d, employers are prohibited "from requiring tipped employees to share tips with . . . employees who are managers or 'agent[s]' of the employer." Shahriar, 659 F.3d at 240. Plaintiffs allege that Defendants violated NYLL § 196-d by requiring them to share tips with maître d's—whom they claim were managers—from September 4, 2006, until the Court entered the default on August 10, 2016. ECF No. 104 ¶¶ 72–77; ECF No. 296-1 at 17. In its March 22, 2016 Opinion and Order, the Court held that "if Plaintiffs establish a violation of Section 196-d . . . they will be entitled to recover the unlawfully retained tips." ECF No. 208 at 12; see also N.Y. Lab. Law § 198(1-a) (allowing an "employee to recover the full amount of any underpayment" for a violation of § 196-d). Plaintiffs have submitted sample tip sheets from the Restaurants as well as spreadsheets showing their calculations.[2] See ECF No. 296-1 at 8–9, 17–22. Based on my review of the materials provided, I am satisfied that Plaintiffs have established, with reasonable certainty, the basis for the damages. I recommend awarding Plaintiffs compensatory damages of $1,255,340.32 with respect to the Park Avenue location and $608,489.29 with respect to the John Street location.

---

[2] Plaintiffs reduced their damages calculations for these claims to account for two individuals who opted out of the class. ECF No. 296-15 at 15.

Under NYLL § 198, a plaintiff may also recover liquidated damages equal to 25% of the compensatory damages for claims arising before November 29, 2009, if "the employer's failure to pay the wage required . . . was willful." N.Y. Lab. Law § 198(1-a) (1997). For claims arising between November 29, 2009, and April 8, 2011, a plaintiff may recover liquidated damages equal to 25% of the compensatory damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a) (2009). And for claims arising on or after April 9, 2011, a plaintiff may recover liquidated damages equal to 100% of the compensatory damages unless the employer shows that it acted in good faith. N.Y. Lab. Law § 198(1-a) (2010). As discussed above, Defendants are deemed to have acted willfully and not in good faith by virtue of the default. See Alvarez, 2015 WL 3855285, at *3; Galeana, 120 F. Supp. 3d at 317. Accordingly, I recommend awarding Plaintiffs liquidated damages of $797,787.75 for the Park Avenue location and $413,260.80 for the John Street location.

### 3.    New York minimum wage claims

Much like FLSA, New York regulations allow an employer to credit a portion of the actual tips an employee receives against the required hourly minimum wage. N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.5 (repealed 2010). But if an employer fails to pay an employee the appropriate tip-credit minimum wage, the employer may be held liable for compensatory damages equal to "the amount of any such underpayments." N.Y. Lab. Law § 663(1).

Plaintiffs allege that Defendants paid class members less than the New York tip-credit minimum wage from July 24, 2009, to December 31, 2010. ECF No. 104 ¶ 34. According to the fourth amended complaint, Defendants paid class members an hourly wage of $4.60 during that period, id., but New York's tip-credit minimum wage was $4.65 at the time, N.Y. Comp. Codes

R. & Regs. tit. 12, § 137-1.5 (repealed 2010). Plaintiffs have submitted sample payroll records showing that class members received hourly wages of $4.60 during the relevant period. See ECF No. 296-6 at 41. They have also submitted spreadsheets showing their calculations of these damages.[3] See ECF No. 296-1 at 23–25. To the extent the New York minimum wage claims overlap with FLSA claims, Plaintiffs excluded the overlapping hours from their New York minimum wage calculations. ECF No. 296-15 at 17. I find that Plaintiffs have supplied evidence that establishes the appropriate amount of damages with reasonable certainty. Accordingly, I recommend granting Plaintiffs compensatory damages of $3,236.83 with respect to the Park Avenue location and $2,062.97 with respect to the John Street location.

In addition, under NYLL § 663(1), a plaintiff may recover liquidated damages equal to 25% of compensatory damages for: (a) willful underpayments arising before November 29, 2009; and (b) underpayments occurring between November 29, 2009, and April 8, 2011, unless the employer shows that it acted in good faith with respect to those underpayments. Because a default has been entered, Defendants are deemed to have acted willfully and not in good faith. See Alvarez, 2015 WL 3855285, at *3; Galeana, 120 F. Supp. 3d at 317. Therefore, I recommend granting Plaintiffs liquidated damages of $809.21 for the Park Avenue location and $515.74 for the John Street location.

