USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/23/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ETHAN MURPHY, *et al.*,

                Plaintiffs,

-v-

PHILIPPE LAJAUNIE, *et al.*,

                Defendants.

No. 13-cv-6503 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

    On August 16, 2016, the Court entered a default against Defendants and referred this case to Judge Netburn for an inquest on damages. (Doc. No. 260.) On February 2, 2018, Judge Netburn submitted her Report and Recommendation concluding that Plaintiffs were entitled to $3,988,512.70 in damages, plus prejudgment interest with respect to compensatory damages awarded under the New York Labor Law ("NYLL"), and attorney's fees and costs. (Doc. No. 325.) The Court adopted Judge Netburn's Report and Recommendation in full on February 15, 2019. (Doc. No. 328.) On February 22, 2019, the Court ordered Plaintiffs to submit a proposed interest calculation and proposed allocation of the monetary judgment. (Doc. No. 329.)

    Now before the Court are (1) Plaintiffs' March 14, 2019 letter setting forth a proposed interest calculation and allocation of the interest and damages judgment (Doc. No. 332); and (2) Defendant LaJaunie's April 1, 2019 Motion for Reconsideration and Relief from an Order pursuant to Federal Rule of Civil Procedure 60(b) (Doc. No. 336). LaJaunie also requests a hearing and oral argument with respect to the issues raised in his motion. (Doc. No. 338). For the reasons set forth below, the Court largely agrees with Plaintiffs' proposed calculation of prejudgment interest

and the allocation of the judgment. The Court finds no basis to set aside the default or to reconsider its prior orders, except that the Court will revise its order adopting in full the Report and Recommendation to account for minor undisputed errors identified in the parties' letters to the Court. Finally, the Court will postpone entering judgment until August 1, 2019 to allow Plaintiffs time to submit an amended proposed judgment in accordance with this Order.

## I. Proposed Judgment

### A. Amount of Prejudgment Interest

Judge Netburn recommended – and this Court subsequently ruled – that Plaintiffs are entitled to prejudgment interest on the compensatory damages awarded under the NYLL. (Doc. Nos. 325 at 21–22, 328 at 1.) Specifically, using the midpoint between the start and end dates for each claim, Judge Netburn recommended calculating prejudgment interest at the statutory rate of nine percent per annum, *see* N.Y. C.P.L.R. 5004, based on the figures in the table below:

| Claim | Interest Start Date | Compensatory Amount |
|---|---|---|
| Park Avenue § 196-d Claims | 6/14/2011 | $1,255,370.48 |
| John Street § 196-d Claims | 8/23/2011 | $608,489.29 |
| Spread-of-Hours Claims (both locations) | 10/8/2009 | $44,486.30 |
| State Minimum Wage Claims (both locations) | 4/12/2010 | $5,299.80 |
| Scott's State Overtime Claims (period 10/9/2009 to 8/14/2010) | 3/10/2010 | $5,830.00 |
| Scott's State Overtime Claims (period 4/10/2011 to 12/29/2012) | 2/18/2012 | $16,380.00 |
| Ramirez's State Overtime Claims | 1/3/2013 | $3,413.03 |

(Doc. No. 325 at 21–22.)

Plaintiffs now propose that the Court calculate the amount of prejudgment interest using the above figures taken from the Report and Recommendation, with two changes. First, Plaintiffs propose reducing the compensatory amount for the John Street state minimum wage claims from $2,062.97 to $1,914.45, which would in turn reduce the combined compensatory amount from $5,299.80 to $5,151.28. (Doc. No. 332 at 1; Doc. No. 296 at 15.) This change reflects Plaintiffs' inadvertent inclusion of four individuals, who worked in the Les Halles delivery department and were not part of the tip pool at issue in this case, in the calculation of compensatory damages submitted to Judge Netburn as part of their July 10, 2017 proposed findings of fact. (Doc. No. 332 at 1; Doc. No. 296 at 15.)

Second, Plaintiffs propose reducing the compensatory amount for the Park Avenue § 196-d claims by about $30, from $1,255,370.48 to $1,255,340.32. (Doc. No. 332 at 2 n.1.) This change would account for an error in Plaintiffs' proposed findings of fact, which was reflected in the Report and Recommendation. (*Id.*; Doc. Nos. 296 ¶ 66, 296-11, Ex. 27.)