### 4.    New York spread-of-hours claims

New York's spread-of-hours regulations require a restaurant to pay an employee one additional hour of pay at the basic minimum hourly rate on each day in which the interval between the beginning and end of the employee's workday exceeds ten hours. N.Y. Comp.

---

[3] Plaintiffs did not reduce the New York minimum wage calculations to account for the two individuals who opted out of the class because the individuals' employment with Defendants did not begin until after the period of time when Defendants allegedly paid employees less than the tip-credit minimum wage. See ECF No. 296-15 at 16 n.3.

Codes R. & Regs. tit. 12, § 137-1.7 (repealed 2010); id. § 146-1.6. An employer who fails to pay spread-of-hours compensation may be required to pay compensatory damages equal to "the amount of any such underpayments." N.Y. Lab. Law § 663(1).

Plaintiffs allege that Defendants willfully failed to pay class members spread-of-hours compensation from May 19, 2008, to February 28, 2011. ECF No. 104 ¶¶ 42–43, 81–84; ECF No. 296-15 at 15–16. The minimum wage in New York was $7.15 until July 23, 2009, and $7.25 from July 24, 2009, to February 28, 2011. 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1). Plaintiffs have submitted sample payroll records illustrating Defendants' failure to pay spread-of-hours compensation. ECF No. 296-6 at 24–25. They have also submitted spreadsheets calculating the unpaid spread-of-hours compensation to which they were entitled.[4] ECF No. 296-1 at 22–23. After reviewing these materials, I am satisfied that Plaintiffs have established the appropriate damages with reasonable certainty. I recommend awarding Plaintiffs compensatory damages of $24,298.82 with respect to the Park Avenue location and $20,187.48 with respect to the John Street location.

As previously discussed, NYLL § 663(1) also enables a plaintiff to recover liquidated damages equal to 25% of the compensatory damages so long as the employer's actions were willful (for claims arising before November 29, 2009) and not in good faith (for claims arising between November 29, 2009, and April 8, 2011). Defendants are deemed to have acted willfully and not in good faith because of the default. See Alvarez, 2015 WL 3855285, at *3; Galeana, 120 F. Supp. 3d at 317. Therefore, I recommend granting Plaintiffs liquidated damages of $6,074.71 for the Park Avenue location and $5,046.87 for the John Street location.

---

[4] Plaintiffs did not reduce their calculations to account for the individuals who opted out of the class because those individuals did not begin working for Defendants until after February 28, 2011. ECF No. 296-15 at 16 n.3.

### 5.    Scott's and Ramirez's individual overtime claims

Both FLSA and New York law require employers to pay nonexempt employees one and one-half times their regular hourly rate for work in excess of 40 hours in a given week. 29 U.S.C. § 207(a)(2); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3 (repealed 2010); id. § 146-1.4. An employer who fails to compensate employees properly for overtime may be held liable for compensatory damages equal to the amount of the unpaid overtime compensation. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Under FLSA, an employee's regular hourly rate is calculated "by dividing the salary by the number of hours which the salary is intended to compensate." Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 528 (S.D.N.Y. 2013); accord 29 C.F.R. § 778.109. Before January 1, 2011, New York law used the same method as FLSA for calculating an employee's regular hourly rate. N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.5 (repealed 2010). But since then, New York law has calculated the regular hourly rate "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5. In calculating damages under these provisions for Scott and Ramirez, Plaintiffs have applied the applicable law that yields the greatest recovery.

In addition, as discussed above, FLSA permits the Court to award liquidated damages equal to FLSA compensatory damages unless the employer acted in good faith. 29 U.S.C. §§ 216(b), 260. Under NYLL § 663(1), a plaintiff may recover liquidated damages equal to: (a) 25% of compensatory damages for willful underpayments arising before November 29, 2009; (b) 25% of compensatory damages for underpayments occurring between November 29, 2009, and April 8, 2011, unless the employer shows that it acted in good faith; and (c) 100% of

compensatory damages for underpayments occurring on or after April 9, 2011, unless the employer shows that it acted in good faith.