In addition, Plaintiffs agree with LaJaunie's objection that the list of employees submitted to the Court for purposes of determining the allocation contains an erroneous duplicate entry for a Les Halles Park Avenue employee referenced both as Lazaro Tarax Calel (employed 11/1/2011 – 4/9/2013) and Lazaro Tzarax Calel (employed 2/2/10 – 4/9/2013). (Doc. No. 334 at 1; Doc. No. 335 at 3–4.) Although Plaintiffs note that their employee list was based on the original class list provided by Defendants, Plaintiffs further agree that the latter entry (i.e., Lazaro Tzarax Calel) is the correct one, and that the former should be discarded for purposes of determining the allocation. (Doc. No. 335 at 3–4; Doc. No. 334 at 1.) With respect to compensatory damages and interest, the Court finds that the duplication error is also reflected in the proposed findings of fact that Plaintiffs submitted to Judge Netburn. (*See* Doc. No. 296-11, Ex. 31, at 13.) Thus, the Court will revise the

compensatory amount for the Park Avenue § 196-d claims to remove the duplicate entry. According to the Court's calculations, the revised compensatory amount for those claims is $1,255,336.73, which is $4.59 less than the initial compensatory amount of $1,255,340.32.[1]

Because both of Plaintiffs' proposed corrections to the compensatory amounts are reasonable and LaJaunie does not object to them, and because the parties agree that the duplicate entry described above is erroneous, the Court will calculate prejudgment interest using the corrected compensatory amounts for the New York minimum wage claims ($5,151.28) and the Park Avenue § 196-d claims ($1,255,336.73).

Finally, LaJaunie raises a number of objections to the factual basis for the interest start dates and the compensatory amounts set forth in the Report and Recommendation. (*See* Doc. No. 335 at 1–5.) Having reviewed these objections, the Court finds that several of the objections are improper attempts to relitigate the damages inquest, and the rest are meritless.[2] Thus, the Court agrees with Plaintiffs that, except for the minor agreed-upon corrections noted above, prejudgment interest should be calculated using the interest start dates and compensatory amounts set forth in the Report and Recommendation. The Court therefore calculates prejudgment interest as follows:

---

[1] The duplication error is present only in the Park Avenue employee list contained in Exhibit 31 to Plaintiffs' proposed findings of fact. Exhibit 31 lists each employee's total days of employment for purposes of calculating the "opt-out" percentage that was ultimately used to determine the compensatory amount for the Park Avenue § 196-d claims. (Doc. Nos. 296-1 ¶ 129, 296-11 at 33.) Specifically, the list includes entries for Lazaro Tarax Calel working 525 days between 11/1/2011 and 4/9/2013, and Lazaro Tzarax Calel working 1162 days between 2/2/10 and 4/9/2013. Thus:
  (1) Subtracting 525 days of employment from 121,285 total employment days for the Park Avenue employees results in 120,760 total employment days. (See Doc. No. 296-11, Ex. 31, at 13.)
  (2) Dividing 121 days – the number of days worked by the Park Avenue employee who opted out of the class – by 120,760 total employment days results in a revised opt-out percentage of 0.0845%. (*See id.* at 8.)
  (3) Reducing the $1,256,396.95 in total Park Avenue maître d' tips by the revised opt-out percentage of 0.0845% results in a revised compensatory amount of $1,255,336.73. (*See* Doc. No. 296-11 at 33.)

[2] Indeed, insofar as LaJaunie objects to the duplicate entry in the proposed findings of fact, that objection should have been raised during the damages inquest before Judge Netburn. Nevertheless, because Plaintiffs agree that the duplicate entry is erroneous, the Court has addressed the duplication error in the proposed findings of fact.

| Claim | Interest Start Date | Judgment Date | Compensatory Amount | Prejudgment Interest |
|---|---|---|---|---|
| Park Avenue § 196-d Claims | 6/14/2011 | 08/1/2019 | $1,255,336.73 | $919,319.20 |
| John Street § 196-d Claims | 8/23/2011 | 08/1/2019 | $608,489.29 | $435,111.52 |
| Spread-of-Hours Claims (both locations) | 10/8/2009 | 08/1/2019 | $44,486.30 | $39,313.70 |
| State Minimum Wage Claims (both locations) | 4/12/2010 | 08/1/2019 | $5,151.28 | $4,316.07 |
| Scott's State Overtime Claims (period 10/9/2009 to 8/14/2010) | 3/10/2010 | 08/1/2019 | $5,830.00 | $4,932.18 |
| Scott's State Overtime Claims (period 4/10/2011 to 12/29/2012) | 2/18/2012 | 08/1/2019 | $16,380.00 | $10,989.86 |
| Ramirez's State Overtime Claims | 1/3/2013 | 08/1/2019 | $3,413.03 | $2,020.61 |

Accordingly, taking the sum of the amounts of prejudgment interest for each claim, as listed in the right column of the above table, the Court finds that Plaintiffs are entitled to a total of $1,416,003.14 in prejudgment interest.