### i.      Logan Scott

Scott asserts that he was generally paid a salary of $375 per week between October 4, 2009, and August 14, 2010, and $390 per week between August 15, 2010, and December 29, 2012. ECF No. 296-1 at 27. He alleges that he worked approximately 60 hours per week during those periods of time but did not receive overtime pay to which he was purportedly entitled. ECF No. 104 ¶¶ 40–41, 60–63, 68–71, 88–95; ECF No. 296-1 at 27. He also contends that his payroll records from those periods were inaccurate because he rarely clocked in and out. ECF No. 296-1 at 27 & n.3. Scott has submitted sample payroll records showing the weekly salaries he was paid and spreadsheets showing his calculations of the appropriate damages for these claims. ECF No. 296-1 at 26–29; ECF No. 296-6 at 27, 41. For each work week before August 15, 2010, his calculations only include damages under New York law. Id. For each week beginning on or after August 15, 2010, the calculations include the greater of damages under FLSA or those under New York law.[5] Id. After reviewing these materials, I conclude that Scott's evidence establishes the appropriate amount of damages with reasonable certainty. I recommend awarding Scott compensatory damages of $27,290.

Scott also argues that he should receive liquidated damages. ECF No. 296-15 at 18–19. Again, for each work week beginning before August 15, 2010, Scott requests only New York liquidated damages. For each work week thereafter, Scott requests the greater of liquidated damages under FLSA and those under New York law. ECF No. 296-1 at 28. By virtue of the default, Defendants are deemed to have acted willfully and not in good faith. See Alvarez, 2015

---

[5] The limitations period for FLSA began to run on August 12, 2010, so Scott began his FLSA calculations on the following work week.

WL 3855285, at *3; Galeana, 120 F. Supp. 3d at 317. Accordingly, I recommend granting Scott liquidated damages of $17,837.50 under New York law and $3,995 under FLSA (for separate periods of time).

### ii.    Efrain Ramirez

Ramirez alleges that he was improperly paid a salary of $300 per week from July 3, 2012, to July 6, 2013, and did not receive overtime pay to which he was entitled during that time. ECF 104 ¶¶ 35–36, 40–41, 68–71, 85–87. Ramirez's time records apparently show the times he clocked in and out of work. ECF No. 296-1 at 25; ECF No. 296-15 at 18. In support of his request for damages, Ramirez submitted spreadsheets showing his calculations of the damages, which include the Bates numbers for the time records documenting the hours he worked. ECF No. 296-1 at 25. Ramirez did not submit any payroll records showing the weekly salary he was allegedly paid, nor has he provided any records showing when he clocked in and out during the relevant period. He did submit certain time records from 2007, but those time records predate his claims by several years. ECF No. 296-4 at 85.

Accordingly, during the time for objections to this Report and Recommendation, Plaintiffs are directed to file samples of time records and payroll records from the relevant period to support Ramirez's claims for damages. Presuming that Plaintiffs provide those samples and that they support the calculations in the spreadsheet, Ramirez has established the appropriate amount of damages with reasonable certainty. I recommend awarding Ramirez compensatory damages of $3,413.06 with respect to his individual claims.

In addition, Ramirez seeks liquidated damages for his individual claims under New York law. As previously discussed, due to the default, Defendants have forfeited any argument that they acted in good faith. See Galeana, 120 F. Supp. 3d at 317. And because all of the alleged

underpayments occurred after April 9, 2011, Ramirez is entitled to liquidated damages equal to 100% of his compensatory damages. N.Y. Lab. Law § 663(1). Therefore, I recommend awarding Ramirez liquidated damages of $3,413.06.

### E.    Interest

Plaintiffs also seek interest on their state law claims. "'Pre-judgment interest and liquidated damages under the [New York] Labor Law are not functional equivalents' and thus may both be awarded for violations of state wage laws." Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (quoting Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999)); accord N.Y. Lab. Law §§ 198(1-a), 663(1); Galeana, 120 F. Supp. 3d at 321. A plaintiff may recover prejudgment interest on his or her compensatory damages "at the rate of nine per centum per annum." N.Y. C.P.L.R. 5004. "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. 5001(b).