B. Allocation of Interest and Damages

Plaintiffs propose allocating interest and damages among the various class members using a points-based system that accounts for the duration of the class-members' employment and variations in their positions, based primarily on the class list that Defendants previously provided Plaintiffs. (*See* Doc. No. 332 at 1–2.) Having reviewed Plaintiffs' proposed allocation methodology and LaJaunie's objections, the Court finds that Plaintiffs' methodology is reasonable and that there is no genuine factual dispute warranting a hearing as to the basis for the allocation. Accordingly, the allocation set forth in Exhibits 2 through 4 of Plaintiffs' March 14, 2019 submissions shall be used for purposes of allocating the monetary judgment, subject to the

5

following modifications: (1) the compensatory damages for the Park Avenue § 196-d claims and the corresponding prejudgment interest on those damages shall be revised as explained above; (2) the liquidated damages for the Park Avenue § 196-d claims shall be reduced by approximately $3, from $797,787.75 to $797,784.83, in light of the revised opt-out percentage that accounts for the duplication error (*see supra* note 1); and (3) the duplicate entry described above shall be removed and the share of the judgment that was allocated to that duplicate entry shall be reallocated among the Plaintiffs on a *pro rata* basis. Plaintiffs shall submit a revised allocation chart reflecting these modifications by July 29, 2019.

II. Motion for Reconsideration and Relief from the Court's Prior Order

On April 1, 2019, LaJaunie filed a Motion for Reconsideration and Relief from an Order, pursuant to Rule 60(b), which the Court construes as seeking reconsideration of and relief from (1) the Court's August 10, 2016 default-judgment order and (2) the Court's February 15, 2019 Order adopting Judge Netburn's Report and Recommendation with respect to damages. (Doc. No. 336.) On April 16, 2019, LaJaunie filed a letter requesting that the Court grant his motion in light of "Plaintiffs' failure to oppose [it]," and alternatively requesting a hearing and oral argument with respect to the motion. (Doc. No. 338.) Later the same day, Plaintiffs filed a letter stating that they "did not respond to Lajaunie's motion for reconsideration because it raised no new facts or legal arguments, and [they] did not wish to burden the Court by engaging in an unnecessary letter-writing campaign." (Doc. No. 337.) On April 18, 2019, LaJaunie filed a reply arguing that there are now factual disputes regarding his non-compliance with the Court's discovery orders and the basis for Plaintiffs' proposed allocation. (Doc. No. 339.)

As an initial matter, to the extent LaJaunie seeks reconsideration under Local Civil Rule 6.3, such a motion was not filed or served within 14 days of the challenged orders and therefore is

6

untimely. S.D.N.Y. Local Civil Rule 6.3; *see also, e.g.*, *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d 414, 419 (S.D.N.Y. 2019). In addition, it is questionable whether Rule 60(b) applies at this stage, given that the Court's previous orders directing the entry of a default judgment and adopting the Report and Recommendation were not "final" in light of the Court's subsequent orders (1) referring this case to Judge Netburn for an inquest on damages, and (2) directing Plaintiffs to submit a proposed judgment with respect to prejudgment interest and allocation. *See Swarna v. Al-Awadi*, 622 F.3d 123, 140 (2d Cir. 2010); *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986); *see also Houbigant, Inc. v. IMG Fragrance Brands, LLC*, 627 F.3d 497, 498–99 (2d Cir. 2010) (per curiam) (concluding that there was no final judgment for purposes of appeal even though the district court instructed the Clerk of Court to mark the case "closed," where the district court was "still actively engaged in resolving" issues).

Even if Rule 60(b) does not govern, however, the Court could construe LaJaunie's motion as seeking to set aside, under Rule 55(c), the entry of default "for good cause." *See Dow Chem. Pac. Ltd.*, 782 F.2d at 336. In addition, the Court is vested with inherent power to reconsider its prior orders. *See Scott v. Chipotle Mexican Grill, Inc.*, 103 F. Supp. 3d 542, 545 (S.D.N.Y. 2015).