I recommend awarding Plaintiffs prejudgment interest on their state law claims. Plaintiffs have submitted calculations showing the relevant midpoint between the start and end dates for each claim. These are appropriate dates from which to compute prejudgment interest under New York law. Accordingly, I recommend awarding Plaintiffs prejudgment interest for each of their NYLL claims beginning on the following dates and running until the date of judgment:

| Claim | Interest Start Date | Compensatory Amount |
|---|---|---|
| Park Avenue § 196-d Claims | 6/14/2011 | $1,255,370.48 |
| John Street § 196-d Claims | 8/23/2011 | $608,489.29 |
| Spread-of-Hours Claims (both locations) | 10/8/2009 | $44,486.30 |

| | | |
|---|---|---|
| State Minimum Wage Claims (both locations) | 4/12/2010 | $5,299.80 |
| Scott's State Overtime Claims (period 10/9/2009 to 8/14/2010) | 3/10/2010 | $5,830.00 |
| Scott's State Overtime Claims (period 4/10/2011 to 12/29/2012) | 2/18/2012 | $16,380.00 |
| Ramirez's State Overtime Claims | 1/3/2013 | $3,413.03 |

In addition, New York law provides that "the total amount of judgment shall automatically increase by fifteen percent" if any amounts awarded under state law "remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later." N.Y. Lab. Law §§ 198(4), 663(4). I recommend ordering Defendants to pay such additional damages if they fail to pay the damages awarded under New York law within those timeframes.

### F.    Damages Allocation

The spreadsheets for Plaintiffs' FLSA tip-credit, New York minimum wage, and individual damages calculations set forth each individual class member's share of the overall damages (subject to an additional *pro rata* distribution of prejudgment interest on the New York minimum wage damages). ECF No. 296-15 at 20. In light of missing documents and the absence of last names in most tip sheets, however, it is not feasible for Plaintiffs to calculate each class member's share of the § 196-d and spread-of-hours damages. Therefore, Plaintiffs propose that the § 196-d and spread-of-hours damages be combined for each Restaurant and allocated to each class member according to the applicable Restaurant's tip pool system. This approach seems fair and reasonable. I recommend allowing the § 196-d and spread-of-hours damages to be allocated to class members according to each Restaurant's tip pool system.

### III.   Attorneys' Fees and Costs

Plaintiffs seek $707,755 in attorneys' fees and $20,378.09 in costs. ECF No. 296-15 at

22–25. Both FLSA and New York law allow plaintiffs to recover attorneys' fees and costs when

defendants violate wage and hour laws. 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1).

"District courts have broad discretion to determine a fee award based on the circumstances of a

case." Underdog Trucking, LLC v. Verizon Servs. Corp., 276 F.R.D. 105, 108 (S.D.N.Y. 2011).

A reasonable award of attorneys' fees should be based on a "reasonable hourly rate," which is

"the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood

Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The "presumptively reasonable

fee" or "lodestar" is then determined by calculating "the product of a reasonable hourly rate and

the reasonable number of hours required." Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir.

2011). "The district court may adjust the lodestar figure—upward or downward—based on a

variety of factors." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998).

Plaintiffs have submitted time records for ten attorneys and four paralegals who worked

on this matter. Their billable rates and hours break down as follows:

| Individual | Hourly Rate | Hours | Total |
|---|---|---|---|
| D. Maimon Kirschenbaum | $450 | 96.9 | $43,605.00 |
| D. Maimon Kirschenbaum (travel) | $225 | 1.9 | $427.50 |
| Jeffrey E. Goldman | $450 | 722.7 | $325,215.00 |
| Denise A. Schulman (partner) | $400 | 51.5 | $20,600.00 |
| Denise A. Schulman (associate) | $300 | 547.4 | $164,220.00 |
| Brian Moss | $300 | 115.4 | $34,620.00 |

| | | | |
|---|---|---|---|
| Julie Salwen | $275 | 57.7 | $15,867.50 |
| Ruchama Cohen | $250 | 33.1 | $8,275.00 |
| Jacob Korder | $250 | 107.2 | $26,800.00 |
| Jonah Brassard | $250 | 132.1 | $33,025.00 |
| Andrew Magida | $250 | 72.8 | $18,200.00 |
| Saryah Sober | $250 | 6.6 | $1,650.00 |
| Paralegals | $125 | 122 | $15,250.00 |
| **Total** | | **2,067.3** | **$707,755** |

ECF No. 296-1 at 34; ECF No. 296-13 at 5.