Regardless of whether LaJaunie's motion is reviewed under Rule 60(b) or the less stringent "good cause" standard of Rule 55(c), *Globe Indem. Co. v. J.T. Falk & Co.*, No. 91-cv-0271 (PKL), 1992 WL 116630, at *4 (S.D.N.Y. May 15, 1992), the Court finds no basis for revisiting its August 10, 2016 default-judgment order. Courts in this circuit typically consider three factors in deciding whether to relieve a party from default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). All three of these factors weigh against setting aside the default entered against Defendants in this case.

First, as the Court explained in its August 10, 2016 Order, the Court resorted to the entry of default as a sanction only after Defendants repeatedly and willfully failed to comply with the Court's discovery orders for months despite the Court's specific warnings and its use of lesser sanctions. (*See* Doc. No. 260 at 15–18 (applying the four-factor test in *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450 (2d Cir. 2013); *see also* Doc. No. 310 (Order Denying LaJaunie's Motion for Reconsideration).) *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) ("A default should not be set aside when it is found to be willful.").

LaJaunie argues that new evidence demonstrates that he in fact complied with the Court's discovery orders or at least that his non-compliance was not willful. (Doc. No. 336 at 6.) Specifically, he argues that Plaintiffs' reliance on certain documents to support the calculations for the proposed judgment demonstrates that Plaintiffs in fact received those documents from Defendants consistent with the Court's discovery orders. (*Id.* at 2–6.) Plaintiffs' reliance on certain documents at this stage, however, does not demonstrate that LaJaunie timely provided all documents subject to the Court's discovery orders, or that LaJaunie otherwise substantially complied with the Court's orders. Indeed, Defendants repeatedly acknowledged (and yet continued) their non-compliance with the Court's orders, and, as the Court has previously found, they did so willfully and deliberately. (*See* Doc. No. 260 at 2–7, 15–8.)

Specifically, on April 15, 2016, the Court ordered Defendants to produce a class list containing information critical to Plaintiffs' claims by June 1, 2016, and other important discovery materials by June 16, 2016. (Doc. No. 2016.) With trial scheduled to begin on September 12, 2016, Defendants repeatedly failed to comply with the Court's order, instead engaging in obstructionist behavior that led to the breakdown of the attorney-client relationship, and (in addition to other reasons) ultimately to the Court's order granting counsel's motion to withdraw

8

from the case in early August 2016. (Doc. No. 260 at 13–15; *see, e.g.*, Doc. No. 231 (July 1, 2016 Letter from Defense Counsel to the Court) at 1 ("[A]gainst all of our guidance, assistance, and advice, Defendants did not comply with [the Court's April 15, 2019] Order."); Doc. No. 248 (Attachment to Order, July 20, 2016 Letter from Defense Counsel to the Court) at 6 (acknowledging that Defendants had still not "produced all outstanding discovery" and stating that "Defendants will not follow our instructions"). *Compare id.* Ex. A (LaJaunie Letter) at 2 ("To Defendants' best knowledge, the request for production has been fully or substantially fulfilled.") *with* Doc. No. 255 (Defendants' representation that certain categories of discovery would not be produced for approximately five weeks or two months). *See generally* Doc. No. 260 at 2–7, 15–8.) In short, LaJaunie does not point to any new facts contradicting the basis for the Court's previous finding that Defendants willfully failed to comply with the Court's discovery orders.[3]

With respect to the second Rule 55(c) factor (prejudice), allowing the parties to litigate the merits of this case now – three years after the entry of default, six years after this suit was removed to federal court, and roughly a decade after much of the conduct at issue – would surely cause irreparable prejudice to Plaintiffs. *See Action S.A.*, 951 F.2d at 507. This is especially so given Defendants' financial difficulties and the consequent challenges that Plaintiffs face in collecting on a judgment. *See, e.g., Schwarz v. Thinkstrategy Capital Mgmt. LLC*, No. 09-cv-9346 (PAE), 2016 WL 29626, at *5 (S.D.N.Y. Jan. 4, 2016) ("Vacating the default judgment, entered as the result of [Defendant's] own delinquency, this long after the action was first brought would significantly jeopardize the ability of these plaintiffs to collect on a judgment against him."); *77 Charters, Inc. v. SYC Realty LLC*, No. 10-cv-1681 (SLT) (MDG), 2012 WL 1077706, at *12 (E.D.N.Y. Feb. 27, 2012) ("Because of the apparent financial problems of the defendants . . . any

---

[3] Thus, the Court also finds that there is no genuine factual dispute with respect to LaJaunie's non-compliance with the Court's discovery orders and therefore a hearing is not warranted.