A.      **Reasonable Rate**

To determine a reasonable hourly rate, a court "looks to 'the prevailing market rates in the relevant community.'" Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). The Court already found that hourly rates of $450 for Kirschenbaum and Goldman, and $300 for Schulman for her work as an associate are reasonable in this case. ECF No. 241; ECF No. 271 at 40:17–18. On February 8, 2017, Schulman was promoted to partner, increasing her hourly rate to $400. ECF No. 296-1 at 30. Schulman is a 2008 graduate of the New York University School of Law who has worked on employment matters at Joseph & Kirschenbaum LLP for the past nine years. Id. Considering the prevailing market rates in the community, I find that $400 is a reasonable rate for Schulman, a partner at a reputable law firm with substantial experience litigating wage and hour class actions. See, e.g., Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (approving hourly rates ranging from $275 to $450 for attorneys at a reputable firm); Saunders v. City of New

York, No. 07-CV-830 (SAS), 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (approving hourly rate of $450 for partners with "substantial experience litigating employment matters").

Moss is a 2007 graduate of the Rutgers University School of Law who litigated employment matters as an associate in the Law Offices of Jeffrey E. Goldman ("Goldman Law") from June 2008 until July 2013. ECF No. 296-13 at 2. Because Moss had approximately four years of employment litigation experience when he began working on this case, I find that his rate of $300 per hour is reasonable based on the prevailing market rates in the community. See, e.g., Polit v. Glob. Foods Int'l Corp., No. 14-CV-07360 (SN), 2017 WL 1373907, at *8 (S.D.N.Y. Apr. 13, 2017) (finding that "$300 is a reasonable rate for an associate with four years of legal experience at an employment law firm"); Torres v. Gristede's Operating Corp., No. 04-CV-3316 (PAC), 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012) (approving $300 per hour for senior associates at a well-respected firm), aff'd, 519 F. App'x 1 (2d Cir. 2013); Allende, 783 F. Supp. 2d at 514–15 (concluding that an hourly rate of $300 for associates at a "well-known and highly respected law firm" is "consistent with rates awarded by the courts in other FLSA or similar statutory fee cases"); Saunders, 2009 WL 4729948, at *8 (awarding associates between $200 and $300 per hour in a FLSA collective action).

Salwen is a 2008 graduate of the Fordham University School of Law who worked at Goldman Law for just two months in 2013. ECF No. 296-13 at 2. Plaintiffs' affidavit devotes substantial space to discussing Salwen's work experience *after* she left Goldman Law. Id. But that experience has no bearing on her qualifications when she worked on this case. Without an explanation of her prior legal background, I see no justification for approving an hourly rate for Salwen that is higher than the rate for the junior attorneys in this case. Thus, I find that $250 per hour (as opposed to $275 per hour) is a reasonable rate for Salwen's work.

The remaining attorneys were all junior associates with little to no post-graduate experience when they worked on this case. ECF No. 296-1 at 30; ECF No. 296-13 at 2–4. I find that $250 is a reasonable hourly rate for these attorneys in light of the prevailing rates in the community. See, e.g., Torres, 2012 WL 3878144, at *4 (approving $275 per hour for junior associates); Allende, 783 F. Supp. 2d at 514–15; Saunders, 2009 WL 4729948, at *8. In addition, I find that an hourly rate of $125 for paralegals is consistent with the prevailing rates in the community. Torres, 2012 WL 3878144, at *4 (approving an hourly rate of "$125 for paralegals"); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (same).

## B.      Reasonable Hours

An application for attorneys' fees must be supported "by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983). In determining how much attorney time should be compensated, a court must consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). The Court also has the discretion to make specific reductions or across-the-board percentage cuts in hours where the number of billing entries is overly voluminous. In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987); Underdog Trucking, 276 F.R.D. at 110.

This was a complex collective action and class action involving approximately 75 opt-in Plaintiffs and numerous other class members. Among other things, counsel took or defended 19 depositions; fully briefed motions for conditional collective certification and class certification; opposed Defendants' summary judgment motion; submitted letter briefs regarding discovery issues and the events leading to default; attended two mediation sessions and engaged in

additional settlement efforts; provided discovery responses from dozens of named and opt-in

Plaintiffs; and reviewed more than 30,000 pages of documents produced by Defendants. ECF

No. 296-15 at 24. I have reviewed the time records Plaintiffs have submitted and find that most

of the tasks were necessary to prosecute this action, were performed within a reasonable amount

of time, and were the type of work in which a reasonable attorney would engage.

Nevertheless, the time records include a number of entries using a practice known as

"block billing," whereby different tasks are grouped into a single time entry, making it difficult

to determine the amount of time expended on each individual task. When plaintiffs submit block-

billed time records, courts frequently apply an across-the-board percentage reduction as a

"practical means of trimming fat" from a fee application. Carey, 711 F.2d at 1146; Skanga

Energy & Marine Ltd. v. Arevenca S.A., No. 11-CV-4296 (DC)(DF), 2014 WL 2624762, at *3

(S.D.N.Y. May 19, 2014) ("Vague and 'block-billed' time records are insufficient to substantiate

a party's claimed expenditure of time."); Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao

People's Democratic Republic, No. 10-CV-05256 (KMW)(DF), 2012 WL 5816878, at *10

(S.D.N.Y. Nov. 14, 2012) ("[A]t times, courts have reduced or even disallowed requested

attorneys' fees where the supporting time records were not broken out with sufficient detail to

enable it to determine the reasonableness of the time spent on particular tasks."). Because the

practice is not widespread in their billing, however, I recommend simply reducing Plaintiffs'

hours by 5% across the board.

In addition, 2.5 hours of Goldman's time and 31 hours of Schulman's time are block-

billed entries that include travel and waiting time. These hours were billed at the attorneys'

regular hourly rates.[6] "In recognition of the fact that travel time 'may be beneficial, but . . .

---

[6] Kirschenbaum's time entries also include travel time, but he decreased his hourly rate by 50% for travel and did
not block bill those entries.

probably is not as productive as time at the office or in court,' courts in the Second Circuit 'regularly reduce attorneys' fees by 50 percent for travel time.'" Adusumelli v. Steiner, No. 08-CV-6932 (JMF), 2013 WL 1285260, at *5 (S.D.N.Y. Mar. 28, 2013) (quoting Wilder v. Bernstein, 975 F. Supp. 276, 284 (S.D.N.Y. 1997); LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010)). Accordingly, I recommend reducing these hours by 50% (instead of the regular 5% reduction).

In sum, I recommend granting the following attorneys' fees:

| Individual | Hourly Rate | Hours | Total |
| --- | --- | --- | --- |
| D. Maimon Kirschenbaum | $450 | 92.1 | $41,445.00 |
| D. Maimon Kirschenbaum (travel) | $225 | 1.8 | $405.00 |
| Jeffrey E. Goldman | $450 | 685.5 | $308,475.00 |
| Denise A. Schulman (partner) | $400 | 48.9 | $19,560.00 |
| Denise A. Schulman (associate) | $300 | 506.1 | $151,830.00 |
| Brian Moss | $300 | 109.6 | $32,880.00 |
| Julie Salwen | $250 | 54.8 | $13,700.00 |
| Ruchama Cohen | $250 | 31.4 | $7,850.00 |
| Jacob Korder | $250 | 101.8 | $25,450.00 |
| Jonah Brassard | $250 | 125.5 | $31,375.00 |
| Andrew Magida | $250 | 69.2 | $17,300.00 |
| Saryah Sober | $250 | 6.3 | $1,575.00 |
| Paralegals | $125 | 115.9 | $14,487.50 |
| **Total** | | **1948.9** | **$666,332.50** |

C.      Costs

In addition, Plaintiffs seek an award of costs in the amount of $20,378.09. When a fee-shifting regime applies, a plaintiff may recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (quoting U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)). Plaintiffs' request includes expenses for mediation, depositions, service of process, postage and delivery services, translation services, filing fees, court transcripts, transportation, and temporary staff for inquest document review. ECF No. 296-1 at 35; ECF No. 296-13 at 6. "These are the types of routine costs typically awarded when a defendant defaults." Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 365 (S.D.N.Y. 2010). Because I find that the costs are reasonable, I recommend granting Plaintiffs' request for $20,378.09 in costs.

## CONCLUSION

During the time for objections to this Report and Recommendation, Plaintiffs are directed to submit the evidence referenced in the detailed spreadsheet in Exhibit 36 to the Schulman Declaration to substantiate their damages calculations for Ramirez's individual overtime claims. Provided that the necessary information is filed with the Court, I recommend awarding Plaintiffs damages totaling $3,988,512.70, plus prejudgment interest with respect to the compensatory damages awarded under New York law. I also recommend awarding Plaintiffs attorneys' fees of $666,332.50 and costs of $20,378.09.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:        February 2, 2018
              New York, New York

cc:               Philippe LaJaunie (*by Chambers*)
                      411 Park Ave. South, Apt. 3D
                      New York, NY 10016

*        *        *

<h3 align="center">NOTICE OF PROCEDURE FOR FILING OBJECTIONS<br>TO THIS REPORT AND RECOMMENDATION</h3>

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Sullivan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).