9

further delay could jeopardize plaintiff's ability to collect on a judgment."), *report and recommendation adopted*, 2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012).

As for the third factor, the Court is not persuaded that LaJaunie could raise a meritorious defense to the claims at this time – and even if the Court were persuaded otherwise, the Court would still conclude that the other considerations discussed above do not warrant setting aside the default judgment.[4] *See Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984).

Of course, the Court recognizes – and has always recognized – that a default judgment is an "extreme" sanction that must be used only as a "weapon of last . . . resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). (*See, e.g.*, Doc. No. 228 (Transcript of June 21, 2016 Conference) at 7 (The Court: "[T]he last resort would be to grant judgment against the defendants for ignoring Court orders."); Doc. No. 271 (Transcript of August 2, 2016 Conference) at 11 (The Court: "There's a strong preference in this circuit for adjudication of cases on the merits. . . . A default judgment, while a severe sanction, is nonetheless appropriate in extreme situations . . . ."). The Court further recognizes that default judgments are particularly disfavored where substantial sums of money are at stake. *Enron Oil Corp.*, 10 F.3d at 97. Nevertheless, having considered these factors and weighed them against the three traditional Rule 55(c) factors discussed above, the Court concludes that setting aside the entry of default is not appropriate in this case.[5]

---

[4] Indeed, shortly before the Court ordered a default to be entered against Defendants, defense counsel represented that Defendants "intend[ed] to stipulate that they are liable, on a class wide basis, for finite periods of time, for FLSA and NYLL violations that are readily apparent from the payroll records that ha[d] been produced." (Doc. No. 231 at 5 n.3.)

[5] The Court notes that, when deciding whether to set aside a default, "concerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se*." *Enron Oil Corp.*, 10 F.3d at 96. These heightened concerns are not present in this case, however, because at all relevant times LaJaunie was represented by counsel while he engaged in willful non-compliance with the Court's discovery orders. (*See* Doc. No. 260 at 13–15.) Further, although LaJaunie has often objected to the performance of his former lawyers, such objections do not afford him a basis for relief; rather, "any objections to [his former] attorney's performance [must be raised] in a separate malpractice proceeding." *S.E.C. v. Gerasimowicz*, 9 F. Supp. 3d 378, 382 (S.D.N.Y. 2014).

10

Finally, with respect to the Court's order adopting Judge Netburn's Report and Recommendation, the Court will exercise its inherent power to reconsider that order to correct the errors discussed above that are not subject to dispute. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996) ("[A] district court is vested with the power to revisit its decisions before the entry of final judgment and is free from the constraints of Rule 60 in so doing."). Thus, the Court finds that (1) Plaintiffs are entitled to compensatory damages in the amount of $1,255,336.73, and liquidated damages in the amount of $797,784.83, on their Park Avenue § 196-d claims; and (2) compensatory damages in the amount of $5,151.28, and liquidated damages in the amount of $1,287.82, on their New York minimum wage claims. Because LaJaunie does not otherwise advance any arguments or facts that were overlooked by the Court when adopting Judge Netburn's thorough Report and Recommendation, Plaintiffs are entitled to damages for their other claims as set forth in the Report and Recommendation.

## III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED THAT LaJaunie's Motion for Reconsideration and Relief from an Order is granted in part and denied in part. The motion is denied except with respect to the revisions to the compensatory and liquidated damages for the Park Avenue § 196-d claims and state minimum wage claims set forth above. In light of those revisions, the Court finds that Plaintiffs are entitled to judgment in the amount of $6,091,040.40, consisting of $3,988,326.67 in damages, $1,416,003.14 in prejudgment interest, $666,332.50 in attorney's fees, and $20,378.09 in costs. IT IS FURTHER ORDERED THAT Plaintiffs shall submit a revised proposed judgment and allocation chart reflecting the revisions described in this Order by July 29, 2019. The Court will postpone the entry of judgment until August 1, 2019 in order to review Plaintiffs' revised allocation chart.

The Clerk of Court is respectfully directed to terminate the motion pending at document number 336 and to mail a copy of this Order to Defendant LaJaunie.

SO ORDERED.

Dated: July 23, 2019
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation